JAMES C. YOON, State Bar 177155
jyoon@wsgr.com
ALBERT SHIH, State Bar 251726
ashih@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100

Attorneys for Plaintiff
Epistar Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EPISTAR CORPORATION, | ) | CASE NO.: 2:17-cv-03219 |
| | ) | |
| Plaintiff, | ) | FIRST AMENDED COMPLAINT |
| | ) | FOR PATENT INFRINGEMENT |
| v. | ) | |
| | ) | |
| Lowe's Companies, Inc., | ) | **JURY TRIAL DEMANDED** |
| Lowe's Home Centers, LLC | ) | |
| L G Sourcing, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Pursuant to Section 1338 of Title 28 of the United States Code, Plaintiff Epistar Corporation ("Plaintiff" or "Epistar") alleges for its Complaint against Lowe's Companies, Inc., L G Sourcing, Inc., and Lowe's Home Centers, LLC (collectively "Lowe's" or "Defendants"), on personal knowledge as to Epistar's own actions and on information and belief as to the actions of others, as follows:

1.     This Complaint arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction over this action under 35 U.S.C. § 271 *et seq.*, 28 U.S.C. §§ 1331 and 1338(a).

### THE PARTIES

2.     Plaintiff Epistar is a Taiwanese corporation with its principal place of business at 21 Li-Hsin Road, Science Park, Hsinchu 300, Taiwan.  Epistar is one of the world's leading manufacturers of light-emitting diodes.

3.     Upon information and belief, Defendant Lowe's Companies, Inc. ("LCI") is a North Carolina corporation having a principal place of business at 1000 Lowe's Boulevard, Mooresville, North Carolina 28117.

4.     Upon information and belief, Defendant Lowe's Home Centers, LLC ("LHC") is a North Carolina company having a principal place of business at 1605 Curtis Bridge Road, North Wilkesboro, North Carolina 28697.

5.     Upon information and belief, Defendant L G Sourcing, Inc. ("LGS") is a North Carolina company having a principal place of business at 1605 Curtis Bridge Road, North Wilkesboro, North Carolina 28697.

6.     LCI and subsidiaries LHC and LGS operate home improvement warehouses known as "Lowe's Home Improvement" warehouses in this State and District that sell the products alleged herein to infringe Epistar's patents-in-suit.

### JURISDICTION AND VENUE

7.     The Court may exercise personal jurisdiction over Defendants because Defendants have continuous and systematic contacts with the State of California and, on information and belief, do business in this District.

8.     Defendants conduct business in this District by importing, marketing, offering for sale, and selling its infringing products in this District.

9.     Defendants maintain a store in this District at 4550 West Pico Blvd. Unit D-101, Los Angeles, CA, 90019.  *See* Figures 1-2.



**Figure 1.**



**Figure 2.**

10.    Defendants sell infringing Kichler branded products in the store located within this District at 4550 West Pico Blvd. Unit D-101, Los Angeles, CA, 90019.  *See* Figures 3-5.



**Figure 3.**



**Figure 4.**



**Figure 5.**

11.     Defendants sell infringing Kichler branded products and Utilitech branded products by accessing Lowe's website in this District.  *See e.g.*, Figure 6, available at *https://www.lowes.com/pd/Kichler-Lighting-60-W-Equivalent-Dimmable-Soft-White-A15-LED-Decorative-Light-Bulb/1000115781* (last visited Mar. 9, 2017); Figure 7, available at *https://www.lowes.com/pd/Utilitech-60-W-Equivalent-Warm-White-A19-LED-Light-Fixture-Light-Bulb/999957715* (last accessed Apr. 25, 2017); Kichler at Lowe's, available at *https://www.lowes.com/b/kichler.html* (last accessed Mar. 9, 2017) ("Kichler and Lowe's are here to help you find the best lighting plan for your home."); Figures 2-4.

1

2

3

4

5

6

7

8

9

10

11



**Figure 6.**

12

13

14

15

16

17

18

19

20

21

22

23

24



**Figure 7.**

25   12.   Defendants, including at least LGS, are also the distributors of the

26   infringing Utilitech branded products.  *See* Figures 8-9.

27

28



**Figure 8.**



**Figure 9.**

13.     Because Defendants have availed themselves of the privileges of conducting activities in this District, Defendants are subject to personal jurisdiction in this District.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and/or 1400(b) because among other things, Defendants are subject to personal jurisdiction in this District, have committed acts of patent infringement in this District, and continue to commit acts of infringement in this District.  Each Defendant has a "regular and established place of business" in this District because Defendants maintain (1) physical locations in the district; (2) the

locations are a regular and established places of business; and (3) the locations are a place of the Defendants.

15.    As discussed in paragraphs 8-11 above, LCI and its subsidiaries operate physical retail stores in this District, owned by LHC, that sell the products accused of infringement.  Ex. 1 at 1 ("Lowe's Companies, Inc. and subsidiaries (the Company or Lowe's) is a Fortune® 50 company and the world's second largest home improvement retailer.  As of February 3, 2017, Lowe's operated 2,129 home improvement and hardware stores, representing approximately 213 million square feet of retail selling space."); Ex. 2 at 1 ("Lowe's Companies, Inc. (NYSE: LOW) is a FORTUNE® 50 home improvement company . . . . Lowe's and its related businesses operate or service more than 2,370 home improvement and hardware stores and employ over 290,000 people.").

16.    LCI and its subsidiaries also "own and operate distribution facilities" including a Reginal Distribution Center in this District, Lowe's California RDC - #966, at 3984 Indian Avenue, Perris, CA 92571.  Ex. 1 at 3 ("[W]e own and operate distribution facilities that enable products to be received from vendors, stored and picked, or cross-docked, and then shipped to our retail locations or directly to customers."); Ex. 3 at 1; *see* Figure 10, below.



**Figure 10.**

17.    LCI and its subsidiaries also operate facilities in this district for LGS's importation operations.  Specifically, LCI and its subsidiaries "also operate

coastal holding facilities" [and] transload facilities" including a Transload Distribution Center in this District, Lowe's TDC #1438 c/o California Cartage Company Container Freight Station, at 2401 East Pacific Coast Highway Wilmington, CA 90744 and a Costal Holding Facility in this District, Moreno Valley Coastal Holding Facility: Lowe's Facility #1450, at 16850 Heacock St. Moreno Valley, CA 92551.  Ex. 1 at 3 ("[W]e also operate coastal holding facilities, transload facilities, appliance distribution centers, and flatbed distribution centers."); Ex. 3 at 2.  The Transload center "transloads … import merchandise from a domestic port to serviced Regional Distribution Centers in Lowe's existing distribution network," and the Coastal Holding facility "provides Lowe's with storage capacity for import programs."  *See* Ex. 3 at 2.

18.     Venue as to LCI and LGS is also proper due to the fact LHC does not dispute it has a regular and established place of business in this District and, to the extent not directly places of LCI and LGS, the places of LHC can be properly be imputed to LCI and LGS for the venue analysis because there is not corporate separateness.

19.     LHC and LGS are wholly owned subsidiaries of LCI.  The three corporate entities share the same mailing address, registered agent, and almost all of the managers and/or officers of the entities are the same.  *See* Exs. 4, 5, 6.  LHC and LGS further share the same principle place of business.  Exs. 4, 6.

20.     The three entities operate under the same "Lowe's" branded logo.  *See, e.g.*, Ex. 1 at 1; Ex. 7 at 1; Ex. 8 at 1.

21.     Lowe's employees and its public facing websites also portray a single company to the public.  For example, LCI's official LinkedIn page lists more than 1700 employees in the Greater Los Angeles area.  Ex. 9.  Lowe's customer facing website (www.lowes.com) includes a "company information" page describing LCI, and LCI's Annual Report repeatedly makes reference to Lowes.com as its website.  *See, e.g.*, Ex. 1 at 6 ("Our Annual Report, quarterly

reports on Form 10-Q, current reports on Form 8-K and amendments to those reports filed or furnished pursuant to Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended, are made available free of charge through our internet website at www.Lowes.com/investor . . . ''); *see also* Figure 11, below (showing public back cover page of annual report).



**Figure 11.**

Lowe's vendor facing website (www.loweslink.com) also, upon information and belief, only distinguishes between the entities in the "L G Sourcing" part of the site, which states that it is a "wholly owned subsidiary of Lowe's, which provides an end to end sourcing solution delivering quality and diverse options to meet the needs of our Customer" and defines Lowe's as including the related entities. *See* Ex. 8 at 1; Ex. 10 at 3 (defining "Lowe's" as "L G Sourcing, Inc. and its parent company, its parent company's subsidiaries and divisions").

22. Upon information and belief, LCI and LGS are involved in the purchasing decisions for the accused products.

23. Because each Defendant directly and through a lack of corporate separateness maintains a "regular and established place of business" in this District, venue is proper.

1

**FACTUAL BACKGROUND**

2       24.     Epistar brings this action to seek injunctive relief and damages

3   arising out of Defendants' infringement of Epistar's U.S. Patent Nos. 6,346,771;

4   7,560,738; 8,791,467; 8,492,780; and 8,587,020  (collectively "the Patents-in-

5   Suit").

6                                    **Epistar**

7       25.     Epistar is widely recognized as "one of the pioneers in the LED

8   filament industry" and "has invested resources in LED filament technology for

9   years to improve filament efficiency." *See*

10  *http://www.ledinside.com/interview/2016/7/epistar_improves_product_structure_a*

11  *nd_profitability_by_specializing_in_niche_led_lighting_applications* (last

12  accessed Mar. 9, 2017).  Leading the LED filament evolution, Epistar was one of

13  the earliest companies to acquire related patents including those covering the

14  integration of carrier substrates.

15      26.     Epistar has received numerous industry awards over the years for

16  its innovations in LED technology.  Most recently, Epistar received an Outstanding

17  Photonics Product Award at the 13th International Nano Exposition hosted in

18  Taiwan for the design of its Flexible LED Lighting System.

19      27.     Epistar LED products are used for a variety of applications

20  including cell phone screens, laptops, televisions, the automotive industry, and

21  home lighting.  Epistar's patented technologies embodied in its LED products

22  inject the benefits of solid state, LED, lighting into everyday life.  *See e.g.*, Figure

23  12.

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR                -11-
PATENT INFRINGEMENT



**Figure 12.**

28.      Epistar is one of the largest manufacturers of light-emitting diodes (LEDs) in the world, with approximately 4,100 employees and millions of U.S. dollars invested annually in research and development work.  To date, Epistar's investment has resulted in over 3,000 patents.

### Lowe's Companies, Inc. and Lowe's Home Centers, LLC

29.      Defendant LCI is headquartered in Mooresville, North Carolina.

30.      Defendant LHC is headquartered in North Wilkesboro, North Carolina.

1    31.    Defendant LGS is headquartered at the same address as LCH in

2    North Wilkesboro, North Carolina.

3    32.    Defendants have, and continue to, offer for sale and sell infringing

4    LED bulbs since at least as early as 2016, including, but not limited to, the Kichler

5    Lighting 60 W Equivalent Dimmable Soft White A15 Led Decorative Light Bulb

6    (Manufacturer Part Number: YGA16A08-A15C-CL-5W), UTILITECH 60 W

7    Equivalent Warm White A19 LED Light Fixture Light Bulb (Manufacturer Part

8    Number: YGA03A41-A19-9W-830), and similar products (the "Accused

9    Products"). *See e.g.*, *https://www.lowes.com/pd/Kichler-Lighting-60-W-Equivalent-*

10   *Dimmable-Soft-White-A15-LED-Decorative-Light-Bulb/1000115781* (last accessed

11   Mar. 9, 2017);  *https://www.lowes.com/pd/Utilitech-60-W-Equivalent-Warm-*

12   *White-A19-LED-Light-Fixture-Light-Bulb/999957715* (last accessed Apr. 25,

13   2017); *see also https://www.lowes.com/l/led-*

14   *lighting.html?searchTerm=led%20lighting*  (last accessed Mar. 9, 2017) ("At

15   Lowe's, we have a full selection of LED lighting for all your needs, inside or

16   out.").

17   33.    The Accused Products contain a variety of electrical components

18   used to control various aspects of the operation of the LED bulb.  The Accused

19   Products are assembled with pre-configured electrical components.

20   34.    As its web page explains, the Kichler Lighting 60 W Equivalent

21   Dimmable Soft White A15 LED Decorative Light Bulb has "[d]immable,

22   customizable levels of brightness to set your desired ambient lighting mood" with

23   a "[u]nique strand-style LED arrangement [that] provides a classic replica of

24   antique light bulbs." *See https://www.lowes.com/pd/Kichler-Lighting-60-W-*

25   *Equivalent-Dimmable-Soft-White-A15-LED-Decorative-Light-Bulb/1000115781*

26   (last accessed Mar. 9, 2017).

27   35.    The Kichler Lighting 60 W Equivalent Dimmable Soft White A15

28   LED Decorative Light Bulb retails for around $8 per LED bulb.

36.     As its web page explains, the UTILITECH 60 W Equivalent Warm White A19 LED Light Fixture Light Bulb "[i]ncludes one 9-watt (60-watt equivalent) warm white A19 LED bulb" that "[l]asts for 2,000 hours." *See https://www.lowes.com/pd/Utilitech-60-W-Equivalent-Warm-White-A19-LED-Light-Fixture-Light-Bulb/999957715* (last accessed Apr. 25, 2017).

37.     The UTILITECH 60 W Equivalent Warm White A19 LED Light Fixture Light Bulb retails for around $1 per LED bulb.

### The Commercial LED Market

38.     With constant innovation in emission efficiency and product design by companies like Epistar, the commercial LED industry is still growing at a promising rate.  Industry reports indicate that "LED Lighting market to Worth USD 33.1B as Market Penetration Rate Hit 52% by 2017." *http://www.ledinside.com/intelligence/2016/11/ledinside_led_lighting_market_to_worth_usd_33_1b_as_market_penetration_rate_hit_52_by_2017* (last accessed March 14, 2017).  "In addition, American major manufacturers are actively developing LED lighting business, with the rising LED lighting penetration rate." *Id*.

### The Patents-in-Suit

39.     The Patents-in-Suit represent key achievements of Epistar's continuous research and development efforts.  These patents enhance the performance of LED filament bulbs and, as a result, help drive demand for Epistar's products.

40.     On February 12, 2002, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,346,771 ("the '771 patent"), entitled "High Power LED Lamp," to Hassan Paddy Abdel Salam.  Epistar is the owner of the '771 patent.  A true and correct copy of the '771 patent is attached hereto as Exhibit 11.

41.     On July 14, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,560,738 ("the '738 patent"), entitled "Light-Emitting Diode Array Having An Adhesive Layer," to Wen-Huang Liu. Epistar is the owner of the '738 patent. A true and correct copy of the '738 patent is attached hereto as Exhibit 12.

42.     On July 29, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,791,467 ("the '467 patent"), entitled "Light Emitting Diode And Method Of Making The Same," to Kuang-Neng Yang. Epistar is the owner of the '467 patent.  A true and correct copy of the '467 patent is attached hereto as Exhibit 13.

43.     On July 23, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,492,780 ("the '780 patent"), entitled "Light-Emitting Device and Manufacturing Method Thereof," to Chen Ke Hsu, Win Jim Su, Chia-Ming Chuang, and Chen Ou.  Epistar is the owner of the '780 patent.  A true and correct copy of the '780 patent is attached hereto as Exhibit 14.

44.     On November 19, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,587,020 ("the '020 patent"), entitled "LED Lamps," to Salam Hassan.  Epistar is the owner of the '020 patent. A true and correct copy of the '020 patent is attached hereto as Exhibit 15.

45.     Since early 2016 Epistar has directly communicated on multiple occasions to Defendants that the Accused Products infringe Epistar's patents. Defendants had actual knowledge of the asserted '771 patent, '738 patent, '780 patent and '020 patent and/or their respective applications at least as of April 7, 2016.  Defendants had actual knowledge of the asserted '467 patent and/or its respective applications at least as of November 9, 2016.  Despite this actual knowledge, and without communicating any theory of noninfringement or making any good-faith efforts to avoid infringing the Patents-in-Suit, Defendants continued to infringe, and profit from, the Accused products.  Defendants actively,

knowingly, and intentionally sell and offer to sell the Accused Products that infringe on the Patents-in-Suit.

## FIRST CAUSE OF ACTION

### (Infringement of U.S. Patent No. 6,346,771)

46. Epistar repeats and re-alleges the allegations of paragraphs 1 through 45 in their entirety.

47. Defendants have infringed, either literally and/or under the doctrine of equivalents, one or more claims of the '771 patent, and continue to infringe in this District, by making, using, selling, offering for sale, and/or importing into the United States products including, but not limited to, the Kichler Lighting 60 W Equivalent Dimmable Soft White A15 LED Decorative Light Bulb, without the permission of Epistar. Defendants are thus liable for direct infringement of the '771 patent pursuant to 35 U.S.C. § 271(a). A representative claim chart detailing Defendants' infringement of at least claim 38 of the '771 patent is attached as Exhibit 16.

48. Defendants had pre-suit knowledge of the '771 patent and that the products and systems identified herein infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '771 patent. Defendants have knowingly and intentionally induced and encouraged the direct infringement of the '771 patent by Defendants' customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the accused products and systems identified above. On information and belief, Defendants provide support to instruct their customers on how to use the infringing technology. Defendants are therefore liable for indirect infringement of the '771 patent pursuant to 35 U.S.C. § 271(b).

49.     Defendants had pre-suit knowledge of the '771 patent and that the products and systems identified infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '771 patent.  Defendants have and continue to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '771 patent.  Defendants have knowingly and intentionally contributorily infringed the '771 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '771 patent, knowing the same to be made or adapted specifically for use in the infringement of the '771 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendants are therefore liable for indirect infringement of the '771 patent pursuant to 35 U.S.C. § 271(c).

50.     Unless enjoined by this Court, Defendants will continue to infringe the '771 patent, and Epistar will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Epistar is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

51.     Defendants acted in a manner that was willful, malicious, in bad-faith, deliberate, consciously wrongful, or flagrant.  As a result of Defendants' infringement of the '771 patent, Epistar has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Infringement of U.S. Patent No. 7,560,738)

52.     Epistar repeats and re-alleges the allegations of paragraphs 1 through 51 in their entirety.

53.     Defendants have infringed, either literally and/or under the doctrine of equivalents, one or more claims of the '738 patent, and continue to infringe in this District by making, using, selling, offering for sale, and/or importing into the

United States products including, but not limited to, the Kichler Lighting 60 W Equivalent Dimmable Soft White A15 LED Decorative Light Bulb, without the permission of Epistar. Defendants are thus liable for direct infringement of the '738 patent pursuant to 35 U.S.C. § 271(a). A representative claim chart detailing Defendants' infringement of at least claim 1 of the '738 patent is attached as Exhibit 17.

54. Defendants had pre-suit knowledge of the '738 patent and that the products and systems identified herein infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '738 patent. Defendants have knowingly and intentionally induced and encouraged the direct infringement of the '738 patent by Defendants' customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention, and that incorporate the accused products and systems identified above. On information and belief, Defendants provide support to instruct its customers on how to use the infringing technology. Defendants are therefore liable for indirect infringement of the '738 patent pursuant to 35 U.S.C. § 271(b).

55. Defendants had pre-suit knowledge of the '738 patent and that the products and systems identified infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '738 patent. Defendants have and continue to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '738 patent. Defendants have knowingly and intentionally contributorily infringed the '738 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '738 patent, knowing the same to be made or adapted specifically for use in the infringement of the '738 patent, and not a staple article or commodity of commerce

1  suitable for substantial non-infringing use.  Defendants are therefore liable for

2  indirect infringement of the '738 patent pursuant to 35 U.S.C. § 271(c).

3       56.     Unless enjoined by this Court, Defendants will continue to infringe

4  the '738 patent, and Epistar will continue to suffer irreparable harm for which there

5  is no adequate remedy at law.  Accordingly, Epistar is entitled to preliminary and

6  permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

7       57.     Defendants acted in a manner that was willful, malicious, in bad-

8  faith, deliberate, consciously wrongful, or flagrant.  As a result of Defendants'

9  infringement of the '738 patent, Epistar has been and continues to be irreparably

10 injured in its business and property rights, and is entitled to recover damages for

11 such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

12              **THIRD CAUSE OF ACTION**

13          **(Infringement of U.S. Patent No. 8,791,467)**

14      58.     Epistar repeats and re-alleges the allegations of paragraphs 1

15 through 57 in their entirety.

16      59.     Defendants have infringed, either literally and/or under the doctrine

17 of equivalents, one or more claims of the '467 patent and continues to infringe in

18 this District, by making, using, selling, offering for sale, and/or importing into the

19 United States products including, but not limited to, the Kichler Lighting 60 W

20 Equivalent Dimmable Soft White A15 LED Decorative Light Bulb, without the

21 permission of Epistar.  Defendants are thus liable for direct infringement of the

22 '467 patent pursuant to 35 U.S.C. § 271(a).  A representative claim chart detailing

23 Defendants' infringement of at least claim 1 of the '467 patent is attached as

24 Exhibit 18.

25      60.     Defendants had pre-suit knowledge of the '467 patent and that the

26 products and systems identified herein infringe, either literally and/or under the

27 doctrine of equivalents, one or more claims of the '467 patent.  Defendants have

28 knowingly and intentionally induced and encouraged the direct infringement of the

'467 patent by Defendants' customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the accused products and systems identified above.  On information and belief, Defendants provide support to instruct their customers on how to use the infringing technology.  Defendants are therefore liable for indirect infringement of the '467 patent pursuant to 35 U.S.C. § 271(b).

61.     Defendants had pre-suit knowledge of the '467 patent and that the products and systems identified infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '467 patent.  Defendants have and continue to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '467 patent.  Defendants have knowingly and intentionally contributorily infringed the '467 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '467 patent, knowing the same to be made or adapted specifically for use in the infringement of the '467 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendants are therefore liable for indirect infringement of the '467 patent pursuant to 35 U.S.C. § 271(c).

62.     Unless enjoined by this Court, Defendants will continue to infringe the '467 patent, and Epistar will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Epistar is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

63.     Defendants acted in a manner that was willful, malicious, in bad-faith, deliberate, consciously wrongful, or flagrant.  As a result of Defendants' infringement of the '467 patent, Epistar has been and continues to be irreparably

injured in its business and property rights, and is entitled to recover damages for
such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Infringement of U.S. Patent No. 8,492,780)

64.    Epistar repeats and re-alleges the allegations of paragraphs 1
through 63 in their entirety.

65.    Defendants have infringed, either literally and/or under the doctrine
of equivalents, one or more claims of the '780 patent and continue to infringe in
this District, by making, using, selling, offering for sale, and/or importing into the
United States products including, but not limited to, the Kichler Lighting 60 W
Equivalent Dimmable Soft White A15 LED Decorative Light Bulb and the
UTILITECH 60 W Equivalent Warm White A19 LED Light Fixture Light Bulb,
without the permission of Epistar.  Defendants are thus liable for direct
infringement of the '780 patent pursuant to 35 U.S.C. § 271(a).  A representative
claim chart detailing Defendants' infringement of at least claim 1 of the '780
patent is attached as Exhibit 19.

66.    Defendants had pre-suit knowledge of the '780 patent and that the
products and systems identified herein infringe, either literally and/or under the
doctrine of equivalents, one or more claims of the '780 patent.  Defendants have
knowingly and intentionally induced and encouraged the direct infringement of the
'780 patent by Defendants' customers, resellers, retailers, and end users by
intentionally directing them and encouraging them to make, use, sell, and/or offer
to sell within the United States and/or to import into the United States one or more
devices that embody the patented invention and that incorporate the accused
products and systems identified above.  On information and belief, Defendants
provide support to instruct their customers on how to use the infringing
technology.  Defendants are therefore liable for indirect infringement of the '780
patent pursuant to 35 U.S.C. § 271(b).

67.     Defendants had pre-suit knowledge of the '780 patent and that the products and systems identified infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '780 patent.  Defendants have and continue to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '780 patent.  Defendants have knowingly and intentionally contributorily infringed the '780 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '780 patent, knowing the same to be made or adapted specifically for use in the infringement of the '780 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendants are therefore liable for indirect infringement of the '780 patent pursuant to 35 U.S.C. § 271(c).

68.     Unless enjoined by this Court, Defendants will continue to infringe the '780 patent, and Epistar will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Epistar is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

69.     Defendants acted in a manner that was willful, malicious, in bad-faith, deliberate, consciously wrongful, or flagrant.  As a result of Defendants' infringement of the '780 patent, Epistar has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Infringement of U.S. Patent No. 8,587,020)

70.     Epistar repeats and re-alleges the allegations of paragraphs 1 through 69 in their entirety.

71.     Defendants have infringed, either literally and/or under the doctrine of equivalents, one or more claims of the '020 patent and continues to infringe in this District, by making, using, selling, offering for sale, and/or importing into the

United States products including, but not limited to, the Kichler Lighting 60 W Equivalent Dimmable Soft White A15 LED Decorative Light Bulb and the UTILITECH 60 W Equivalent Warm White A19 LED Light Fixture Light Bulb, without the permission of Epistar.  Defendants are thus liable for direct infringement of the '020 patent pursuant to 35 U.S.C. § 271(a).  A representative claim chart detailing Defendants' infringement of at least claim 1 of the '020 patent is attached as Exhibit 20.

72.     Defendants had pre-suit knowledge of the '020 patent and that the products and systems identified herein infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '020 patent.  Defendants have knowingly and intentionally induced and encouraged the direct infringement of the '020 patent by Defendants' customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the accused products and systems identified above.  On information and belief, Defendants provide support to instruct their customers on how to use the infringing technology.  Defendants are therefore liable for indirect infringement of the '020 patent pursuant to 35 U.S.C. § 271(b).

73.     Defendants had pre-suit knowledge of the '020 patent and that the products and systems identified infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '020 patent.  Defendants have and continue to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '020 patent.  Defendants have knowingly and intentionally contributorily infringed the '020 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '020 patent, knowing the same to be made or adapted specifically for use in the

infringement of the '020 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendants are therefore liable for indirect infringement of the '020 patent pursuant to 35 U.S.C. § 271(c).

74.     Unless enjoined by this Court, Defendants will continue to infringe the '020 patent, and Epistar will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Epistar is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

Defendants acted in a manner that was willful, malicious, in bad-faith, deliberate, consciously wrongful, or flagrant.  As a result of Defendants' infringement of the '020 patent, Epistar has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in its favor and against Defendants as follows:

a.     That Defendants are liable for infringement, contributing to the infringement, and/or inducing the infringement of one or more claims of the Patents-in-Suit, as alleged herein;

b.     That such infringement is willful;

c.     That Defendants and their parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants, and employees of each of the foregoing, customers and/or licensees and those persons acting in concert or participation with any of them, are enjoined and restrained from continued infringement, including but not limited to using, making, importing, offering for sale and/or selling products that infringe, and from contributorily and/or inducing the infringement of the Patents-in-Suit prior to their expiration, including any extensions;

1        d.        An Order directing Defendants to file with this Court and serve upon

2    Plaintiff's counsel within 30 days after the entry of the Order of Injunction a report

3    setting forth the manner and form in which Defendants have complied with the

4    injunction;

5        e.        An award of damages adequate to compensate Plaintiff for the

6    infringement that has occurred, in accordance with 35 U.S.C. § 284, in lost profits,

7    price erosion and/or reasonable royalty, including pre-judgment and post-judgment

8    interest at the highest rates allowed by law;

9        f.        An accounting and/or supplemental damages for all damages

10   occurring after any discovery cutoff and through the Court's decision regarding the

11   imposition of a permanent injunction;

12       g.        An award of attorneys' fees based on this being an exceptional case

13   pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

14       h.        Costs and expenses in this action;

15       i.        Such other and further relief, in law and in equity, as this Court may

16   deem just and appropriate.

22   Dated:  January 5, 2018                    WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation

25                                              By:   /s/ James C. Yoon
                                                     James C. Yoon

27                                              Attorney for Epistar Corporation

FIRST AMENDED COMPLAINT FOR          -25-
PATENT INFRINGEMENT

1

## <u>DEMAND FOR JURY TRIAL</u>

2    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

3 Epistar Corporation demands a trial by jury of this action.

4

5 Dated:  January 5, 2018    WILSON SONSINI GOODRICH & ROSATI
                 Professional Corporation

6

7

8           By:  */s/ James C. Yoon*
                James C. Yoon

9

10           Attorney for Epistar Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF EXHIBITS

2

| Exhibit | Page(s) |
|---------|---------|
| 1 | 28-120 |
| 2 | 121-122 |
| 3 | 123-125 |
| 4 | 126-127 |
| 5 | 128-131 |
| 6 | 132 |
| 7 | 133 |
| 8 | 134-136 |
| 9 | 137 |
| 10 | 138-142 |
| 11 | 143-155 |
| 12 | 156-165 |
| 13 | 166-175 |
| 14 | 176-187 |
| 15 | 188-218 |
| 16 | 219-226 |
| 17 | 227-231 |
| 18 | 232-235 |
| 19 | 236-240 |
| 20 | 241-244 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT FOR        -27-
PATENT INFRINGEMENT