JAMES C. YOON, State Bar 177155
jyoon@wsgr.com
ALBERT SHIH, State Bar 251726
ashih@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Plaintiff*
*Epistar Corporation*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPISTAR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC.,<br>LOWE'S HOME CENTERS, LLC,<br>L G SOURCING, INC.,<br><br>Defendants. | Case No.: 2:17-cv-03219 JAK (KSx)<br><br>**PLAINTIFF EPISTAR CORPORATION'S OPPOSITION TO DEFENDANTS LOWE'S COMPANIES, INC. AND L G SOURCING, INC.'S MOTION TO DISMISS**<br><br>Date:    January 14, 2019<br>Time:    8:30 a.m.<br>Place:    Courtroom 10B<br>Before:  Honorable John A. Kronstadt |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 1

      A.   Procedural Background ................................................................. 1

      B.   LCI Employs Numerous Individuals in this District and Owns and/or
           Operates Several Business Locations in this District ...................... 2

      C.   LCI, LHC, and LGS Treat Their Documents and Financials in a
           Collective Manner as Evidenced by Discovery Directed at LHC. ...... 7

III.  LEGAL STANDARD ................................................................................ 8

IV.   ARGUMENT ........................................................................................ 10

      A.   Discovery Will Establish that LCI Has a Regular and Established
           Place of Business in this District ................................................ 10

           1.   Discovery Will Show That LCI Owns or Operates a Physical
                Place in this District. ...................................................... 10

           2.   Discovery Will Show That LCI's Physical Places are
                Regular and Established Places of Business. ........................ 12

           3.   Discovery Will Show That The Physical Places of LCI Are
                Owned by LCI. ................................................................ 14

           4.   Discovery Will Show That LCI and LGS Conduct Acts of
                Infringement in This District. ............................................ 14

      B.   Discovery Will Demonstrate that the Lack of Corporate Separateness
           between LCI, LHC, and LGS Warrants Imputing LHC Business
           Activities and Locations in This District Onto LCI and LGS for the
           Limited Purpose of Establishing Proper Venue. ........................... 15

      C.   Epistar will be Prejudiced if its Case Against LHC is Transferred or
           Stayed. ..................................................................................... 16

V.    CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc*., No. CV 14-03053 MWF, 2018 U.S. Dist. LEXIS 35616 (C.D. Cal. Mar. 2, 2018) .................................................................................................... 16

*Boston Sci. Corp. v. Cook Grp., Inc*., 269 F. Supp. 3d 229 (D. Del. 2017) ..................... 17

*Bristol-Myers Squibb Co. v. Mylan Pharms., Inc.,* No. No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372 (D. Del. Sept. 11, 2017) ......................... 9

*Dokoozian Construction LLC v. Executive Risk Specialty Insurance Company*, No. C15-703 MJP, 2015 WL 12085859 (W.D. Wash. July 28, 2015) ................................................................................................. 17

*Duarte v. California Hotel & Casino*, No. 08-00185 JMS/LEK, 2009 WL 4668739 (D. Haw. Dec. 4, 2009).................................................................. 17

*Eastman Chem. Co. v. AlphaPet, Inc*., No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757 (D. Del. Nov. 4, 2011) ................................................... 9

*Eclipse IP, LLC v. ECCO USA, Inc.*, No. 5:12-CV-160, 2013 WL 5838675 (N.D. W. Va. Oct. 30, 2013)................................................................... 9

*In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017)............................................... 9, 11

*Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-CV-4219-TWT, 2017 U.S. Dist. LEXIS 122219 (N.D. Ga. Aug. 3, 2017)........................................ 17

*Kaia Foods, Inc. v. Bellafiore,* 70 F. Supp. 3d 1178 (N.D. Cal. 2014) .............................. 9

*Mallinckrodt IP v. B. Braun Med. Inc.*, No. 17-365-LPS, 2017 U.S. Dist. LEXIS 205593 (D. Del. Dec. 14, 2017)............................................. 10, 16

*Nike v. Skechers U.S.A., Inc*., No. 3:16-cv-007-PK, 2017 WL 3389022 (D. Or. June 30, 2017) ....................................................................... 12, 15

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)................................................. 9

*OptoLu, Inc. v. Cree, Inc*., No. CV-16-03828-PHX-DLR, 2017 U.S. Dist. LEXIS 114717 (D. Ariz. July 24, 2017) ....................................................... 9

*RegenLab USA LLC v. Estar Techs. Ltd.*, No. 16-cv-08771, 2017 U.S. Dist. LEXIS 131627 (S.D.N.Y. Aug. 17, 2017) .......................................... 10, 14

*Swamy v. Title Source, Inc*., No. C 17-01175 WHA, 2017 U.S. Dist. LEXIS 89990 (N.D. Cal. June 12, 2017)................................................... 12, 15

*Symbology Innovations, LLC, v. Lego Sys., Inc.*, 158 F. Supp. 3d 916 (E.D. Va. 2017) ........................................................................................... 10

*TC Heartland LLC v. Kraft Foods Grp. Brands*, 137 S. Ct. 1514 (2017)..................... 8, 17

*Trusted Health Prods., Inc. v. Blue Cross Labs., Inc.*, No. 5:13-375-DCR,
 2014 WL 3586256 (E.D. Ky. July 21, 2014) ............................................... 9

*Uniden Am. Corp. v. Ericsson Inc.,* 181 F.R.D. 302 (M.D.N.C. 1998)............................ 16

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863 (E.D.
 Va. 2013) ......................................................................................... 9

*Yardstash Sols., LLC v. Marketfleet, Inc.*, No. 17-cv-0625-JLS-MDD, 2017
 U.S. Dist. LEXIS 177871 (S.D. Cal. Oct. 26, 2017)................................ 12

## RULES

Federal Rule of Civil Procedure 12(b)(3) ........................................................ 1, 2

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 2

# I.   INTRODUCTION

Defendants Lowe's Companies, Inc. ("LCI") and L G Sourcing, Inc.'s ("LGS") Motion to Dismiss should be denied.  Public statements and discovery will show that LCI and LGS have a regular and established place of business in this District.  As set forth in this opposition, Defendants made numerous public statements regarding job postings, employees, and office locations in this District.  These public announcements demonstrate, at a minimum, that Plaintiff Epistar Corporation ("Epistar") should be permitted venue discovery to establish the full nature of LCI and LGS's ties with this District, prior to any Court decision on the Motion to Dismiss.

Further, Lowe's Home Centers, LLC's ("LHC") undisputed ties to this District are an additional basis for denying the Motion to Dismiss.  The currently available facts and discovery will show that LCI, LGS, and LHC lack corporate separateness. LHC, LCI, and LGS treat their assets and personnel in a collective matter and that LCI, as the parent company, controls the finances of LGS and LHC.  For example, LCI purchases and dictates that the Accused Products are sold by LHC, the sales of the Accused Products by LHC are tracked by LCI.  Further, in response to discovery targeted at LHC, LHC produced sales data of LCI and made available employees of LCI at deposition.  Consequently, discovery into such activities will establish that facts supporting venue in this District can be imputed onto LCI and LGS from LHC for determining whether venue is proper under Federal Rule of Civil Procedure 12(b)(3).

# II.   STATEMENT OF FACTS

## A.   Procedural Background

On April 28, 2017, Epistar filed this action naming LHC and LCI as Defendants. Dkt. No. 1.  On July 6, 2017, based on the representations of that "LCI does not do the relevant purchasing" and did not "make, use, offer to sell, or sell within California or import into California the Accused Products," Epistar filed its stipulation of dismissal dismissing LCI without prejudice.  Dkt. No. 25-1 ¶ 7; Declaration of Albert Shih in

Support of Epistar's Opposition to LCI and LGS's Motion to Dismiss ("Shih Decl.")
Exs. 1, 2.  On January 5, 2018, based on contrary information provided to Epistar during
discovery, Epistar filed its Motion to Amend the Complaint adding back LCI and an
additional party, LGS, with a good faith basis to believe that LCI and LGS are heavily
involved in the distribution channels, decision making, including purchasing decisions
made for the Accused Products.  Dkt. No. 75.  On August 24, 2018, the Court issued its
Order granting Epistar's Motion for Leave to Amend the Complaint.  Dkt. No. 170.  The
court determined, among other things, that venue is proper under Federal Rule of Civil
Procedure 12(b)(6).  On August 27, 2018, Epistar filed its First Amended Complaint
adding LCI and LGS as parties.  Dkt. No. 171.  On September 26, 2018, LCI and LGS
filed its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3) seeking to
dismiss or transfer LCI and LGS based solely on venue.  Dkt. No. 210.

**B.      LCI Employs Numerous Individuals in this District and Owns and/or Operates Several Business Locations in this District.**

Numerous online postings confirm that LCI has a regular and established place of
business in this District.  For example, LCI has conducted significant hiring activities in
this District.  *See* Shih Decl. Ex. 3 ("*Lowe's Companies, Inc.* announced this week that
it is hiring more than 45,000 seasonal workers, including 662 in Southern California.");
*see also id.* Ex. 4.  Specifically, the hirings are conducted by LCI (notably, not LHC) for
various locations, including, for example, Pico Rivera, Santa Clarita, Industry, and
Torrance:

1

2  **Seasonal Employee Tree Lot- South Pasadena Location**
   Lowe's Companies, Inc.
3  Pico Rivera, CA, US
   Also responsible for responding to customer inquiries throughout their
   shopping experience including... jobs.lowes.com
4  Be an early applicant
   5 days ago

5  **Sales Coordinator Interior (Full-Time)**
   Lowe's Companies, Inc.
6  Santa Clarita, CA, US
   An individual in this role is responsible for coordinating pre-tender in-home
   sales projects and eff... jobs.lowes.com
7  1 company alum works here
   1 week ago

8  **Customer Service Associate III**
   Lowe's Companies, Inc.
9  Santa Clarita, CA, US
   Year retail experience in related department (e.g., kitchen, plumbing, electrical,
10 lawn and garden)... jobs.lowes.com
   13 alumni work here
11 3 days ago

12 **Sales Support Associate**
   Lowe's Companies, Inc.
13 Industry, CA, US
   The Sales Support Associate will also participate in the safe, accurate and
   efficient receiving, unl... jobs.lowes.com
14 13 alumni work here
   2 weeks ago

15 **Out Side Garden Store Seasonal Employee**
   Lowe's Companies, Inc.
16 Torrance, CA, US
   Also responsible for responding to customer inquiries throughout their
   shopping experience including... jobs.lowes.com
17 1 company alum works here
   2 weeks ago

18

19 **Customer Service Associate IV**
   Lowe's Companies, Inc.
   Commerce, CA, US
20 1 year retail experience in related department (e.g., kitchen, plumbing,
   electrical, lawn and garden... jobs.lowes.com
21 Be an early applicant
   4 days ago

22 **Store Seasonal Employee FOR BUENA PARK TREE LOT!**
   Lowe's Companies, Inc.
23 Norwalk, CA, US
   1 year retail experience in related department (e.g., kitchen, plumbing,
24 electrical, lawn and garden... jobs.lowes.com
   13 alumni work here
   5 days ago

25 **Seasonal Customer Service Associate- Tree Lot**
   Lowe's Companies, Inc.
26 Industry, CA, US
   Lastly, the CSA is responsible for completing all other duties as assigned. The
27 CSA is required to r... jobs.lowes.com
   1 company alum works here
28 3 weeks ago

*Id.* Ex. 5.

Indeed, LCI employees in this District identify LCI as their employer.   For example, Ms. MaryAnn Rodriguez has worked for LCI in Los Angeles and Orange Counties since at least June 2015 as an Account Executive Pro Services and Installed Sales Coordinator.



*Id.* Ex. 6.  Mr. Aaron Gillett has been employed by LCI for over 18 years, beginning in North Carolina, and since November 2013 in Los Angeles, holding positions including Restoration Services Specialist and Account Executive ProServices.



*Id.* Ex. 7. Mr. Allyn Fisher has been a Real Estate Manager at LCI for over four years in Newport Beach.



*Id.* Ex. 8. The foregoing examples are just a sampling of employees that are based in this District and have roles that likely require them to be in a physical store location.

Moreover, LCI has built at least one physical store in this District. *Id.* Ex. 9. (BergmanKPRS announces a "[g]round-up development that included demolition of a 100,000 sf. furniture store and construction of the new Lowe's Home Improvements

Center and its all new utility services" for its "[c]lient: Lowe's Company, Inc."). A Lexis Nexis Business Search indicates that LCI owns stores in at least the following locations: 1285 Magnolia Avenue, Corona, California 92879; 14873 Carmenita Road, Norwalk, California 90650; 14333 Bear Valley Road, Victorville, California 92392; 730 West Avenue K, Lancaster, California 93534; 3984 Indian Avenue, Perris, California 92571; 301 East Ocean Boulevard, Suite 1200, Long Beach, California 90802; and 158 West 84th Street, Los Angeles, California 90003.

| 5. | LOWES CO INC TIN: 56-0578072 | 1285 MAGNOLIA AVE CORONA CA 92879-2092 Aug 18 | 951-256-9004 - PDT Phone De-Listed in Electronic Directory Assistance |
| 13. | LOWES CO INC TIN: 56-0578072 | 14873 CARMENITA RD NORWALK CA 90650-5232 Aug 18 | 562-926-0826 - PDT Phone De-Listed in Electronic Directory Assistance |
| 17. | LOWES CO INC TIN: 56-0578072 | 14333 BEAR VALLEY RD VICTORVILLE CA 92392-5403 Jun 18 | 760-949-9565 - PDT Phone De-Listed in Electronic Directory Assistance |
| 37. | LOWES CO INC TIN: 56-0578072 | 730 W AVENUE K LANCASTER CA 93534-6001 Aug 18 | 661-341-9000 - PDT Business LOWE'S HOME IMPROVEMENT Active Phone |
| 38. | LOWES CO INC TIN: 56-0578072 | 3984 INDIAN AVE PERRIS CA 92571-3154 Aug 18 | 951-443-2500 - PDT Phone De-Listed in Electronic Directory Assistance |
| 41. | LOWE'S CO, INC | 301 E OCEAN BLVD STE 1200 LONG BEACH CA 90802-4839 Aug 18 | 704-758-1000 - EDT Business LOWES CORPORATE OFFICE Active Phone |
| 44. | LOWES CO INC (No recent public filings on file) | 158 W 84TH ST LOS ANGELES CA 90003-2814 Sep 08 | 213-629-2810 - PDT |

*Id.* Ex. 10.  Notably, this is in contrast to stores that appear to be separately owned by LHC:



*Id.*

### C.  LCI, LHC, and LGS Treat Their Documents and Financials in a Collective Manner as Evidenced by Discovery Directed at LHC.

As acknowledged by LCI and LGS, LCI and LGS have provided discovery through LHC in this case.  Dkt. No. 210.   Specifically, for example, in response to Epistar's 30(b)(6) deposition notices to LHC, LHC produced an LCI employee, Mr. Mark Beck, as a corporate representative of LHC.  Mr. Beck is a merchandising manager for LCI responsible for setting the pricing for all of the accused products for LHC.  Shih Ex. 11.  In addition, LHC produced another LCI employee, Mr. Christopher

Brown, merchandising director, for deposition relating to discovery produced by LHC in this case. *Id.* Ex. 12   In fact, each and every individual that LHC identified in its initial disclosures, other than the inventors of the asserted patents, are employees of LCI, not LHC. *Id.* Exs. 13-16.

Similarly, many of the documents produced by LHC in this matter came from LCI and LCS.  For example, the sales data produced in response to requests to LHC actually came from LCI's accounting database.[1]  Moreover, LHC produced LCI's test reports, LCI's emails, LGS's Master Standard Buying Agreement, LGS's Vendor Setup Sheets, LCI's purchase reports, LCI's Vendor Fund Processing Forms, LCI's job descriptions, and LCI's visual standards for their stores.

On August 30, 2018, pursuant to this Court's Order granting Epistar's Motion for Leave to Amend, the parties met and conferred regarding the scope of additional discovery that Epistar intends to seek from LCI and LGS and its potential impact to the current case schedule.  Shih Decl. ¶ 19.  During the meet and confer, Epistar expressed its intent to seek only limited discovery, and if LCI and LGS are willing to represent that no documents have been withheld on the basis of corporate distinctions, Epistar would move forward with LHC being the only party to the case. *Id.* ¶ 20.  LCI and LGS refused.

## III.    LEGAL STANDARD

"The patent venue statute, 28 U.S.C. §1400(b), provides that '[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.'"  *TC  Heartland LLC v. Kraft Foods Grp. Brands*,

---

[1] Rather than produce excerpts of the deposition transcripts of Mr. Mark Beck and Mr. Christopher Beck at this point, Epistar is prepared to file the relevant excerpts under seal in the event that any assertion is disputed by Defendants or as part of Epistar's submission after it has conducted venue discovery against LCI and LGS.

137 S. Ct. 1514, 1516 (2017).  "Our analysis of the case law and statute reveal three general requirements relevant to the inquiry:  (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant.  If any statutory requirement is not satisfied, venue is improper under § 1400(b)."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  "The district court is correct that a defendant's representations that it has a place of business in the district are relevant to the inquiry."  *Id.* at 1363.

"Whether to permit discovery relating to venue is within the Court's discretion." *OptoLu,, Inc. v. Cree, Inc*., No. CV-16-03828-PHX-DLR, 2017 U.S. Dist. LEXIS 114717 at *17 (D. Ariz. July 24, 2017) (citing *Kaia Foods, Inc. v. Bellafiore,* 70 F. Supp. 3d 1178, 1183 (N.D. Cal. 2014)); *see Trusted Health Prods., Inc. v. Blue Cross Labs., Inc.*, No. 5:13-375-DCR, 2014 WL 3586256, at *2 (E.D. Ky. July 21, 2014) ("the scope of discovery concerning jurisdiction, venue and transfer is within the Court's discretion"); *Va. Innovation Scis., Inc. v. Samsung Elecs. Co*., 928 F. Supp. 2d 863, 874 (E.D. Va. 2013) ("district courts enjoy broad discretion in determining whether to grant limited discovery to explore jurisdictional facts (including venue)"); *Eclipse IP, LLC v. ECCO USA, Inc.*, No. 5:12-CV-160, 2013 WL5838675, at *6 (N.D. W. Va. Oct. 30, 2013) (same).

"Where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Bristol-Myers Squibb Co. v. Mylan Pharms., Inc.,* No. No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372, at *55 (D. Del. Sept. 11, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)).  "To show that discovery is warranted, a party must, at a minimum, state a 'non-frivolous' basis for venue and do so with 'reasonable particularity.'" *Bristol-Meyers Squibb Co*., 2017 U.S. Dist. LEXIS 146372, at *55 (citing *Eastman Chem. Co. v. AlphaPet, Inc*., No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757, at *2 (D. Del. Nov. 4, 2011)). "Substantial confusion exists regarding the circumstances in which an entity will be

1  found to have a 'regular and established place of business' in the district ....

2  Accordingly, and in the absence of any binding precedent directly on point, the Court

3  finds that some additional factual development would be useful." *See RegenLab USA*

4  *LLC v. Estar Techs. Ltd.*, No. 16-cv-08771, 2017 U.S. Dist. LEXIS 131627, at *9

5  (S.D.N.Y. Aug. 17, 2017). "This suggests that, at least in a difficult case, to allow the

6  adversarial process to aid the Court in makes a fact-specific decision on a well-

7  developed factual record." *Mallinckrodt IP v. B. Braun Med. Inc.*, No. 17-365-LPS,

8  2017 U.S. Dist. LEXIS 205593, at *6 (D. Del. Dec. 14, 2017). Similarly, a court can

9  find that "Plaintiff's theory—that the 'place' of any [defendant's entity], including

10 [defendant's] affiliates, subsidiaries, parents or alter ego, may be attributable to

11 [defendant] for purposes of venue—is not frivolous and justifies some limited venue-

12 related discovery." *Id*. at *7. Further, "if the corporations disregard their separateness

13 and act as a single enterprise, they may be treated as one for purposes of venue."

14 *Symbology Innovations, LLC, v. Lego Sys., Inc.*, 158 F. Supp. 3d 916 (E.D. Va. 2017).

15 **IV.    ARGUMENT**

16     **A.    Discovery Will Establish that LCI Has a Regular and Established Place of Business in this District.**

17
18         **1.    Discovery Will Show That LCI Owns or Operates a Physical Place in this District.**

19     In paragraphs 15-17 of the Amended Complaint, Epistar has alleged the

20 following:

21     • LCI and its subsidiaries operate physical retails stores in the District, owned by

22       LHC, that sell the products accused of infringement;

23     • LCI and its subsidiaries own and operate distribution facilities;

24     • LCI and its subsidiaries operate facilities in this district for LGS's importation

25       operations.

26 Dkt. No. 171 ¶¶ 15-17. These allegations in the complaint (which must be taken as true

27 for the purpose of the Motion to Dismiss) are supported by additional evidence. For

28

example, according to LCI's own press release, LCI has hundreds of employees working as several locations in this District.  *See* Shih Decl. Ex. 3 ("*Lowe's Companies, Inc.* announced this week that it is hiring more than 45,000 seasonal workers, including 662 in Southern California.") (emphasis added); *see also id.* Ex. 4; *In Re Cray*, 871 F.3d at 1363 ("The district court is correct that a defendant's representations that it has a place of business in the district are relevant to the inquiry.").  Numerous online job listings show that it is LCI, not LHC, that is hiring for various California locations including, for example, Pico Rivera, Santa Clarita, Industry, and Torrance.  *Id*. Exs. 5, 6.

Indeed, public records show that there are facilities that are separately owned by LCI.



*Id*. Ex. 10.  Moreover, LCI developed a 10,000 square foot store in San Dimas, California.  *See id.* Ex. 9 (BergmanKPRS announces a "[g]round-up development that included demolition of a 100,000 sf. furniture store and construction of the new Lowe's

Home Improvements Center and its all new utility services" for its "[c]lient: Lowe's Companies, Inc.").

In view of the foregoing reasons, Epistar should be permitted to conduct venue discovery to establish the full nature of LCI and LGS's presence in this District. *See Yardstash Sols., LLC v. Marketfleet, Inc.*, No. 17-cv-0625-JLS-MDD, 2017 U.S. Dist. LEXIS 177871, at *1-2 (S.D. Cal. Oct. 26, 2017) ("The district court has determined that venue discovery may be useful in this case and has approved such discovery as may be order."); *see also Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 U.S. Dist. LEXIS 89990, at * 2-3 (N.D. Cal. June 12, 2017) ("The undersigned judge granted plaintiff two weeks to conduct limited venue related discovery and to provide its own factual response."); *Nike v. Skechers U.S.A., Inc.*, No. 3:16-cv-007-PK, 2017 WL 3389022, at *1-3 (D. Or. June 30, 2017) ("Defendant's sales" in the District (not limited to just the Accused Products), "the terms of Defendant's relationship with the retailers" selling products in the District, "the identities of Defendant's employees, agents, sales or service representatives who have lived in or conducted business in [the District], physical or electronic … the nature of their relationship with Defendant, and the activities, physical or electronic, of Defendant and its employees, agents, and representative in [the District]," "information on professional services in [the District] retained by Defendant," "personal property [Defendant] owns, leases, or manages in [the District], including marketing materials, demonstration equipment, and product literature," "documents identifying real estate in [the District] that is owned, leased, rented, or otherwise paid for directly by Defendant" (including "leases of trade show booths or spaces, or conference spaces for demonstrations"), and any "address or phone number" within the District that Defendant directed to be listed "as a means of contacting [Defendant].").

### 2. Discovery Will Show That LCI's Physical Places are Regular and Established Places of Business.

The stores that are operated by LCI and LGS sell and offer for sale products that are accused of infringement in this case.  Dkt No. 171 ¶ 15.  LCI and LGS also own and operate distribution facilities including a Reginal Distribution Center in this District.  *Id*. ¶ 16.  Moreover, the positions held by various LCI  employees in this District further demonstrate continuing business dealings with customers located in this District.  For example, one LCI employee in this District holds the position of "Installed Sales Cooridnator [sic]" and is responsible for "driving sales with assigned customers along with bringing in new business .... [and for] growing, developing, maintaining, and managing the overall relationship with large businesses, home offices, branches of national customers, and existing business accounts .... [a] majority of my time is spent with customers at [j]ob sites and building new relationships with customers who do not already work with Lowes Pro Services." Shih Decl. Ex. 6.  Another LCI employee in this District holds the position of "Account Executive Proservices" in Los Angeles and has been with LCI for over 18 years.  *Id.* Ex. 7.

Another LCI employee in this District holds the position of "Real Estate Manager" and is responsible for "[m]anag[ing] a portfolio of approximately 250 locations throughout the Pacific Northwest ... [m]anag[ing] the full life cycle of real estate property management, Regional/Market Long Range Planning (LRP) and implementation of policies, procedures, and programs within their assigned division .... [r]eviews and evaluates existing stores within their division for changes in local ordinances, real estate, ancillary and other such agreements affecting operations .... [and] [c]oordinates with internal partners in Site Incentives, Excess Property, Engineering and Construction (E&C), Facilities, Distribution and Supply Chain to leverage economies of scale ...." *Id.* Ex. 8.

Moreover, LCI, and not LHC, are conducting hirings in this District.  *Id.* Ex. 5. Further venue discovery will likely confirm more LCI employees working at various business locations in this District that conduct regular and established business activities

in this District.  *See, e.g., RegenLab USA LLC v. Estar Techs. Ltd*., 2017 U.S. Dist. LEXIS 131627, at *9-10 ("The parties should meet and confer regarding the precise contours of these declarations, but, by way of example, Defendants should explain where their employees in this district work and who pays for the work space; these employees' titles and duties, including whether they provide any technical support for the companies' customers or perform demonstrations of the product at issue; and more information regarding the employees' role in the customer purchasing and sales process.").

### 3.   Discovery Will Show That The Physical Places of LCI Are Owned by LCI.

As demonstrated by a Lexis Nexis Business Search, LCI, not LHC, owns numerous business locations including, but not limited, to the two listed below:



Shih Decl. Ex. 10.  In fact, it is LCI's tax number that appears in the Lexis Nexis Business Search for LCI.  *Id.*  Further venue discovery will help confirm the ownership of these places and any LCI and LGS employees that operate or work from these locations.

### 4.   Discovery Will Show That LCI and LGS Conduct Acts of Infringement in This District.

There is no dispute that LCI and LGS purchased the products accused of infringement in this case. There is also no dispute that LCI and LGS purchased these products for sale at various physical stores located in this District.  Further, it is LCI, and not LHC, that accounts for profits received from the sales of the Accused Products

in this District.  Further venue discovery will confirm that nature of the sales and transactional cycles between LCI, LGS, and/or LHC.  *See generally Swamy*, 2017 U.S. Dist. LEXIS 89990, at * 2-3; *Nike*, 2017 WL 3389022, at *1-3.

### B. Discovery Will Demonstrate that the Lack of Corporate Separateness between LCI, LHC, and LGS Warrants Imputing LHC Business Activities and Locations in This District Onto LCI and LGS for the Limited Purpose of Establishing Proper Venue.

Throughout the case against LHC, Epistar has had no knowledge of whether relevant documents and information produced were in the possession of LHC, LCI, or LGS.  Epistar has no knowledge whether relevant document and information have been withheld by LCI and LGS based on corporate entity designations.   For example, in response to Epistar's 30(b)(6) deposition notice to LHC, LHC produced LCI employee, Mr. Mark Beck, at its corporate representative.  Shih Decl. Ex. 17.  Mr. Beck was not an employee of LHC and has never been an employee of LHC.  In response to Epistar's 30(b)(6) deposition notice directed at maintenance and retention of documents relevant to this case, LHC produced another LCI employee, Mr. Christopher Brown, who again has never been an employee of LHC (even Mr. Brown uses LCI and LHC interchangeably and admits that he is really an employee of LCI).  *Id*. Ex. 18.  In fact, each and every single individual identified in LHC's disclosures appears to be an LCI employee.  *Id*. Exs. 13-16.

Moreover, many documents produced in this case came from LCI and LGS, and not LHC.  For example, the sale records produced in this case in response to discovery directed to LHC actually came from LCI's accounting databases.  Other LCI documents produced in this case include LCI's test reports, email communication between LCI employees, LGS's Master Standard Buying Agreement, LGS's Vendor Setup Sheets, LCI's purchase reports, LCI's Vendor Fund Processing Forms, LCI's job descriptions, and LCI's visual standards for their stores.  Even the indemnification claims relevant to this case are between an LCI employee and a third-party manufacturer.

When viewed in the aggregate, it appears that Epistar is litigating against LCI and LGS hiding behind the veil of LHC.  LCI apparently controls the finances of LHC and LGS and manages their assets in the form of both personnel and real estate.  *See id*. Ex. 8 (Mr. Allyn Fisher is a Real Estate Manager for LCI in this District.).  Combined with the fact that LCI, LHC, and LGS share the same mailing address, registered agent, nearly all the same managers and officers, and principal place of business, there does not appear to be corporate separateness between LCI, LHC, and LGS such that the activities and physical presence of LHC should be imputed onto LCI and LGS.  Dkt. No. 170 at 4.  Further discovery will demonstrate a lack of corporate separateness between LCI, LGS, and LHC.  *See, e.g., Mallinckrodt*, 2017 U.S. Dist. LEXIS 205593, at *7 ("Similarly, a court can find that "[p]laintiff's theory—that the 'place' of any [defendant's entity], including [defendant's] affiliates, subsidiaries, parents or alter ego, may be attributable to [defendant] for purposes of venue—is not frivolous and justifies some limited venue-related discovery.").

It is fundamentally inequitable when LCI and LGS are apparently selectively participating in the discovery process and refuse to represent that they have not withheld relevant documents when the Motion for Leave to Amend this Complaint was granted by this Court.  *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc*., No. CV 14-03053 MWF (AFMx), 2018 U.S. Dist. LEXIS 35616, at * 63 (C.D. Cal. Mar. 2, 2018) (citing *Uniden Am. Corp. v. Ericsson Inc.,* 181 F.R.D. 302, 306 (M.D.N.C. 1998)) ("Accordingly, under Rule 34, courts are to 'closely examine the actual relationship between two corporations' when one is a party and the other a non-party with claimed control of responsive documents, in order to 'guard against not just fraud and deceit, but also sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide documents or make discovery of them difficult.'").

**C.    Epistar will be Prejudiced if its Case Against LHC is Transferred or Stayed.**

Epistar has already expended millions of dollars in this case against LHC.  Shih Decl. ¶ 21.  Epistar has worked diligently since the onset of this case to adhere to the scheduling order as set forth by this Court.  Claim construction has occurred, expert discovery has concluded, and Summary Judgement hearings have been held.  In short, the case is ripe for trial.  If this court finds the venue to be improper as to LCI and/or LGS and transfers or stays Epistar's current case against LHC, Epistar will be severely prejudiced by having to re-litigate the entire case against LCI and LGS, especially considering that (1) there is no dispute whether venue as to LHC is proper and (2) Epistar is only seeking additional damages discovery previously withheld, if any, from LCI and LGS.  *See Boston Sci. Corp. v. Cook Grp., Inc.*, 269 F. Supp. 3d 229 (D. Del. 2017) (citing *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-CV-4219-TWT, 2017 U.S. Dist. LEXIS 122219, at *3 (N.D. Ga. Aug. 3, 2017) ("Prototypical examples of where the Court might reach such a conclusion include where a defendant raises venue for the first time on the eve of trial, or many months (or years) after *TC Heartland* was handed down, or where dismissal or transfer would unduly prejudice a plaintiff.").  As such, Epistar respectfully requests this Court sever, and not transfer or stay, Epistar's case against LHC in the event the Court determines that venue is improper as to LCI and LGS.

The reliance by Defendant on *Dokoozian Construction LLC v. Executive Risk Specialty Insurance Company*, No. C15-703 MJP, 2015 WL 12085859 (W.D. Wash. July 28, 2015), is misplaced.  In *Dokoozian Construction LLC*, the Court's decision on the "wholesale" transfer occurred a little more after three months after the filing of the complaint as opposed to here, where more than 16 months have passed since the Complaint was filed and after the parties have completed Summary Judgement proceedings.  2015 WL 12085859, at *4.  Similarly, *Duarte v. California Hotel & Casino*, No. 08-00185 JMS/LEK, 2009 WL 4668739 (D. Haw. Dec. 4, 2009), is not a

patent case and no significant substantive activities have occurred before the transfer of the case.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied, or in the alternative, Epistar should be allowed to conduct expedited, limited discovery related to whether venue in the District is proper for LCI and LGS.

1    Dated:  October 31, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


*/s/ James C. Yoon*
James C. Yoon

*Attorneys for Plaintiff
Epistar Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record, who are deemed to have consented to electronic service are being served this date with a copy of the foregoing document.  Any other counsel of record will be served by electronic mail, facsimile and/or first-class mail on this same date.

Dated: October 31, 2018                     WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation


                                            By:  _____/s/ James C. Yoon_____
                                                      James C. Yoon

                                            *Attorneys for Plaintiff Epistar Corporation*