UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE (1) MOTION TO STRIKE PORTIONS OF PLAINTIFF'S EXPERT REPORT (DKT. 159); (2) MOTION TO STRIKE LOWE'S HOME CENTERS, LLC'S EXPERT OPINIONS UNDER RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE (DKT. 163); (3) MOTION FOR SUMMARY JUDGMENT AS TO NON-INFRINGEMENT AND INVALIDITY (DKT. 164); (4) MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO INFRINGEMENT (DKT. 168); (5) SUPPLEMENTAL ENABLEMENT AND CLAIM CONSTRUCTION BRIEFING RELATING TO SUMMARY JUDGMENT MOTIONS (DKTS. 249–254)**

## I.    Introduction

In this action, Epistar Corporation ("Plaintiff") alleges that Lowe's Home Centers, LLC ("Defendant") infringed U.S. Patent Nos. 6,346,771 (the '771 Patent), 7,560,738 (the '738 Patent), 8,492,780 (the '780 Patent), 8,587,020 (the '020 Patent), and 8,791,467 (the '467 Patent). Complaint, Dkt. 1; *see also* First Amended Complaint, Dkt. 171. This Order addresses the following motions: (i) Defendant's Motion to Strike Portions of Plaintiff's Expert Report (Dkt. 159); (ii) Plaintiff's Motion to Strike Defendant's Expert Opinions under Fed. R. Civ. P. 37 (Dkt. 163); (iii) Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 164); and (iv) Plaintiff's Motion for Partial Summary Judgment as to Infringement (Dkt. 168).

On October 15, 2019, a hearing was held on those motions, as well as one to strike infringement contentions. Dkt. 213. At the hearing, counsel reported that they believed a further settlement conference with the Magistrate Judge would be productive after a final ruling was issued on the motion to strike infringement contentions. *Id.* After the final ruling on that motion was issued, the parties participated in a further settlement conference on January 11, 2019. *See* Dkts. 232, 239. They did not reach a settlement. Dkts. 239, 240. An order then issued directing the parties to file supplemental briefs on certain issues raised by the two motions for summary judgment, including enablement and claim construction. Dkt. 243. The parties timely filed supplemental briefs in February and March 2019. Dkts. 249–254. Upon the filing of those briefs, the pending motions were taken under submission

For the reasons stated herein, Defendant's Motion to Strike Portions of Plaintiff's Expert Report (Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

159) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's Motion to Strike Defendant's Expert Opinions under Fed. R. Civ. P. 37 (Dkt. 163) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 164) is **GRANTED** as to Claims 1, 2, and 7 of the '467 Patent and Claims 13–17 and 24 of the '738 Patent based on lack of enablement. The other grounds raised by Defendant's Motion and Plaintiff's Motion for Partial Summary Judgment of Infringement (Dkt. 168) as to the asserted claims of the '467 Patent and Claims 13–17 and 24 of the '738 Patent are **MOOT**.

The grounds raised in Defendant's Motion for obviousness of Claims 1–3 and 8 of the '738 Patent are **DENIED**. Plaintiff's Motion for Partial Summary Judgment of Infringement (Dkt. 168) as to Claims 1–3 and 8 of the '738 Patent is **GRANTED**.

Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 164) is otherwise **DENIED** as to the asserted claims of the '771 and '780 Patents. Defendant's objections to the evidence submitted by Plaintiff in support of its opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 208-1) are **OVERRULED**. Plaintiff's objections to the evidence submitted by Defendant in support of Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 200) are **OVERRULED**.

**II.     Factual Background**

An overview of four of the five Asserted Patents is set forth in the Claim Construction Order issued July 10, 2018, which is incorporated by this reference. Dkt. 140. The Asserted Patents relate to particular configurations for light emitting diode ("LED") lamps. The relevant aspects of the claims and the accused technology are discussed in further detail in connection with the analysis of the relevant motions.

Plaintiff argues that 64 of Defendant's LED light bulb products infringe various asserted claims of the Asserted Patents. *See generally* Plaintiff's Final Infringement Contentions (Redline), Dkt. 129-2 at 127–247 (Exhibit B). Specifically, as of April 30, 2018, Plaintiff alleged that Defendant infringed the following claims:

- At least Claims 32, 33, 36, and 38 of the '771 Patent;
- At least Claims 1–3, 8, 13–17, and 24 of the '738 Patent;
- At least Claims 1, 2, and 7 of the '467 Patent;
- Claims 1–7 of the '780 Patent; and
- At least Claims 2, 8–13, and 15 of the '020 Patent.

*Id.*; *see also* Dkt. 143 at 7 n.3 (Defendant's Reply in Support of Motion to Strike Final Infringement Contentions, stating Plaintiff withdrew Claim 1 and 16 of the '020 Patent on July 2, 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

### III. Analysis

#### A. Legal Standards

##### 1. Summary Judgment

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 269. The burden initially is on the moving party to show an absence of a genuine issue of material fact or to show that the non-moving party will be unable to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477 U.S. at 323. Only if the moving party meets its burden must the non-moving party produce evidence to rebut the moving party's claim and demonstrate a genuine issue of material fact. *Id.* at 322–23. If the non-moving party meets this burden, then the motion must be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1103 (9th Cir. 2000).

##### 2. Direct Infringement

Determining patent infringement is a two-step process. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Id.* (citations omitted). "Whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact." *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207 (Fed. Cir. 2001). Because the ultimate burden of proving infringement rests with the patentee, an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). If the moving party meets this initial burden, the burden shifts to the party asserting infringement to set forth, by affidavit or as otherwise permitted under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

The patentee also bears the burden of proving infringement under the doctrine of equivalents. *Am. Calcar, Inc. v. Am. Honda Motor Co.,* 651 F.3d 1318, 1338–39 (Fed. Cir. 2011). The equivalence of a proposed substitute for a missing element is a question of fact. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38–39 (1997).

##### 3. Invalidity

A patent enjoys a presumption of validity. *See* 35 U.S.C. § 282(a). The burden of establishing invalidity is on the moving party and, to succeed, the moving party must come forth with clear and convincing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).

       a)      Invalidity for Lack of Enablement under 35 U.S.C. § 112, ¶ 1

To be valid, a patent must provide a written description of the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112, ¶ 1.[1] Enablement is determined as of the effective filing date of the patent's application. *In re '318 Patent Infringement Litig.*, 583 F.3d 1317, 1323 (Fed. Cir. 2009).

The enablement requirement ensures that "the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims." *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.,* 166 F.3d 1190, 1195–96 (Fed. Cir. 1999). Accordingly, the specification must provide sufficient teaching so that "one skilled in the art could make and use the full scope of the invention without undue experimentation." *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005) (citing *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1365 (Fed. Cir. 1997); *In re Wands,* 858 F.2d 731, 736–37 (Fed. Cir. 1988)). "The key word is 'undue,' not 'experimentation.'" *Wands,* 858 F.2d at 737. Thus, the specification need only teach the specifics of the invention that one skilled in the art could not determine without undue experimentation. *See id.* at 736–37 ("Enablement is not precluded by the necessity for some experimentation such as routine screening.").

Whether one skilled in the art could make and use the claimed invention without undue experimentation is a question of law. However, the determination is based on weighing several factual findings. *Id.* at 737. These considerations are called the "*Wands* factors." They include: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id.*; *see also Amgen, Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1213 (Fed. Cir. 1991) (*Wands* factors "are illustrative, not mandatory" such that the relevant enablement determination depends upon the facts of the particular case).

       b)      Invalidity for Indefiniteness under 35 U.S.C. § 112, ¶ 2

A patent specification "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention." 35 U.S.C. § 112, ¶ 2. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the

---

[1] On September 16, 2012, the America Invents Act changed the labeling convention for this section of the Patent Act from numbers to letters. Thus, for example, for patent applications with effective filing dates after September 16, 2012, 35 U.S.C. § 112(a) applies rather than 35 U.S.C. § 112 ¶ 1. The America Invents Act did not otherwise change the language of this section of the Patent Act. Each of the Asserted Patents has a listed priority date (*i.e.*, effective filing date) prior to March 16, 2013. Defendant has not submitted a challenge to any of the Asserted Patent's priority dates for consideration. This Order thus refers to the pre-AIA labeling convention with respect to subsections of 35 U.S.C. § 112.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "[D]efiniteness is measured from the viewpoint of a person skilled in [the] art at the time the patent was filed." *Id.* at 2128 (citation omitted). To understand the meaning of a claim term as understood by persons of skill in the art, courts may look to extrinsic evidence, such as expert testimony. *Philips v. AWH Corp.*, 415 F.3d 1303, 1314, 1317 (Fed. Cir. 2005).

A patent does not satisfy the definiteness requirement merely because "a court can ascribe some meaning to a patent's claims." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Nautilus*, 572 U.S. at 911). Rather the claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art. *Id.* (citing *Nautilus*, 572 U.S. at 911, n.8). "Indefiniteness under 35 U.S.C. § 112, ¶ 2 is an issue of claim construction and a question of law." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009); *See also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1339 (Fed. Cir. 2015) (claim construction analysis, including indefiniteness analysis, may include underlying factual questions requiring resolution by the judge).

c)      Invalidity for Obviousness under 35 U.S.C. § 103

A patent is invalid for obviousness only "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Whether a patent is invalid as obvious is a question of law based on underlying facts. *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010) (citations omitted). "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). A court may also take into account "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, [copying, and unexpected results.]" *Id.* at 17–18; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000).

"A party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015) (citations omitted). "Whether a motivation to combine references has been demonstrated is a question of fact." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001). The Supreme Court has explained:

[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

some sense, is already known.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19 (2007).

It is also appropriate to find a motivation to combine prior art references in light of the nature of the problem to be solved. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004). Although a teaching, suggestion or motivation to combine known elements found in the prior art can be probative of obviousness, the lack of any such encouragement to combine the elements does not always preclude a finding of obviousness so long as a person having ordinary skill in the art would consider the patented invented obvious based on market forces, known problems to be solved, etc. *KSR*, 550 U.S. 398, 418–20 ("[A] court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.").

B.    Analysis

1.    Plaintiff's Objections to Evidence Supporting Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity

Plaintiff argues that Defendant has not presented admissible evidence in support of its Motion for Summary Judgment of Non-Infringement and Invalidity. *See* Dkt. 199 at 1; Dkt. 200. Plaintiff contends that the submission as to Defendant's experts are inadmissible because they were not in the form of a declaration or affidavit. Dkt. 199 at 1. Plaintiff argues that an attorney's declaration that seeks to authenticate and introduce an expert's report is insufficient, and that Defendant's experts did not sign their reports under penalty of perjury. In response, Defendant states that the challenged expert reports or the declarations adopting them were signed under penalty of perjury. Dkt. 208 at 1 (citing Dkt. 164-19 at 51, Dkt. 164-23 at 9, Dkt. 164-24 (expert reports of Ferguson signed under penalty of perjury; declaration of Goldhaber-Gordon adopting expert report under penalty of perjury). In light of these signed statements, as well as the reliability of the representation as to the preparation of each report, Plaintiff's objections to Defendant's expert reports and declarations are **OVERRULED**.

2.    The '467 Patent

Defendant seeks a determination that the asserted claims of the '467 Patent are invalid on three separate grounds. Dkt. 164 at 4–12. Plaintiff seeks a determination that Defendant has infringed the asserted claims of the '467 Patent. Dkt. 203 at 21–29. Because it is determined that the claims of the '467 Patent are invalid for lack of enablement, the following discussion is limited to that issue. The parties' other disputes as to the '467 Patent are not addressed.

Claim 1 of the '467 Patent recites,

1.    A light-emitting structure, comprising:
a layer structure, having a first edge, for emitting light; and
a carrier substrate, having a second edge, bonded to the layer structure and not
        being a single crystal wafer;
***wherein the light-emitting structure has a light output power of <u>more than</u> 4***
***mW at 20 mA current***.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

'467 Patent, Claim 1 (emphasis added). Claims 2 and 7 of the '467 Patent, which are the two other asserted claims of the '467 Patent, each depends from Claim 1. Defendant argues that the asserted claims are invalid because the '467 Patent fails to enable a person of skill in the art at the time of the invention to practice the full scope of the claim limitation "wherein the light-emitting structure has a light output power of more than 4 mW at 20 mA current." *See* Dkt. 164 at 4–6.

Defendant notes that there are no embodiments in the specification referring to a light-emitting structure of the invention with a light output power of more than 4 mW at 20 mA current. Defendant also relies on the following deposition testimony by Plaintiff's expert, Eugene Fitzgerald:

> Q. Okay. So at the time in the 2001-2002 time frame, there's no way somebody could have had – knew how to produce an LED making 25 milliwatts at 20 milliamps, right?
> A. Say that again. What's the – what are the conditions?
> Q. 2001-2002 time frame
> A. Yeah.
> **Q – a person of ordinary skill in the art couldn't have reached 25 milliwatts at 20 milliamps, right?**
> **A. I think that's – well, I think that's correct, obviously, because they – they have said that it's a significant improvement in their device.**

Deposition Transcript of Eugene Fitzgerald, July 23, 2018 ("Fitz Tr. 1"), Dkt. 164-4, 159:18–160:7 (emphasis added).

Plaintiff responds by arguing that a person of skill in the art "would understand that there is an inherent limit to the power output improvement." Dkt. 199 at 5 (citing Declaration of Eugene Fitzgerald in Support of Opposition to Defendant's Motion for Summary Judgment ("Fitz Decl."), Dkt. 199-10, ¶ 12). Plaintiff then provides the following rebuttal to Defendant's position regarding enablement of the full scope of the claim phrase:

> [Defendant] further argues that the claim is not enabled because a [person of skill in the art at the time of the invention ("POSITA")] would not have known how to reach a power output at 25 mW at 20 mA. This argument is misplaced. As discussed above, a claim is enabled if a POSITA, after reading the specification, could practice the claimed invention without undue experimentation. Both experts agree that a POSITA would have been able to practice the invention at a power of more than 4 mW at 20 mA, rendering the claim sufficiently enabled.

Dkt. 199 at 6 (citations omitted).

This argument does not adequately address the legal standard required to demonstrate enablement. The opinions of the Federal Circuit "make clear that the specification must enable the *full scope* of the claimed invention." *Trustees of Boston Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1364 (Fed. Cir. 2018) (emphasis added); *see also MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1379 (Fed. Cir. 2012) (claim referring to "a change in the resistance by at least 10% at room temperature" not adequately enabled where claims covered resistance changes up to infinity and the inventor's best efforts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

had achieved a maximum change in resistance of only 11.8%). Although Fitzgerald opines that a person of skill in the art would recognize an "inherent upper limit to the efficiency that could be achieved by the invention of the '467 [P]atent," he does not explain how the specification of the '467 Patent enables a person of skill in the art to practice the full scope of the claimed invention up to that inherent upper limit. Indeed, Fitzgerald does not state the "inherent upper limit" of the output power of the '467 Patent. Plaintiff also does not dispute Fitzgerald's deposition testimony that a person of ordinary skill in the art at the time of the invention would not have known how to produce an LED making 25 mW at 20 mA. Nor does Fitzgerald assert that 25 mW at 20 mA would be outside of the "inherent upper limit" of the output power that could be achieved under this limitation of the '467 Patent. For these reasons, Plaintiff has not submitted evidence sufficient to show a triable issue of material fact in response to Defendant's clear and convincing evidence showing that the full scope of the claim limitation "wherein the light-emitting structure has a light output power of more than 4 mW at 20 mA current" is not enabled, even under Plaintiff's interpretation of that limitation. Because Claims 2 and 7, which depend from Claim 1, by definition include the same limitation, they are also invalid on the same basis.

Fitzgerald states that "an output more than 4mW at 20 mA current" is a specific operating characteristic of the claimed invention, not a functional limitation. Fitz Decl. ¶ 14. At the hearing, Plaintiff reiterated this position. Through this argument, Plaintiff suggested that a specific operating characteristic in a claim is considered differently under the legal doctrine of enablement than a functional limitation in a claim. After the hearing, the parties were directed to file supplemental briefs on that issue. Dkt. 243 at 2 ("Plaintiff is directed to file a supplemental brief not to exceed three pages that provides legal authority to support its position that the legal doctrine of enablement applies different standards when claimed operating characteristics, rather than functional limitations, are considered. This brief should also state succinctly Plaintiff's contention as to the difference between a claimed operating characteristic and a claimed functional limitation.").

Plaintiff's supplemental brief seeks to distinguish the claims at issue in *MagSil* and those of the '467 Patent. Dkt. 249 at 1. Plaintiff argues that in *MagSil*, the relevant claim limitation at issue stated: "[a] device forming a junction having a resistance comprising: . . . an electrical insulator . . . , wherein applying a small magnitude of electromagnetic energy . . . ***causes a change in the resistance by at least 10% at room temperature***." *MagSil*, 687 F.3d at 1379 (emphasis added). Plaintiff suggests that, because the clause in the '467 Patent "[a] light-emitting structure . . . ***wherein the light-emitting structure has a light output power of more than 4 mW at 20 mA current***," does not require a "causal relationship," it is distinguishable from the one at issue in *MagSil*. Dkt. 249 at 1. However, Plaintiff's supplemental brief does not cite legal authority to support the argument that *MagSil* only applies where a claim limitation specifically refers to a causal relationship. In *MagSil*, the Federal Circuit refers to *In re Fisher*, 427 F.2d 833 (C.C.P.A. 1970) to support its determination of lack of enablement. In *Fisher*, the claims recited "[a]n adrenocorticotrophic hormone [ACTH] preparation containing at least 1 International Unit [IU] of ACTH per milligram." *Id.* at 835. *MagSil* describes the determination made in *Fisher*, as follows: "[t]he claims were not patentable because the specification did not enable ACTH potencies much greater than 2.3 IUs, when 'at least 1' was claimed." *MagSil*, 687 F.3d at 1383. The issues in *MagSil* and *Fisher* did not turn on whether the claims used a word like "cause" or otherwise evoked a "causal relationship." Instead, *MagSil* focused on the open-ended nature of the claim limitations:

> The open claim language chosen by the inventors does not grant them any forgiveness on the scope of required enablement . . . . The '922 patent specification only enables an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

ordinarily skilled artisan to achieve a small subset of the claimed range. The record contains no showing that the knowledge of that artisan would permit, at the time of filing, achievement of the modern values above 600% without undue experimentation, indeed without the nearly twelve years of experimentation necessary to actually reach those values. The enablement doctrine's prevention of over broad claims ensures that the patent system preserves necessary incentives for follow-on or improvement inventions. In this case, for instance, many additional inventions and advances were necessary to take this technology from a 20% resistance change to the over 600% change in present data storage systems. Moreover this technology area will continue to profit from inventive contributions. Enablement operates to ensure fulsome protection and thus "enable" these upcoming advances.

*MagSil*, 687 F.3d at 1383–84.

The asserted claims focus on the increase in light output power as a core element of the invention. However, the undisputed evidence from the deposition testimony of Plaintiff's expert is that a person of ordinary skill in the art would not have known how to produce an LED making 25 mW at 20 mA at the time of the invention. Fitz Tr. 1, Dkt. 164-4, 159:18–160:7. There is no disclosure in the patent specification as to how to produce an LED making anything over 4 mW at 20 mA. The general statements in Fitzgerald's declaration about the inherent upper limit to the efficiency that could be achieved by the invention of the '467 Patent do not explain either how the claims are enabled up to that alleged inherent upper limit, or exactly the "inherent upper limit" that he asserts. *See* Fitz Decl. ¶ 14. This is insufficient to satisfy the enablement requirement.

For these reasons, Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity is **GRANTED** as to Claims 1, 2, and 7 of the '467 Patent based on lack of enablement. The other grounds raised by Defendant's Motion and Plaintiff's Motion for Summary Judgment of Infringement as to these claims are **MOOT**.

### 3.   The '738 Patent

Defendant has moved for a determination that some of the claims of the '738 Patent are invalid for lack of enablement, one of the claims of the '738 Patent is invalid as indefinite, and all of the asserted claims of the '738 Patent are invalid as obvious. Plaintiff has moved for a determination that Defendant has infringed all of the asserted claims of the '738 Patent. After the October 15, 2018 hearing, the parties were directed to provide supplemental briefing regarding the meanings of certain claim terms that are central to their disputes as to enablement and infringement. Each issue is addressed in the following discussion.

#### a)   Supplemental Claim Construction Issues

The summary judgment motions appeared to present a dispute regarding the meaning of the term "formed on," including as it appears in Claim 13 of the '738 Patent. Claim 13 states, *inter alia*, "an adhesive layer formed on the substrate, the adhesive layer comprising a top surface and a plurality of adhesive regions disposed on the top surface; a first light-emitting stack layer formed on a first adhesive region of the plurality of adhesive regions." '738 Patent, Claim 13. The aforementioned supplemental briefs were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | | Date | February 11, 2020 |
|---|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | | |

#

to address the meaning of the terms "formed on" and "disposed on."

Defendant argues that "formed on" means "made or produced upon . . ." Dkt. 252 at 5. Defendant argues that the '738 Patent "describes the structure depicted in figure 1 as the result of a sequence of process steps, with each structure being 'formed on' a proceeding structure." *Id.* at 6 (citing '738 Patent at 2:58–3:25). Defendant also argues that the prosecution history and extrinsic evidence supports its position, as does the fact that the patent applicant used the terms "formed on" and "disposed on," such that the different terms should be presumed to have different meanings. *Id.* at 4, 6. Defendant's arguments otherwise focus on an assertion that there cannot be an intervening growth layer between the claimed light emitting stack layer and the claimed adhesive. *See, e.g.* Dkt. 253 at 1 ("The disputes include whether the claims encompass an entirely different substrate inserted into the arrangement . . . . [T]he disputes are whether the 'stack' can be disposed/formed on a growth substrate instead of an 'adhesive layer formed on the substrate.'" (emphasis in original)).

Plaintiff argues that "formed on" should have its plain and ordinary meaning and not be limited in the manner proposed by Defendant. Plaintiff observes that "the dependent claims recite layers formed between the adhesive layer and the epitaxial light-emitting stack layer." Dkt. 254 at 1. Plaintiff disputes Defendant's interpretation of the prosecution history and cites to other dictionary definitions to support its position that the term "formed on" is broader than "make or produce upon." *Id.* at 3. Plaintiff argues that certain dependent claims and portions of the specification in particular that refer to an "insulating layer" "formed between" the stack layer and adhesive layer could include growth substrates. Plaintiff also argues that Claim 1 "implies that the growth substrate can be included as part of the claimed LED array" where it refers to an "*epitaxial* light-emitting stack layer." Dkt. 251 at 2, 3 (emphasis added).

The dependent claims refer to layers "formed between" others. For example, Claim 1 refers to "an adhesive layer *formed on* the substrate," while Claim 5 refers to a "reflective layer *formed between* the adhesive layer and the epitaxial light-emitting stack layer." *Id.* at Claims 1, 5 (emphasis added). There is no dispute based on these claims that "formed on" does not require that a layer is directly formed on another layer and instead that there can be intervening layers between one layer "formed on" another. Defendant's proposal of "made or produced upon" could suggest that some sort of direct relationship is required, notwithstanding that Defendant asserts that this is not its position. *See* Dkt. 253 at 2 ("[Defendant] never asserted that the claims require a direct relationship.").

In some passages, the '738 Patent appears to equate the term "formed" with the term "installed." For example, one portion of the specification states: "The reflective layer **11** can be also *formed between* the transparent conductive layer **13** and the adhesive layer **12**. The reflective layer is *installed* to increase the luminance of the LED array **100** by reflecting light projected onto the substrate **10**." '738 Patent at 3:33–38 (emphasis added); *see also id.* at 2:62–63, 3:39–41. Defendant's position would require that each layer be "made or produced upon" the layer below it. However, there is no evidence in the intrinsic record that supports the view that the patent applicant intended to limit the meaning of the term in that way. Instead, by interchanging the words "install" and "formed," the specification uses the term "formed" consistently with the general definitions in the parties' cited dictionaries. *See, e.g. Random House Webster's Unabridged Dictionary*, 2nd ed., Dkt. 252-6 ("*v.t.* **31.** to construct or frame. **32.** To make or produce . . . . **34.** to place in order; arrange; organize."); *Concise Oxford American Dictionary* (2006) Dkt. 252-7 ("*v. [tr.]* **1.** bring together parts or combine to create (something).").

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

Similarly, Defendant has not shown that the record supports its negative proposed limitation "made or produced upon *without an intervening growth substrate*" in a construction of the term "formed on." Defendant's position is based on its interpretation of the file history. In an office action response filed October 18, 2007, the patent applicant distinguished two prior art references to Collins (U.S. Patent Pub. 2002/0139987) and Umera (U.S. Patent Pub. 2004/0164311). The applicant stated:

> Collins does not disclose an adhesive layer. Umera, on the other hand, discloses an adhesive layer 4 connecting a sapphire substrate 3A and a transparent structure 5. However, in Umera, there is no teaching or suggestion of an adhesive layer disposed between electrically connected epitaxial light-emitting stack layers and a substrate, as recited in claim 1.

'738 Patent Prosecution History, Reply, October 18, 2007, Dkt. 252-5 at 3. The applicant made similar statements in discussing another proposed claim. *Id.* at 4 ("in Umera, there is no teaching or suggestion of an adhesive layer disposed between first and second light-emitting electrically connected stack layers formed on first and second adhesive regions of the plurality of adhesive regions, as recited in claim 13.").

The statements in the prosecution history are not sufficiently clear and unequivocal to support disclaimer. The patent applicant refers to the claimed "electrically connected epitaxial light-emitting stack layer" or "first and second light-emitting electrically connected stack layers" in distinguishing Umera and Collins. The patent applicant also characterized Umera as disclosing an adhesive layer "connecting a sapphire substrate 3A and a *transparent structure* 5" as opposed to the claimed "electrically connected epitaxial light-emitting stack layers and a *substrate*." *Id.* Although Defendant implies that Umera's "transparent structure" is equivalent to the claimed substrate in the '758 Patent (Dkt. 252 at 4), its assertions in this litigation are not relevant to the issue of the patent applicant's clear and unequivocal disclaimer of claim scope during patent prosecution. Moreover, the other evidence presented by Plaintiff, including that based on the claim language itself in using the term "epitaxial," supports that the claims should not be limited as proposed in Defendant's claim construction.

Based on the foregoing, Defendant has not shown that the meanings of the terms "formed on" or "disposed on" should be limited in the manner it proposes. The terms are not construed; provided, however, they shall be understood consistent with the analysis provided in this Order.

b)     Enablement of Claims 13–17 and 24 of the '738 Patent

Defendant argues that Claims 13–17 and 24 of the '738 Patent are invalid for lack of enablement. Defendant states: "[a]s written, the claims encompass forming a light-emitting stack layer on an adhesive layer . . . . [T]he '738 Patent nowhere enables the subject matter expressly encompassed within the full scope of claim 13, *i.e.*, the formation of a light-emitting stack layer on an adhesive." *See* Dkt. 164 at 20–21.

Plaintiff responds that a person of skill in the art would know how to form a light-emitting stack layer on a first adhesive region, as required by the claims. Dkt. 199 at 20 (citing Fitz Decl. ¶¶ 70–71). However, Plaintiff's arguments and the opinions of its expert are based on the assertion that a person of skill in the art would know how to install a light-emitting stack layer on top of an adhesive, including by growing the light-emitting stack layer on its own growth substrate that is then layered on top of the adhesive layer and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

the other claimed layers of the asserted patents. *See* Dkt. 199 at 20. Plaintiff does not present arguments or expert opinions that support the position that the '738 Patent would enable a person of skill in the art to grow a light-emitting stack layer directly on the adhesive layer, with no intervening layers.[2] However, Claim 13 and its dependent claims as written are broad enough to encompass such a scenario. Claim 13 specifically states, "a first light-emitting stack layer **formed on** a first adhesive region of the plurality of adhesive regions." '738 Patent, Claim 13. This interpretation of the claims is not changed by the parties' competing supplemental claim construction positions or the determination reached with respect to them. Although Plaintiff disputed Defendants' position that "formed on" means "made or produced on," Plaintiff did not argue that a negative limitation should be read into the claims such that "formed on" cannot cover such circumstances where a layer is "made or produced on" another layer.

To support its non-enablement position, Defendant cites *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1363 (Fed. Cir. 2018). There, the claim at issue recited "a growth layer grown on the buffer layer." *Id.* at 1360. The claim limitation was interpreted as covering circumstances where the growth layer was both directly and indirectly grown on the buffer layer. *Id.* (noting that "growth layer and buffer layer do not have to be in direct contact, there can be intervening layers between them."). The Federal Circuit concluded that the asserted claim was not enabled because the specification failed to disclose how to grow the growth layer directly on one version of the buffer layer, *i.e.* an "amorphous layer." *Id.* at 1362–63. The opinion emphasized that the accused infringer in the case had presented evidence that it would have required undue experimentation and "indeed, that it is impossible" to do so. *Id.* at 1364.

Here, Defendant's expert similarly states that he is "unaware of any such method" to form a light-emitting layer on one of the adhesive layers disclosed in the '738 Patent. Expert Report of Goldhaber-Gordon, Dkt. 164-7 ¶ 252. An independent review of the '738 Patent also fails to show disclosure to support the full scope of the claim limitation. The showing based on Defendant's expert's statement and the intrinsic record is not adequately rebutted by Plaintiff. Therefore Defendant has shown by clear and convincing evidence that Claim 13 and its asserted dependent claims are not enabled because the patent specification fails adequately to disclose how to grow directly a light-emitting stack layer on an adhesive layer.

For the foregoing reasons, Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity is **GRANTED** as to Claims 13–17 and 24 of the '738 Patent based on lack of enablement. Because Claim 13 has been found invalid as not fully enabled, it is unnecessary to address the parties' dispute regarding whether Claim 13 is indefinite. Nor is it necessary to address the parties' obviousness dispute with respect to Claims 13–17 and 24, or their infringement dispute. The other grounds raised by Defendant's Motion and Plaintiff's Motion for Summary Judgment of Infringement as to these claims are **MOOT**.

---

[2] Plaintiff attempts to draw some distinction between the claimed "adhesive regions" and "adhesive layer" required by Claim 13. *See, e.g.* Dkt. 199 at 20; *see also* '738 Patent at Claim 13 ("the adhesive layer comprising a top surface and a plurality of adhesive regions disposed on the top surface; a first light-emitting stack layer formed on a first adhesive region of the plurality of adhesive regions."). The parties did not previously seek construction of the term "adhesive region." An interpretation of the claim language as treating "adhesive layer" and "adhesive regions" as different, as opposed to "adhesive regions" being the top surfaces of the claimed adhesive layer, is not supported with adequate citation to the intrinsic record and does not warrant a different outcome with respect to the parties' enablement dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|----------|--------------------------|------|-------------------|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

#

c)   Obviousness of Claims 1–3 and 8 of the '738 Patent

The parties' dispute regarding whether the asserted claims of the '738 Patent are invalid as obvious is linked to the parties' disputes regarding Defendant's Motion to Strike Portions of Plaintiff's Expert Report. *See* Dkt. 159.

Claim 1 of the '738 Patent recites,

1. [Preamble] A light-emitting diode array comprising: [a] a substrate; [b] an adhesive layer formed on the substrate; and [c] a plurality of electrically connected epitaxial light-emitting stack layers disposed on the adhesive layer, [d] each of the epitaxial light-emitting stack layers comprising a P-contact and an N-contact, wherein the P-contact and the N-contact are disposed on the same side of the epitaxial light-emitting stack layer.

'738 Patent, Claim 1. Defendant argues that Claim 1 and the rest of the asserted claims of the '738 Patent are invalid as obvious in view of U.S. Patent Application 2002/0171090 to Oohata et al. The relevant limitations of Claim 1 and the parties' related disputes as to both Plaintiff's expert testimony and Defendant's invalidity arguments are next addressed.

(1)   [Preamble]: "a light-emitting diode array"

On August 20, 2018, the parties submitted a Joint Stipulation in which they stated that they are "in agreement that neither Epistar nor LHC shall present any evidence or opinions that the preambles of the asserted claims of [the '771 Patent], [the '780 Patent], and [the '020 Patent] are limiting for the purposes of infringement or invalidity." Dkt. 162 at 2. The parties seek to raise some disputes regarding the meaning of the preamble. However, those disputes are more appropriately addressed in connection with the meaning of the phrase "electrically connected," which is discussed below.

(2)   [a]: "a substrate"

Defendant argues that Fitzgerald provides improper expert testimony about the meaning of the term "a substrate." In distinguishing a prior art reference referring to a "base body," Fitzgerald opined that "a substrate would have specific engineering characteristics . . . . As explained in the '738 patent, the claimed substrate is 'electrically isolated from the LEDs 110 and 120, [so] the substrate can be an insulating substrate, a substrate having a high resistance, a conductive substrate, or a substrate having a high thermal conductivity, which has a capability to improve the heat-dissipation efficiency of the LED array 100.' '738 patent at 4:17–23." Supplemental Expert Report of Eugene Fitzgerald, ("Fitz Supp Report"), Dkt. 175-5 at ¶ 65.

Fitzgerald's quoted portions of the specification come from the following passage:

[s]ince the **insulating** transparent adhesive layer **12** has a high resistance **and is capable of electrically isolating the substrate 10 from the first LED 110 and the second LED 120** when being installed between them, the first LED **110** and the second LED **120** can comprise not only a Group III-V nitride material, but also a quaternary material. Moreover, **since the substrate 10 is electrically isolated** from the LEDs **110** and **120**, the substrate

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

#

**10** can be an insulating substrate, a substrate having a high resistance, a conductive substrate, or a substrate having a high thermal activity, which has a capability to improve the heat-dissipation efficiency of the LED array **100**.

'738 Patent at 4:12–23 (emphasis added).

Elsewhere, the specification states:

> The insulating transparent adhesive layer **12** is installed **to electrically isolate the first LED 110 and the second LED 120 from the substrate 10**. The insulating transparent adhesive layer **12** can be replaced by a conductive adhesive layer made of metal or solder. However, **an insulating layer providing electrical isolation has to be installed additionally between the substrate 10 and the conductive adhesive layer 12 or between the conductive adhesive layer 12 and the transparent conductive layer 13 to electrically isolate the first LED 110 and the second LED 120 from the substrate 10.**

*Id.* at 3:39–48 (emphasis added); *see also id.* at 1:66–5, 3:13–16.

Fitzgerald's opinion that the claimed substrate must be electrically isolated is a claim construction position that was not raised during claim construction proceedings or found to require supplemental briefing during summary judgment proceedings. Further, Plaintiff has not shown that it is appropriate to insert a requirement for electrical isolation into the meaning of the well-known technical term "substrate." Although the specification describes preferred embodiments in terms of electrical isolation between the LEDs and substrate, it is not clear that the patent applicant intended to limit the meaning of the term "substrate" to an electrically isolated one. Further, dependent Claim 3 separately refers to "a plurality of insulating regions formed between any two adjacent epitaxial light-emitting stack layers for electrically isolating one of these two adjacent epitaxial light-emitting stack layers from the other." '738 Patent at Claim 3. Therefore, the presumption of claim differentiation also supports the conclusion that the claimed substrate is not necessarily electrically isolated. Fitzgerald is not permitted to offer a contrary claim interpretation to the jury.

Defendant also challenges Fitzgerald's opinions to the extent they refer to a substrate as having "specific engineering characteristics."[3] Rather than impermissible claim construction opinions, these statements by Fitzgerald concern explaining how a person of skill in the art at the time of the invention would evaluate the scope of the claims when compared to the prior art. Fitzgerald opines that the "base body" disclosed by Oohata is simply a "base" and does not necessarily have the same properties/functions as a "substrate," as that term is used by a person of skill in the art. *See* Fitz Supp. Report ¶ 65 ("a substrate is a term of art specific to LED growth and packaging with relevant engineering characteristics while a base body relates to any base structure."). Thus, although Defendant argues that the term "base body"

---

[3] During preliminary IPR proceedings, Plaintiff did not challenge Defendant's reliance on Oohata on the basis that Oohata fails to disclose a substrate.

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

in Oohata is interchangeable with the term "substrate," Fitzgerald disagrees.[4]

There is a triable issue of material fact as to whether the Oohata reference discloses a "substrate" as required by the claims. Therefore, it cannot be resolved through the summary judgment process.

(3)      [b]: "an adhesive layer formed on the substrate"

Defendant argues that Fitzgerald provides improper expert testimony regarding the meaning of the term "adhesive layer." *See, e.g.*, Dkt. 185 at 4. Fitzgerald states, "[a]s explained in the '738 patent, the claimed adhesive layer 'has a high resistance and is capable of electrically isolating the substrate 10 from the first LED 110 and the second LED 120 when being installed between them.'" Fitz Supp. Report ¶ 66 (quoting '738 Patent at 4:15–18).

Fitzgerald's position regarding the term "adhesive layer" crosses the line from permissible comparison of the claims against the prior art to an improper interpretation of the scope of the claim language. Fitzgerald relies directly on a single sentence of disclosure from the '738 Patent specification to conclude that the claimed adhesive layer must have a high resistance and be capable of electrically isolating the substrate from the first LED and second LED. However, as Defendant observes, the '738 Patent specification also refers to embodiments where

> [t]he insulating transparent adhesive layer 12 can be replaced by a conductive adhesive layer made of metal or solder. However, an insulating layer providing electrical insulation has to be installed additionally between the substrate 10 and the conductive adhesive layer 12 or between the conductive adhesive layer 12 and the transparent conductive layer 13 to electrically isolate the first LED 110 and the second LED 120 from the substrate 10.

'738 Patent at 3:41–48. Where, as here, the parties did not raise a claim construction dispute regarding the meaning of "adhesive layer," which is then presumed to have its plain and ordinary meaning, Fitzgerald cannot properly opine that the term as used in the '738 Patent is limited to adhesive layers with high resistance and the capability to electrically isolate.

It is not clear whether Plaintiff maintains that this element of Claim 1 of the '738 Patent is not disclosed by Oohata under the proper interpretation of the scope of the claims. *See* Dkt. 199 at 12–13. Plaintiff did not address this claim limitation at the summary judgment hearing and was not invited to do so in its subsequent briefing.

---

[4] At the hearing, Defendant argued that because Oohata discloses that its described "base body" can be "a transparent material such as glass" (Oohata ¶ 33) and the '738 Patent discloses that the claimed substrate can comprise glass ('738 Patent at Claim 8), there can be no dispute that Oohata discloses the "substrate" limitation. Defendant also referred to another embodiment in Oohata that identified "something that looks identical to base body **5**" as a substrate. Not all of Defendant's statements were supported with citations to its expert's report. Further, they do not fully resolve the factual dispute as to whether it would have been obvious to a person of skill in the art to modify the teachings of Oohata to arrive at a substrate used in the manner disclosed in the '738 Patent. For these reasons, Defendant has not established that clear and convincing evidence supports its position regarding this claim limitation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

(4)   [c]: "a plurality of electrically connected epitaxial light-emitting stack layers disposed on the adhesive layer"

The parties present two preliminary issues related to the claim phrase "a plurality of electrically connected light-emitting stack layers disposed on the adhesive layer:" (i) whether "electrically connected" requires that the epitaxial light-emitting stack layers are interconnected; and (ii) whether the epitaxial light-emitting stack layers must be planar.

The parties dispute whether the term "electrically connected" as used in the claims requires that the epitaxial light-emitting stack layers be connected to one another or simply that each of the epitaxial light-emitting stack layers be connected to a power source. The parties disagreed on the meaning of the term "electrically connected" in the context of this claim limitation during claim construction. Dkt. 140 at 17–18. During claim construction, the focus of the parties' dispute was whether the phrase should be construed to require "the P-contact of a first light-emitting epitaxial stack layer . . . to the N-contact of the adjacent light-emitting epitaxial stack layer" as Plaintiff argued, or could be understood as "wherein each structure is capable of being connected to an electrical current to emit light" as Defendant argued. The Claim Construction Order specifically states, "[w]ithout additional context for the parties' disputes and proposed constructions, it would be inappropriate to construe the phrase 'electrically connected' in the context of the claims." Dkt. 140 at 18.

The parties have submitted competing arguments that further clarify the significance of their dispute regarding the meaning of the term "electrically connected" and the relevance of their competing claim construction positions. After reconsidering the parties' claim construction positions as well as the arguments submitted by the parties in connection with the current motions, the intrinsic evidence supports clarifying the construction of the term "electrically connected" to mean "electrically interconnected." This is the position now presented by Plaintiff.

The claim language itself supports this outcome. The claim phrase is "a plurality of electrically connected epitaxial light-emitting stack layers." Therefore, the claim refers to the relationship among the stack layers in describing them as "electrically connected." During claim construction, Defendant relied on a claim differentiation argument to support its position that "electrically connected" simply refers to connection to a power source. *See* Dkt. 71 at 24. Specifically, Defendant observed that Claim 13 of the '738 Patent "narrowly requires 'a first conductive line for electrically connecting either of the conductive contacts of the first light-emitting stack layer to either of the conductive contacts of the second light-emitting stack layer.'" *Id.* Contrary to Defendant's argument, however, the use of "electrically connecting" in Claim 13 to refer to interconnection is consistent with how a person of ordinary skill in the art would understand the meaning of the term in Claim 1. Similarly, the patent specification supports Plaintiff's position. The embodiments disclosed in the patent specification each relates to connecting the various LEDs in the LED arrays to one another. *See, e.g.*, '738 Patent 3:22–25; 3:26–32. Based on the intrinsic record, Defendant's interpretation of the scope of the claim phrase "electrically connected" is unpersuasive and is not adopted.

Even under this narrower construction, Defendant still argues that Oohata discloses the claim limitation. Defendant argues that Fitzgerald "conceded that the 'power source line' of Oohata is a shared electrical connection between LEDs." Dkt. 164 at 19 (citing Fitz Tr. 1 at 291:7–292:12 (argument in connection with Claim 13 of the '738 Patent)). However, Defendant does not appear to dispute that Oohata does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
| --- | --- | --- | --- |
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

disclose or show any connections between LEDs. Instead, the issue appears to be one of deciding whether a person of skill in the art at the time of the invention would have found it obvious to modify the disclosure of Oohata to interconnect the LED arrays, or would have found disclosure of this claim limitation inherent in Oohata's disclosure. Defendant also has not shown that Fitzgerald's statements are sufficiently conclusive or clear regarding Oohata so that his deposition testimony alone would warrant adopting Defendant's position. This determination is also necessary because Defendant's expert conceded that Oohata does not disclose electrical interconnection. *See* Deposition Transcript of David Goldhaber-Gordon ("Goldhaber-Gordon Tr."), Dkt. 199-7 at 118:18–121:2. For these reasons, this issue presents a triable issue of fact.

The parties' second dispute for this claim limitation is whether Oohata's disclosure of stack layers that are not planar is sufficient to meet this limitation.[5] As part of this dispute, Defendant again argues that Plaintiff's expert has presented improper opinions as to claim construction matters.

There is a distinction between the following arguments: (i) the stack layers can only be planar because the preferred embodiment in the patent specification depicts them as planar; and (ii) a person of skill in the art at the time of the invention, reviewing all of the claim limitations, would understand that it would only be possible to practice the claimed invention with planar stack layers because any other shape would fail to satisfy all the requirements of the claimed invention. The first assertion represents impermissible claim construction, and the second represents expert opinion relevant to a fact finder in considering issues of infringement and invalidity. On the current record, Fitzgerald's testimony is aligned with the first scenario. For example, Plaintiff states in its opposition, "[t]his is contrary to what a POSITA would understand is 'stack layer'—a planar stack shown in Figure 1 of the '738 Patent." Dkt. 199 at 13. An opinion that the stack layers must be planar because the patent only discloses planar stack layers is impermissible. Nor is it supported by the record. However, some of the assertions by Fitzgerald and Plaintiff could be consistent with the second scenario. Fitzgerald emphasizes that the stack layers in Oohata are shaped differently because Oohata concentrates on focusing the light in a single area; in contrast, the '738 Patent focuses on scattering the light. So long as it can be shown that the claims of the '738 Patent require scattering of light, which has not yet been established, this opinion would assist a fact finder in determining whether a person of skill in the art would find the asserted claims obvious in light of Oohata.[6]

Like Plaintiff's analysis of some of the other limitations of Claim 1 of the '738 Patent, Plaintiff argues that Oohata does not disclose the limitation because its disclosed LEDs "are incompatible with the invention of the '738 patent." Dkt. 199 at 14. Defendant responds to these compatibility arguments by asserting

---

[5] Defendant also argued at the hearing that Oohata discloses planar stack layers. However, the Oohata embodiment that discloses stack layers with a planar configuration is different in other respects from the asserted claims. Even if Defendant can show that it disclosed an invalidity theory based on the embodiment of Oohata with planar stack layers, factual disputes remain regarding whether it would be obvious to modify the disclosure of Oohata to arrive at the claimed invention.

[6] In a decision denying institution of *inter partes* review, the majority of a Patent Trial and Appeal Board ("PTAB") panel found an insufficient basis to conclude that the asserted claims covered non-planar stack layers. One member of the panel dissented. In reaching the determination stated in this Order, the Court respectfully rejects the interpretation by the majority of the PTAB panel of the term "stack layer" as it appears in the asserted claims. Instead, the Court finds that the parties' dispute over whether Oohata's non-planar stack layers satisfy the claim limitation presents a triable issue of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV17-03219 JAK (KSx) | | Date | February 11, 2020 |
|---|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | | |

"[t]he obviousness analysis . . . does not require 'compatibility.'" Dkt. 208 at 7 (citing *KSR*, 550 U.S. at 399). Beyond disputing Plaintiff's use of the word "compatible," Defendant does not provide a reasoned response to Plaintiff's argument that a person of skill in the art would not be motivated to modify Oohata to form the invention of the '738 Patent. For these reasons, a triable issue of material fact is presented as to whether a person of skill in the art would be motivated to modify Oohata.

(5)     [d]: "each of the epitaxial light-emitting stack layers comprising a P-contact and an N-contact, wherein the P-contact and the N-contact are disposed on the same side of the epitaxial light-emitting stack layer"

Plaintiff does not dispute Defendant's argument that Figure 2A of Oohata shows each LED with a P-contact 15 and N-contact 16 disposed on the same side. Dkt. 164 at 17. Plaintiff instead refers to the other figures described in the Oohata reference, including Figure 13. There does not appear to be a material dispute regarding this limitation.

\*                              \*                              \*

Based on the foregoing analysis, triable issues of fact are presented that preclude a summary judgment determination that Claim 1 of the '738 Patent is obvious in view of Oohata. The parties' obviousness disputes regarding dependent Claims 2, 3, and 8 of the '738 Patent relate to the same issues raised with respect to Claim 1 of the '738 Patent. For the same reasons, there are triable issues of material fact as to obviousness.

d)     Infringement of Claims 1–3 and 8 of the '738 Patent

Defendant presents a narrow basis for its position that it does not infringe Claims 1–3 and 8 of the '738 Patent. *See* Dkt. 164 at 21–22; Dkt. 197 at 5–7; *see also* Dkt. 197 at 4–5. Defendant's arguments are based on interpretations of the terms "formed on" and "disposed on" in these claims that have been rejected in this Order. *See* '738 Patent, Claim 1 (requiring "an adhesive layer **formed on** the substrate" and "epitaxial light-emitting stack layers ***disposed on*** the adhesive layer").[7] For example, Defendant argues that no analysis has been performed as to whether the adhesive layer in its accused product has been grown on the substrate. The position that "formed on" requires that a layer be grown directly on another layer has been rejected. Similarly, Defendant argues that the light-emitting stack layers in the accused products are not "disposed on" the adhesive layer because they remain attached to an

---

[7] Defendant also argues that Plaintiff's infringement theory improperly omits Fitzgerald's interpretation of the asserted claims that was submitted to rebut Defendant's invalidity arguments. *See, e.g.* Dkt. 197 at 4; Dkt. 197-1 (Statement of Disputed Facts) ¶¶ 20-23. Each of the parties' specific disputes regarding Fitzgerald's interpretation of the asserted claims, including whether Fitzgerald has submitted impermissible claim construction opinions, has been addressed in the context of the parties' obviousness dispute. Fitzgerald will only be permitted to present non-claim construction opinions regarding how a person of skill in the art would understand the claims for purposes of demonstrating validity. For example, Fitzgerald cannot opine that the claimed substrate must be electrically isolated, that the claimed adhesive layer must have a high resistance and be capable of electrically isolating the substrate, or that the claimed stack layers must be planar based solely on an interpretation of the patent intrinsic record. Even with these portions of Fitzgerald's opinions excluded, Defendant's additional bases for noninfringement are unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

intervening growth layer. Again, the position that "disposed on" requires such a relationship between two layers has been rejected.

Plaintiff has shown that each limitation of Claims 1–3 and 8 of the '738 Patent is met by the accused products. *See* Dkt. 203 at 11–15, 21; Dkt. 207 at 4–7, 8–9. Therefore, summary judgment is **GRANTED** as to the infringement of Claims 1–3 and 8 of the '738 Patent.

### 4.   The '771 Patent

Defendant seeks summary judgment that the asserted claims of the '771 Patent are invalid as anticipated by Japanese Patent No. JP H06-058953 B2 to Kazuo ("Kazuo," Dkt. 164-17). The parties' briefing presents a dispute only as to whether one limitation in the asserted claims of the '771 Patent is disclosed by Kazuo.[8] Specifically, Claim 32 of the '771 Patent states, *inter alia*,

> wherein said semiconductor structure has outer side faces and has a plurality of light-extraction cavities for harvesting light from the semiconductor structure, said light-extraction cavities extending from the top surface of said upper semiconductor layer and cutting into at least one of said semiconductor layers, and being distant from said outer side faces, LED light propagating in the semiconductor structure being diverted at said light-extraction cavities.

'771 Patent, Claim 32.

The parties stipulated to a construction of the term "plurality of light extraction cavities" as "more than one cavity surrounded by at least two inclined or curved surfaces for extracting light." *See* Dkt. 140 at 8 (Claim Construction Order). The parties disagree as to whether the prior art, including Kazuo, discloses this limitation. *See* Dkt. 164 at 22–25; Dkt. 199 at 21–23. Plaintiff argues that this limitation is not disclosed because the prior art only depicts cavities surrounded by perpendicular surfaces, not "inclined or curved surfaces" as required by the parties' agreed construction. Dkt. 164 at 22 (citing the Rebuttal Expert Report of Eugene Fitzgerald Regarding Validity ("Fitz Rebuttal Report"), Dkt. 164-8, ¶¶ 73, 79). Defendant's primary argument is that Fitzgerald admitted at his deposition that the sidewalls depicted in prior art references, in general, may not be "perfectly" perpendicular, but could be "basically perpendicular." *Id.* at 23–24 (citing Deposition Transcript of Eugene Fitzgerald ("Fitz Tr. 2"), Dkt. 199-6 at 482:20–483:20). On this basis, Defendant argues that Kazuo necessarily discloses cavity sidewalls with "some degree of incline," such that the relevant limitation of the asserted claims of the '771 Patent is satisfied. *Id.* at 24. Defendant also asserts, based on statements in Fitzgerald's opening report regarding infringement, that

---

[8]  Defendant also presents an argument regarding non-infringement:

> [i]f Epistar attempts to avoid summary judgment [of invalidity] by relying on [Defendant's expert] Dr. Ferguson's understanding of the plain and ordinary meaning of "a top conductor layer" limitations, then summary judgment of non-infringement must follow because the Accused Products do not have this structure under such an understanding.

Dkt. 164 at 24-25. Plaintiff does not make the potential argument raised by Defendant and does not otherwise respond to Defendant's position regarding the limitation "a top conductor layer." Therefore, it is not addressed. Defendant did not renew this non-infringement position in its reply brief, *see* Dkt. 208.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

there "can be no dispute that these inclined surfaces in Kazuo are for extracting or harvesting light." Dkt. 164 at 24.

The parties' dispute presents triable issues of material fact. Whether a person of skill in the art at the time of the invention would conclude that Kazuo discloses "a plurality of light-extraction cavities *for harvesting light from the semiconductor structure*," and particularly whether Kazuo discloses a "cavity surrounded by at least *two inclined or curved surfaces for extracting light*" are factual issues disputed by the parties' experts. *Graham*, 383 U.S. at 17 (obviousness "lends itself to several basic factual inquiries," including "the scope and content of the prior art."). That Plaintiff's expert testified about the state of the prior art in general as including "basically perpendicular" side walls and similarly provided some generalized statements about such side walls extracting light at an amount "close to zero," *see* Dkt. 164 at 23–24 (citing Fitz Tr. 2 at 482:20–483:20; Fitz Rebuttal Report ¶¶ 73, 79), does not warrant the conclusion that there is not a triable issue of a material fact. As to Kazuo specifically, Fitzgerald testified that Kazuo does not disclose "a plurality of light-extraction cavities for harvesting light from the semiconductor structure" as required by the claims. Indeed, as Plaintiff notes, and Defendant does not dispute, Defendant's own expert did not opine that "a plurality of light-extraction cavities" was disclosed explicitly by Kazuo, instead essentially submitting an inherency argument. Dkt. 199 at 22 (citing Expert Report of Ian Ferguson, Dkt. 199-4 ¶ 158 ("In my opinion, Kazuo *necessarily* discloses the cavities are 'surrounded by at least two inclined or curved surfaces' because Kazuo discloses the cavities are etched by reactive ion etching (RIE)." (emphasis added)).

On the current record, the finder of fact must determine the scope of what is disclosed by Kazuo as compared to the asserted claims of the '771 Patent, including by weighing the credibility of the submitted evidence. Accordingly, Defendant's motion for summary judgment of non-infringement and invalidity is **DENIED** as to its invalidity theory of obviousness for the asserted claims of the '771 Patent.

     5.    <u>The '780 Patent</u>

          a)    Plaintiff's Motion to Strike Defendant's Expert Opinions

Plaintiff's Motion to Strike Defendant's Expert Opinions under Rule 37 is linked to the dispute as to the claimed invalidity of the '780 Patent.[9] *See* Dkt. 163. Plaintiff argues that Defendant's expert, Ferguson, has submitted improper claim construction testimony regarding the term "substantially flat" as used in the asserted claims of the '780 Patent.

Claim 1 of the '780 Patent states,

---

[9] Defendant argues that Plaintiff's motion to strike should not be considered because Plaintiff failed to meet and confer seven days before filing it, as required by Local Rule 7-3. *See* Dkt. 198-2. Although Plaintiff does not provide a persuasive explanation for its failure to meet and confer in a timely manner, *see* Dkt. 202 at 5-7, there is no prejudice to Defendant. Further, given the breadth of the other disputed matters, there is not a strong showing that this one would have been resolved through a meet and confer process. Nor did the parties reach an agreement on this dispute while all of the matters have been pending. Therefore, the motion is considered in this Order. Plaintiff is reminded of its obligation under L.R. 7-3 going forward. A failure to comply may result in the denial of a motion or the imposition of sanctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

#

> 1. A light emitting device comprising:
>> a substrate, wherein the substrate comprises a first major surface, a second major surface, and a sidewall; and
>> a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer;
>> wherein the sidewall of the substrate comprises a first area and a second area;
>> **wherein the morphology of the first area is <u>substantially flat</u> and the morphology of the second area is substantially textured**.

'780 Patent, Claim 1 (emphasis added).

Ferguson opines that the accused products do not include a first area that is "substantially flat" as required by the claims. In his rebuttal expert report, Ferguson for the first time submitted the results of tests conducted on the accused products; they measured the roughness of relevant areas of the accused products through an "RMS roughness" measurement. *See* Excerpts of Rebuttal Non-Infringement Report of Ian Ferguson ("Ferguson Rebuttal Report"), Dkt. 163-3 ¶ 144. According to Ferguson, "RMS roughness measures the topography of a surface's morphology and provides the 'root mean square' of the peaks and valleys appearing in the measured area." *Id.* Ferguson opines that, because the measured areas of the accused products have RMS roughness values of 86 nm, 76 nm, 96 nm, and 114 nm, they are not "substantially flat." *Id.* To support this position, Ferguson refers to the RMS roughness value for a gallium nitride semiconductor layer, which is 0.3 nm. *Id.* At Ferguson's deposition, the following colloquy took place relating to his rebuttal opinions: "Q. Would you say a RMS value of 10 nanometers and under to be substantially flat? A: No, so you have to remember, in semiconductor materials, the idea of flatness are things that are almost atomically – it's almost atomically flat across a – across an area." Deposition of Ian Ferguson ("Ferguson Tr."), Dkt. 163-4 at 244:7–24.

Ferguson's rebuttal opinion regarding "substantially flat" does not refer to an interpretation of the patent's intrinsic record. Instead, he refers to tools and observations that he asserts would be relevant to a person of ordinary skill in the art at the time of the invention in analyzing whether the accused products meet the claim limitations.

Ferguson opinion regarding whether the accused products meet the "substantially flat" limitation, including his opinion that a person of skill in the art could consider the RMS roughness measurement of a surface in deciding whether the claim limitation is met, are not stricken. However, Ferguson may not opine that "substantially flat" means "atomically flat." Indeed, Defendant asserts that Ferguson's opinion in his rebuttal report in particular is "not an opinion that 'substantially flat' *means* 'atomically flat.' Rather, it is an opinion that because of their high RMS roughness measurements, the Accused Products are not 'substantially flat' under the term's plain and ordinary meaning." Dkt. 198-2 at 7; *see also id.* at 16.

Consistent with Defendant's representations, to the extent Ferguson has submitted opinion and/or testimony that "substantially flat" means "atomically flat," that testimony is excluded. Accordingly, Plaintiff's motion to strike the expert opinions of Ferguson under Fed. R. Civ. P. 37 is **DENIED-IN-PART** and **GRANTED-IN-PART**.

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

#

b) Defendant's Argument that the Asserted Claims of the '780 Patent are Invalid as Obvious

Defendant seeks summary judgment based on a proposed determination that the asserted claims of the '780 Patent are invalid as obvious over U.S. Patent No. 5,563,422 to Nakamura et al ("Nakamura") in view of U.S. Patent No. 7,902,636 to Sugiura et al ("Sugiura").[10]

Plaintiff argues that, because Defendant did not conduct an RMS roughness analysis of the prior art references to determine whether the "substantially flat" limitation is disclosed, Defendant's argument that the asserted claims of the '780 Patent are invalid as obvious cannot be resolved on summary judgment. Dkt. 199 at 28. Defendant responds that under Plaintiff's infringement theory, Plaintiff's expert simply considered the appearance of the relevant first and second areas in deciding whether the "substantially flat" limitation was met. Dkt. 208 at 12. Defendant argues that, because Plaintiff submits such analysis for purposes of infringement, the same analysis is appropriate for purposes of invalidity. *Id.*

In general, it will be up to the finder of fact to determine which party's application of the meaning of "substantially flat" to the accused products and prior art is correct, and to make that application consistently across the accused products. Particularly in the context of Claims 1–6 of the '780 Patent, however, Plaintiff's argument that Defendant was obligated to conduct an RMS roughness analysis of the prior art references is unpersuasive. Plaintiff does not otherwise present a basis to dispute that the "substantially flat" limitation is disclosed by Sugiura. Indeed, Fitzgerald admitted that Sugiura includes a "top region [that] appears to be flat" during deposition. *See* Fitz. Tr. 1 at 525:19–526:15.

The only factual issue is whether a person of skill in the art would be motivated to combine the Nakamura and Sugiura references. Defendant contends that there is a motivation to combine the two references. It also contends that Plaintiff's arguments to the contrary must be rejected based on certain admissions from its expert during his deposition, and because his characterizations of the prior art references are incorrect. *See* Dkt. 208 at 13–14. Although some of Plaintiff's expert testimony does appear contradicted by the disclosure within the prior art references, other aspects of Plaintiff's arguments present factual disputes regarding what is disclosed by the prior art. For example, even considering Defendant's reference to the specification, there is a question of fact as to whether Sugiura discloses embodiments with functional devices in direct contact with the substrate. *See* Sugiura, Dkt. 164-22 at 12:43–48. Defendant challenges Plaintiff's expert's position that the Nakamura reference "teaches away" from

[10] The parties submit a dispute relating to whether Defendant may rely on Nakamura in view of Sugiura as a prior art ground when Defendant only previously disclosed Sugiura in view of Nakamura. Plaintiff submits a supplemental declaration by Fitzgerald with new opinions to address this prior art combination on the basis that it was not previously disclosed. Dkt. 199-10. Defendant's arguments that the new opinions must be stricken and that its obviousness combination is not new, are unpersuasive. The position that the order of references does not matter fails in light of the early invalidity theory disclosures contemplated by the Standing Rules and Scheduling Order. Defendant was obligated to disclose its invalidity contentions both in its invalidity contentions and its expert reports. This necessarily required an identification of where Defendant believes each limitation is found in the prior art, as well as Defendant's contentions as to why a person of skill in the art would be motivated to combine the two references to arrive at the claimed invention. Through this required process, Defendant was to identify the relative disclosure of the two references. Under these circumstances, the supplemental opinions offered by Plaintiff's expert regarding the Nakamura in view of Sugiura obviousness combination may be considered and Defendant's objections to that testimony as late-disclosed (Dkt. 208-1) are **OVERRULED**.

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | | Date | February 11, 2020 |
|----------|-------------------------|---|------|-------------------|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | | |

emitting light through the LED substrate. However, Plaintiff's expert's opinion that a person of skill in the art at the time of the invention would not have been motivated to modify the substrate of Nakamura with the dicing techniques in Sugiura because "Nakamura '422 is focused on increasing light emission from the top of an LED, whereas texturing substrate sidewalls would only facilitate light emission from the side of the LED substrate," is sufficient to create a triable issue of material fact, i.e., whether a person of skill would be motivated to combine the two references. *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016), *cert. denied*, 138 S. Ct. 420, 199 L. Ed. 2d 311 (2017) ("What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact."). For these reasons, Defendant's motion for summary judgment of non-infringement and invalidity is **DENIED** with respect to its invalidity theory of obviousness of the asserted claims of the '780 Patent.


## IV.   Conclusion

For the reasons stated in this Order, Defendant's Motion to Strike Portions of Plaintiff's Expert Report (Dkt. 159) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's Motion to Strike Defendant's Expert Opinions under Fed. R. Civ. P. 37 (Dkt. 163) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 164) is **GRANTED** as to Claims 1, 2, and 7 of the '467 Patent and Claims 13–17 and 24 of the '738 Patent based on lack of enablement. The other grounds raised by Defendant's Motion and Plaintiff's Motion for Partial Summary Judgment of Infringement (Dkt. 168) as to the asserted claims of the '467 Patent and Claims 13–17 and 24 of the '738 Patent are **MOOT**.

The grounds raised in Defendant's Motion for obviousness of Claims 1–3 and 8 of the '738 Patent are **DENIED**. Plaintiff's Motion for Partial Summary Judgment of Infringement (Dkt. 168) as to Claims 1–3 and 8 of the '738 Patent is **GRANTED**.

Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 164) is otherwise **DENIED** as to the asserted claims of the '771 and '780 Patents. Defendant's objection to the evidence submitted by Plaintiff in support of its opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 208-1) is **OVERRULED**. Plaintiff's objections to the evidence submitted by Defendant in support of Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity (Dkt. 200) is **OVERRULED**.

The parties are directed to file a Joint Report with seven days of this Order stating their respective and/or collective positions regarding scheduling all remaining pretrial and trial dates and what open issues

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-03219 JAK (KSx) | Date | February 11, 2020 |
|---|---|---|---|
| Title | Epistar Corporation v. Lowes Companies, Inc., et al. | | |

remain for resolution prior to trial. The Joint Report shall also state the parties' positions regarding whether they believe further settlement discussions would be productive.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    cw