Stacey H. Wang (SBN 245195)
*stacey.wang@hklaw.com*
Vito A. Costanzo (SBN 132754)
*vito.costanzo@hklaw.com*
**HOLLAND & KNIGHT LLP**
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel.: 213-896-2400
Facsimile: 213-896-2450

Robert S. Hill (SBN 276056)
**HOLLAND & KNIGHT LLP**
200 Crescent Court, Suite 1600
Dallas, TX 55201
Telephone: (214) 964-9500
robert.hill@hklaw.com

Michael B. Eisenberg (*pro hac vice*)
*michael.eisenberg@hklaw.com*
**HOLLAND & KNIGHT LLP**
31 West 52nd Street
New York, NY 10019
Tel.: 212-513-3200
Facsimile: 212-385-9010

Reid E. Dammann (SBN: 249031)
*rdammann@gordonrees.com*
**GORDON & REES LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, California 90071
Phone: (213) 576-5000
Facsimile: (213) 680-4470

Jonathan Short (*pro hac vice*)
*jshort@mccarter.com*
Mark H. Anania (*pro hac vice*)
*manania@mccarter.com*
Olga Ugolev (*pro hac vice*)
*ougolev@mccarter.com*
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
Phone: (973) 622-4444
Facsimile: (973) 624-7070

*Attorneys for Defendant Lowe's Home Centers, LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Epistar Corporation,

                    Plaintiff,

          vs.

Lowe's Home Centers, LLC

                    Defendants.

Case No.: 2:17-cv-03219-JAK-KS
[Honorable John A. Kronstadt]

**DEFENDANT LOWE'S HOME
CENTERS LLC'S NOTICE OF
MOTION AND MOTION TO
EXCLUDE OPINIONS AND
TESTIMONY OF BRYAN M.
VAN UDEN; MEMORANDUM
OF POINTS AND AUTHORITIES**

[Declaration of Michael B. Eisenberg
and [Proposed] Order filed
concurrntly herewith]

Date: September 14, 2020
Time: 8:30 a.m.

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

## NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF BRYAN M. VAN UDEN

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 14, 2020, or as soon thereafter as the matter may be heard in the above-entitled Court, Defendant Lowe's Home Centers, LLC, by and through its attorneys of record, will and hereby do move to exclude certain opinions and testimony of Bryan M. Van Uden, as follows:

1.      Van Uden's "income approach" for determining a "baseline royalty" under at least Federal Rules of Evidence 702 and 403, and any opinions that rely thereon, including Van Uden's "G-P Factor" analysis, under at least Federal Rules of Evidence 702, 403 and 402.

2.      Van Uden's "market approach" for determining a "baseline royalty" under at least Federal Rules of Evidence 702 and 403, and any opinions that rely thereon, including Van Uden's "G-P Factor" analysis, under at least Federal Rules of Evidence 702 and 403.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 15, 2020.

Dated: August 6, 2020

Respectfully submitted,
HOLLAND & KNIGHT LLP


By:      /s/ *Michael B. Eisenberg*
Michael B. Eisenberg (*pro hac vice*)
Stacey H. Wang
Robert Hill

Attorneys for Defendant
Lowe's Home Centers, LLC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

II.     LEGAL STANDARD ............................................................................ 3

        A.      Governing Legal Standards ..................................................... 3

        B.      Law Governing Apportionment ............................................... 4

                1.      Only Revenues Attributable To The Infringing
                        Features Are Relevant to Damages ............................... 5

                2.      Exceptions Permitting Reliance on the Value of
                        a Combination Larger than the Smallest Salable
                        Unit ................................................................................. 6

III.    STATEMENT OF FACTS ..................................................................... 7

        A.      Qualifications and Engagement ............................................... 8

        B.      The Patents and Claims In Suit ............................................... 8

        C.      The Purported "Filament Patents" ........................................... 9

        D.      Van Uden's "Baseline" ............................................................ 9

                1.      The "Income Approach" .................................................. 9

                2.      The "Market Approach" ................................................ 10

        E.      Van Uden's "*Georgia-Pacific*" Analysis ............................... 10

IV.     ARGUMENT ....................................................................................... 11

        A.      Van Uden's "Income Approach" Should be Excluded
                Under Federal Rule of Evidence 703 ..................................... 11

                1.      The "Filament Patent" Fallacy .................................... 11

                2.      The "Filament Patent" Fallacy, Redux ........................ 13

                3.      The Purported Removal of "Other Technology" .......... 14

        B.      Van Uden's "Income Approach" Should be Excluded
                Under Federal Rule of Evidence 403 ..................................... 16

        C.      Van Uden's "Market Approach" Should be Excluded
                Under Federal Rule of Evidence 703 ..................................... 17

i

1.  Van Uden's Absent "Comparable"
    Methodology............................................................. 18

2.  Van Uden's Absent "Non-Comparable"
    Methodology............................................................. 23

D.  Van Uden's "G-P Factor" Analysis Should Be
    Excluded Under Federal Rules of Evidence 703, 402,
    and 403 .................................................................... 24

V.   CONCLUSION ............................................................... 25

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

1

# TABLE OF AUTHORITIES

**Cases**                                    **Page(s)**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006) ............................................................ 3

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
930 F.3d 1314 (Fed. Cir. 2019) .......................................................... 11

*Commonwealth Scientific & Indus. Res. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ................................... 7, 18, 19, 23

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................... 3, 17

*Ericsson, Inc. v. D-Link Sys. Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ..................................... 6, 7, 18

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ............................................. 5

*Fiskars, Inc. v. Hunt Mfg. Co.*,
279 F.3d 1378 (Fed. Cir. 2002) ............................................. 3

*Garretson v. Clark*,
111 U.S. 120 (1884) ............................................................. 5

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................... 3-4, 22

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ................................. 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ............................................. 5

*Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) .......................................... 23

*Riles v. Shell Exploration & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002) ............................................. 5

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

iii

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018)........................................... 3-4, 18-19, 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Practices, & Prod. Liab. Litig.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013).....................................................4, 23-24

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ............................................................................ 6

*United States v. Geanakos*,
  No. 2:13-CR-0404, 2017 WL 4883294 (E.D. Cal. Oct. 30, 2017) ..................... 4

*United States v. Ramirez-Robles*,
  386 F.3d 1234 (9th Cir. 2004)............................................................................. 4

*United States v. Ruvalcaba-Garcia*,
  923 F.3d 1183 (9th Cir. 2019)....................................................................... 3, 23

*United States v. Valdez*,
  No. 18-CR-00608, 2019 WL 539074 (N.D. Cal. Feb. 11, 2019)....................... 4

*Versata Software, Inc. v. SAP Am., Inc.*,
  717 F.3d 1255 (Fed. Cir. 2013) ............................................................................ 7

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ..............................................................*passim*

*Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010) ...................................................................... 3, 5

**Other Authorities**

Fed. R. Evid. 403 ................................................................................................4

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Defendant Lowe's Home Centers, LLC ("Lowe's") moves under Rules 702 and 403 of the Federal Rules of Evidence to exclude certain opinions and testimony of Bryan Van Uden ("Van Uden"), Plaintiff Epistar Corporation's ("Epistar") damages expert.

## I.    INTRODUCTION

In this suit, Epistar initially asserted infringement based on five patents. To establish damages, Epistar relies on a report from Bryan Van Uden. (Ex. 1[1] (Van Uden Rpt.).) Van Uden's opinions are fundamentally based on false assumptions, gaps in logic, and speculation rather than substantive analysis, and therefore, should be excluded under Federal Rules of Evidences 703 and 403.

<u>First</u>, in order to determine a "Baseline Royalty for the Patents-In-Suit," Van Uden applies what he refers to as the "Income Approach." (Ex. 1 (Van Uden Rpt.) § 5.1.) To do so, he purported to determine the "value [of] the incremental benefits associated with the use <u>of the patented technology</u>" by "comparing the profits earned on products incorporating the patented technology to <u>otherwise equivalent but non-accused products</u>." (*Id.* at ¶¶ 132-33 (emphasis added).) To perform his analysis, Van Uden purported to select "Lowe's LED light bulbs which do not utilize the LED filament technology described in the patents-in-suit." (*Id.* at ¶133.) The entire analysis, however, is based on a series of legally and factually flawed premises including: (1) conflating the asserted patents with "LED filament technology"; (2) assigning the entirety of the difference in profit associated with the two bulbs types to the asserted patent; and (3) assuming that the products used for comparison do not use the purported "LED filament technology." Moreover, Van Uden lacks any relevant foundation or qualification to provide those factual assertions or opinions. The corresponding testimony and

---

[1]    References in citations to exhibit numbers herein are to the corresponding exhibit attached to the Declaration of Stacey Wang.

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1   opinions, therefore, should be excluded under Rule 703.

2       <u>Second</u>, the "Income Approach" appears solely intended to present the jury

3   with a sufficiently high reference to give the later proposed "reasonable royalty"

4   an appearance of reasonableness. Indeed, his opinion adopting ▓▓▓▓▓▓ on the

5   retail value of complete bulbs, though unreasonable on its own, merely appears

6   reasonable when contrasted with the ▓▓▓▓▓▓ that Van Uden created through

7   his flawed "Income Approach." That proposed testimony, therefore, should <u>also</u>

8   be excluded under Federal Rule of Evidence 403.

9       <u>Third</u>, Van Uden acknowledged the inapplicability of the "entire market

10  value" as a basis for damages. (Ex. 1 (Van Uden Rpt.) ¶¶114-17.) Indeed, he

11  conceded that "apportionment must be considered to properly account for just the

12  <u>contributions of the patented features</u>." (*Id.* at ¶114.) Despite that concession, Van

13  Uden used <u>the entire retail value of the allegedly infringing LED filament bulb</u> as

14  the basis for his "reasonable royalty" opinion. To justify that form of analysis, he

15  purported to identify agreements "comparable" to the facts presented here. His

16  analysis, however, lacked sufficient facts or data and/or a proper methodology for

17  multiple reasons, including: (1) he assumed that all originally asserted patents

18  would remain in suit and be found to infringe; (2) he improperly excluded

19  agreements that were inconsistent with his chosen conclusion; and (3) he adopted

20  a results-oriented approach by ignoring material similarities and differences with

21  respect to the excluded and included agreements. Indeed, at each step Van Uden's

22  analysis suffered from factual and/or legal errors, necessitating exclusion under

23  Federal Rules of Evidence 703 and 403.

24      <u>Fourth</u>, rather than an independent reasonable-royalty analysis, Van Uden's

25  "*Georgia-Pacific*" analysis uses his other flawed "baseline" opinions as the

26  starting point. The flaws in his "income approach" and "comparable license"

27  analyses, therefore, are compounded rather than cured. That analysis too,

28  therefore, should be excluded from trial.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

2

## II.    LEGAL STANDARD

### A.    Governing Legal Standards

For the issues addressed in this motion, the sources of controlling precedent are split between regional circuit law (*i.e.*, the Ninth Circuit) and Federal Circuit law. As Federal Circuit explained in *Wordtech Systems, Inc v. Integrated Networks Solutions, Inc*., 609 F.3d 1308 (Fed. Cir. 2010), "[w]hen reviewing damages in patent cases, we apply regional circuit law to procedural issues and Federal Circuit law to substantive and procedural issues 'pertaining to patent law.'" *Id.* at 1318 (quoting *Aero Prods. Int'l, Inc. v. Intex Recreation Corp*., 466 F.3d 1000, 1016 (Fed. Cir. 2006); *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir. 2002) (noting that Federal Circuit law controls "the distinctive characteristics of patent damages law")).

Under Ninth Circuit law, the exclusion of expert testimony is discretionary. *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The controlling procedural legal standards are provided under Federal Rules of Civil Procedure 702 and 703, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), which require "the district court [to] perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." *Ruvalcaba-Garcia*, 923 F.3d at 1188. "<u>The proponent</u> of the expert testimony has the burden of proving that the proposed expert testimony is admissible under Federal Rule of Evidence 702, *Daubert*, and its progeny." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1018 (C.D. Cal. 2018) (emphasis added, citation omitted).

A proper *Daubert* challenge is directed to "the soundness of the methodology" rather than "the correctness of the expert's conclusions." *Ruvalcaba-Garcia*, 923 F.3d at 1189 (citations omitted). However, "the Supreme Court has cautioned that 'conclusions and methodology are not entirely distinct from one another.'" *Townsend*, 303 F. Supp. 3d at 1019 (quoting *Gen. Elec. Co. v.*

3

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

*Joiner*, 522 U.S. 136, 146 (1997)). A district court, therefore, may consider a witness's conclusions to assess whether "there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

The role of gatekeeper, of course, cannot be delegated to the jury. Allowing improper expert testimony would tend to mislead the jury. *United States v. Valdez*, No. 18-CR-00608, 2019 WL 539074, at *3 (N.D. Cal. Feb. 11, 2019); *see also United States v. Geanakos*, No. 2:13-CR-0404, 2017 WL 4883294, at *2 (E.D. Cal. Oct. 30, 2017). The harm in admitting such testimony is distinct from ordinary fact testimony, in that juries may unduly defer to an expert "considering <u>the aura of authority experts often exude, which can lead juries to give more weight to their testimony</u>." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1064 (C.D. Cal. 2013) (emphasis added, citation omitted).

In addition, although meeting the standards of admissibility under Rule 702 and *Daubert* is a necessary predicate, expert opinion may also be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the Ninth Circuit explained in *United States v. Ramirez-Robles*, 386 F.3d 1234 (9th Cir. 2004), "Rule 403 and *Daubert* address different aspects of evidence and therefore act independently." *Id.* at 1246.

**B.    Law Governing Apportionment**

Damages for patent infringement are provided under 35 U.S.C. § 284:
Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

4

The interpretation of reasonable royalties in the patent context is governed by Federal Circuit law, as is the determination of what methodology is appropriate in that analysis. *See, e.g., Wordtech Sys., Inc.*, 609 F.3d at 1318. The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed Cir. 2014) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). Although some approximation is permitted, the Federal Circuit requires "<u>sound economic and factual predicates</u>" for that analysis. *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (emphasis added).

Reasonable royalty damages (the sole form of damages at issue in this case) are generally assessed based on a royalty base (*i.e.*, dollar value associated with the total acts of infringement) and a royalty rate (*i.e.*, a percentage to be multiplied by the base) to compensate for the infringement. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

### 1.    Only Revenues Attributable to the Infringing Features Are Relevant to Damages

It is settled law that "[n]o matter what the form of the royalty, a patentee must take care to seek only those damages <u>attributable to the infringing features</u>." *VirnetX*, 767 F.3d at 1326 (emphasis added) (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). In other words:

> A patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, <u>and such evidence must be reliable and tangible</u>, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

calculated on the whole machine, for the reason that the entire
value of the whole machine, as a marketable article, is properly
and legally attributable to the patented feature.

*Id.* (emphasis added). Applying a similar analysis, the Federal Circuit's decision in *Ericsson* emphasized "reliance on the entire market value <u>might mislead the jury</u>, who may be less equipped to understand the extent to which the royalty rate would need to do the work in such instances." *Ericsson,* 773 F.3d at 1227 (emphasis added, internal citations omitted). Indeed, the Federal Circuit has repeatedly "cautioned against reliance on the entire market value" because "it '<u>cannot help but skew the damages horizon for the jury</u>, regardless of the contribution of the patented component to this revenue.'" *Id.* (emphasis added) (quoting *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1320 (Fed. Cir. 2011)). In other words, by starting with an improperly large royalty base, a jury may improperly gravitate toward a higher overall damages award despite that number exceeding a "<u>reasonable</u> royalty."

To address these concerns, the Federal Circuit's default standard for reasonable royalty damages limits the royalty base to the value of the "smallest salable patent-practicing unit." *See VirnetX*, 767 F.3d at 1326. Even when the analysis begins with the smallest salable patent-practicing unit, additional apportionment steps may be required to ensure that the award relates to only the patented features. *Id.* ("the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment").

### 2. Exceptions Permitting Reliance on the Value of a Combination Larger than the Smallest Salable Unit

There are two potential exceptions to the default standard described above. These narrow exceptions permit a reasonable royalty calculation that starts with the value associated with more components than the smallest-salable patent-

6

practicing unit.

The first exception applies "<u>only where</u> the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *VirnetX*, 767 F.3d at 1326 (emphasis in original) (*quoting Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013)). Because Van Uden disclaims reliance on that exception,[2] no more discussion is warranted.

The second exception permits reliance on the same form of royalty rate and royalty base used in "comparable licenses." *See Commonwealth Scientific & Indus. Res. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) ("*CSIRO*"); *Ericsson, Inc. v. D-Link Sys. Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). The premise underlying this narrow exception is that:

> Such a model begins with rates from comparable licenses and then "account[s] for differences in the technologies and economic circumstances of the contracting parties." . . . Where the licenses employed are sufficiently comparable, this method is typically reliable because the parties are constrained by <u>the market's actual valuation of the patent</u>.

*CSIRO*, 809 F.3d at 1303 (emphasis added). In other words, this exception requires evidence that the parties to another arms-length negotiation necessarily "built in apportionment" by valuing <u>only the patented features</u> in arriving at the royalty base/royalty rate pair in the comparable agreement. *Id.* The Federal Circuit cautioned, however, that "this court has often excluded proffered licenses as insufficiently comparable." *Id.* n.2.

## III.    STATEMENT OF FACTS

Epistar served a document entitled "Expert Report Regarding Epistar's Patent Infringement Damages" dated April 30, 2018. (Ex. 1 (Van Uden Rpt.).) A brief summary is provided here, with additional facts and assumptions addressed

---

[2] (*See* Ex. 1 (Van Uden Rpt.) ¶¶114-17.)

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

in the relevant sections of the Argument below.

## A.     Qualifications and Engagement

Van Uden's report begins with a brief explanation of his qualifications. (*Id.* at ¶¶1-3.) In particular, Van Uden describes his background in "financial forensics." (*Id.*) Nowhere did he claim any relevant expertise in technical matters, such as the design, development, or function of light emitting diodes ("LEDs"). (*See id.*) Following his qualifications, Van Uden provides an "Overview of Engagement," which explained his role "as an expert on patent infringement damages and financial issues." (*Id.* at ¶4.) Again, his role did not include opining on or testifying regarding technical issues. (*Id.*)

## B.     The Patents and Claims In Suit

As part of his analysis, Van Uden assumes that all asserted claims of the five originally-asserted patents are valid and infringed. (Ex. 1 (Van Uden Rpt.) ¶7; *see also id.* at ¶109.) At the summary judgment stage, all asserted claims of one patent and a number of asserted claims of another were declared invalid. (Dkt. 213.) In addition, Epistar dropped a number of additional claims during the course of litigation. (Ex. 2 (Epistar Pretrial Disclosure).) The table below identifies the asserted patents, the claims that Van Uden assumes were valid and infringed, and the claims that are no longer at issue:

| Patent No. | Claims Assumed Valid and Infringed[3] | Claims Invalidated or Dropped During Litigation |
|---|---|---|
| 8,791,467 | 1-3, and 8 | All |
| 7,560,738 | 1-3, 8, 13-17, and 24 | 13-17 and 24 |
| 6,346,771 | 32, 33, 36 and 38 | |
| 8,587,020 | 1, 2, 8-13, 15 and 16 | 1 and 16 |
| 8,492,780 | 1-7 | |

---

[3]     (Ex. 1 (Van Uden Rpt.) ¶¶ 67, 71, 76, 80, 84.)

8

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

### C.     The Purported "Filament Patents"

In a section of his report entitled "The Filament Patents," Van Uden purports to provide a technical description of the five patents-in-suit. (Ex. 1 (Van Uden Rpt.) ¶¶67-87.) The premise of his description is that "[t]he patents-in-suit are generally directed towards enabling technology and improvements in LED filament bulb design." (*Id.* at ¶63.) None of the patents asserted by Epistar use the term "filament." (*See, generally*, Dkt. 1-1, 1-2, 1-4, 1-5.) And of the four patents that remain in suit, three are unambiguously related to chip-level rather than higher order structures. (*See* Dkt. 1-1, 1-4 and 1-5.) The remaining patent is directed to using adhesive to attach LEDs to a substrate, but does not disclose or claim "filaments." (*See*, *generally*, Dkt. 1-2.)

### D.     Van Uden's "Baseline"

Section 5 of Van Uden's report is directed to the "Determination of [a] Baseline Royalty." (Ex. 1 (Van Uden Rpt.) §5.) In particular, he purports to derive a "baseline" by utilizing an "income approach" and a "market approach." (*Id.*)

#### 1.     The "Income Approach"

In a section of his report entitled "Income Approach," Van Uden purported to "value the incremental benefits associated with use of the patented technology." (Ex. 1 (Van Uden Rpt.) ¶132.) The "premise" of that approach is "that the value of the patented technology can be measured by comparing the profits earned on products incorporating the patented technology to otherwise equivalent but non-accused products or to some company or industry norm." (*Id.*) The purported methodology used by Van Uden is described as follows:

> As shown in Exhibits 10.0 and 10.1, I have identified certain of
> Lowe's LED light bulbs which do not utilize the LED filament
> technology described in the patents-in-suit but are comparable to
> the Lowe's Accused Products in terms of bulb type, base,
> equivalent wattage, etc. By comparing Lowe's profitability

9

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

garnered from Lowe's Accused Products to the profitability from these alternative LED bulbs, an indication of the incremental value of the patented technology can be derived.

(*Id.* at ¶133.) The conclusion Van Uden reached was that "████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████ (*Id.* at ¶134.)

### 2. The "Market Approach"

In a section of his report entitled "Market Approach," Van Under purported to identify "comparable arm's-length transactions." (Ex. 1 (Van Uden Rpt.) ¶142.) As part of his analysis, he identified three agreements that he deemed "comparable" (*id.* at ¶¶143-61), and excluded seven other agreements as "non-comparable (*id.* at ¶¶162-89.) By limiting his analysis to only three agreements, Van Uden concluded that "████████████████████████████████

████████████████████ (*Id.* at ¶190.)

### E. Van Uden's "*Georgia-Pacific*" Analysis

Van Uden's also purports to apply "the G-P Factors," which is a reference to *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). (Ex. 1 (Van Uden Rpt.) §6.) Rather than an independent opinion, Van Uden "address[es] the impact of the G-P Factors relative to the baseline royalties that I determined for the patents-in-suit." (*Id.* at ¶203.) More specifically, Van Uden opines whether that factor applies neutral or upward pressure to the "baseline." (*Id.* at §6.) Based on that assessment, he adopted the upper end of his "Market Approach" baseline (███

███ as his damages opinion. (*Id.* at ¶266.)

---

10

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

## IV.  ARGUMENT

### A.    Van Uden's "Income Approach" Should be Excluded Under Federal Rule of Evidence 703

According to Van Uden, his "Income Approach" seeks to determine the "incremental value" of the patented technology by "comparing the profits earned on products incorporating the patented technology to otherwise equivalent but non-accused products." (*See* Van Uden Rpt. ¶¶132-33.) Deconstructed, the methodology purports to "remov[e] from consideration the value of other technology contained in an LED bulb" (*id*. at ¶141) by: (1) determining the profits on products that include the patented technology (*i.e.*, infringe the purported "filament patents"); (2) determining the profits on products that are "otherwise equivalent" but exclude the patented technology; and (3) comparing the profit differential (*see, e.g.*, (Ex. 3 (Van Uden Depo.) at 138:4-16). Each and every step of this "methodology" suffers from logical, factual, and/or legal flaws.

### 1.    The "Filament Patent" Fallacy

Throughout the course of this litigation, a central narrative pursued by Epistar is that owns the patents on "LED filament bulbs." The core of this <u>false narrative</u> is the use of the term "filament patents" to collectively characterize the five original patents-in-suit."[4] Although none of the asserted patents uses the term "filament" or describes the underlying concept (*see, generally*, Dkt. 1-1 through 1-5), that only scrapes the surface on the misleading nature of the narrative.

In patent law, the <u>only</u> operative part of a patent is the claims. *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1324 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1298 (2020) ("As always, '<u>the name of the game is the</u>

---

[4]    At the appropriate time, Lowe's intends to move *in limine* to exclude reference to "filament patents" generally under Federal Rule of Evidence 402 and 403 for reasons including that it is untrue, irrelevant and misleading. Similarly, Lowe's intends to exclude Van Uden's opinions and testimony directed to technical matters, which are outside the scope of his expertise. This Strategic Motion addresses only Van Uden's financial opinions.

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

claim.'") (emphasis added, citation omitted). The claims asserted in this litigation (both as originally asserted and those that remain) are not directed to filaments, filament bulbs, or some amorphous "filament technology." (Dkt. 1-1 through 1-5). Indeed, even Van Uden's overly broad and largely misdirected descriptions of the asserted claims (purportedly based on off-the-record discussions with Dr. Fitzgerald)[5] put the lie to Epistar's narrative:

- "The asserted claims of the '771 patent are generally directed towards 'reducing total internal reflection in LEDs.'" (Ex. 1 (Van Uden Rpt.) ¶68 (emphasis added).)

- "I understand the asserted claims of the '738 are generally directed towards 'electrically connected LED chips on a thin[6] substrate.'" (*Id.* at ¶72.)

- "Similar to the '771 patent, I understand the asserted claims of the '780 patent are directed towards solving problems associated with internal reflection occurring when light is emitted from the active layer of LED [sic] chip.'" (*Id.* at ¶81 (emphasis added).)

- "I understand the asserted claims of the '020 patent are directed towards solving problems associated with distributing power across an LED surface without obstructing light emission." (*Id.* at ¶87 (emphasis added).)

Neither Van Uden, nor Dr. Fitzgerald (through the incorporation of the latter's "interpretations" into the former's analysis) provides any link between the asserted claims and the patenting of "filament bulbs." In other words, there are insufficient facts and a lack of any methodology, necessitating exclusion of the entire "income approach" under Federal Rule of Evidence 703. In addition, Van Uden lacks any qualification to render the necessary opinion, again requiring

---

[5]    These descriptions of the patents and claims are outside of Van Uden's expertise, and, to the extent they merely regurgitate properly disclosed opinions of Dr. Fitzgerald, are unnecessary.

[6]    Although Van Uden provides quotation marks, it is unclear what he is purporting to quote. The claims do not mention "LED chips" and do not require the recited "substrate" to be "thin."

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1   exclusion on Rule 703.

2   ## 2.   The "Filament Patent" Fallacy, Redux

3   Repeating the false premise that the five original patents-in-suit are the

4   definitive "filament patents," Van Uden next purports to have "identified certain

5   of Lowe's LED light bulbs which do not utilize the LED filament technology

6   described in the patents-in-suit." (Ex. 1 (Van Uden Rpt.) ¶133.) The naked

7   assumption underlying this analysis is that non-filament bulbs necessarily fall

8   outside the claims of the asserted patents, *i.e.*, cannot have used the claimed

9   technologies. Nowhere, however, did Van Uden describe any <u>methodology</u> he

10  used (1) to <u>select</u> the comparative bulbs, or (2) to confirm that those comparative

11  bulbs <u>necessarily</u> fell outside the scope of the asserted claims. Instead, to the

12  extent a methodology can be divined from the terse description, the entire analysis

13  consisted of an unknown selection of bulbs for comparison followed by falsely

14  equating the selected bulbs with non-infringing bulbs. He confirmed this failure of

15  methodology during his deposition:

16      Q. And first, I want to have an understanding of how you were able to

17      establish that your second set of products, the ones you were

18      comparing to at a lower price, how did you go about establishing that

19      those products do not fall within the scope of any of the patent claims

20      at issue here?

21      A. Well, I went off the understanding of they're not accused products,

22      and therefore that they're not infringing. . . .

23      Q. How did you get from one to the other, from not accused to not

24      infringing?

25      A. Well, my understanding was if it does not include the filament

26      bulbs, that it is not accused of [in]fringing . . . .

27      Q. Well, then how do you know that it does not infringe. . .?

28      A. <u>I don't. I just gave you my understanding, if it does not have the</u>

13

1   <u>filament, it's not an infringing product</u>.

2   (Ex. 3 (Van Uden Depo.) at 139:23-140:6, 140:25-141:4 (emphasis added).)

3   Moreover, even the overly broad and misdirected descriptions of the

4   asserted claims as quoted in the previous section negate the underlying premise

5   that non-filament bulbs must necessarily fall outside the asserted claims. More

6   specifically, nowhere does Van Uden explain or establish that the purported

7   improvements in LED structure ('771, '780, and '020 patents) and LED to

8   substrate attachment using adhesive ('738 patent) are necessarily excluded from

9   non-filament bulbs. (*See*, *generally*, Ex. 1 (Van Uden Rpt.).) In addition, Van

10  Uden disclaims any qualification to render such technical opinions. (Ex. 1 (Van

11  Uden Rpt.) ¶1; Ex. 1 (Van Uden Rpt.) Attach. 1; Ex. 3 (Van Uden Depo.) at 7:8-

12  18.) And tellingly, in contrast to other technical issues upon which he purports to

13  rely on Dr. Fitzgerald, as to this analysis, no such reliance is mentioned in the

14  Report. (*See* Ex. 1 (Van Uden Rpt.) at ¶133.) Instead, the analysis (if any)

15  belonged solely to Van Uden. Indeed, during his deposition, the only remotely

16  relevant support from Dr. Fitzgerald for this dubious methodology was a

17  characterization that "[Dr. Fitzgerald] seemed to think that that [comparison]

18  would be one decent way of looking at the differential" (Ex. 3 (Van Uden Depo.)

19  139:23-149:13.) Whether "decent" or not, the fact remains that no such technical

20  analysis was ever done. Van Uden's lack of qualification, facts and methodology

21  for this aspect of his "income approach," therefore, again necessitate exclusion.

22  **3.    The Purported Removal of "Other Technology"**

23  Finally, Van Uden admits that he was required to "remov[e] from

24  consideration the value of other technology contained in an LED bulb." (Ex. 1

25  (Van Uden Rpt.) ¶141.) Yet, he did not engage in any such analysis to remove the

26  value of other technology:

27  Q. … [H]ow did you go about ensuring that additional

28  characteristics not covered by the claims did not account for the

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

14

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

differential that you measured?

A. Well, again, I'm not aware of any other differences between the products other than the patented technology.

Q. Well, you said you're not aware of. Did you look for any?

A. I think I explained my approach to Dr. Fitzgerald just in general. And he seemed to think that that would be one decent way of looking at the differential. And he did not identify any additional buckets of technology.

(Ex. 3 (Van Uden Depo.) 142:22-143:10.)

As an initial matter, the fundamental premise that the five patents-in-suit equate to "filament technology" (even if that premise were remotely true), would still require exclusion now that the '467 patent has been declared invalid. (*See* Dkt. 213.) More specifically, without explanation or justification, Van Uden universally addresses the original five patents-in-suit as a collective unit. (*See, generally*, Ex. 1 (Van Uden Rpt.).) That simplistic formulation provides no basis to apply his proffered opinions should fewer than all five patents be found valid and infringed (*see id.*), which has now come to pass. Epistar could have sought leave to provide timely supplementation. Instead, Van Uden sought to resuscitate his proffered opinions at deposition by offering, in effect, that his damages opinions are somehow independent of the patents found valid and infringed. (Ex. 3 (Van Uden Depo.) 12:3-17.)

Second, Epistar recently filed a new patent litigation against Lowe's in the Western District of Texas, where it purports to pursue infringement claims on a completely different set of five "filament" patents. (Ex. 4 (complaint in *Epistar Corp. v. Lowe's Co., Inc.*, 6:20:cv-420 (W.D. Tex. filed May 22, 2020)) at ¶¶39-44.)[7] Epistar's own conduct, therefore, shows that Van Uden's opinion lacks

---

[7]    Whatever reasons underlie Epistar's choice of a new forum for this additional suit, Epistar's conduct in filing suit on additional "filament patents"

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

1    sufficient facts or a reliable methodology.

2    Third, Van Uden contradicted his own premise when he characterized the

3    Phillips LED Licensing Program. (Ex. 1 (Van Uden Rpt.) ¶188.) In particular, he

4    admitted his understanding that "[the] Philips licensing program covers a broad

5    scope of technologies, including technology relating to filament based LED

6    products which, 'improves reliability and luminous efficacy of filament LED

7    bulbs.'" (*Id.*) By not even trying to reconcile that understanding with his "income

8    approach," which is premised on the theory that the five patents-in-suit occupies

9    the entire field of technical differences between filament and non-filament bulbs,

10   should again necessitate exclusion.

**B.      Van Uden's "Income Approach" Should be Excluded Under
          Federal Rule of Evidence 403**

13   In addition to the many factual and methodology flaws addressed above,

14   Federal Rule of Evidence 403 provides an independent basis for exclusion. In

15   particular, the "income approach" should be excluded, at a minimum, because its

16   probative value is substantially outweighed by its unfair prejudice, because it

17   confuses the issues and will mislead the jury.

18   Most importantly, any fair reading of Van Uden's report shows that the

19   only apparent purpose of the "income approach" is to present the jury with a

20   sufficiently high number ( █████ ) to render his later royalty opinion ( ████ ) remotely

21   plausible by comparison. The fundamental unfairness of admitting this proposed

22   testimony has been recognized in the Federal Circuit's admonishment against

23   "skew[ing] the damages horizon for the jury." *VirnetX*, 767 F.3d at 1327 (citation

24   omitted). Although the core concern in *VirnetX* was misuse of the royalty base,

25   the same concerns should apply to damages generally, including for misuse of the

26   royalty rate. As the Ninth Circuit confirmed on remand from the Supreme Court's

27

28   demonstrates Van Uden's opinion lacks sufficient facts or a reliable
     methodology.

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

16

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

*Daubert* decision, "Federal judges must . . . exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1321 (9th Cir. 1995) (*Daubert II*), *on remand from*, *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993) (emphasis added). Here, Van Uden admitted that he cannot testify that the ██% number represents the value associated solely with the patents-in-suit. (Ex. 3 (Van Uden Depo.) at 148:2-149:8.) Therefore, the proposed testimony does not speak clearly and directed to an issue in dispute, and instead can only serve to mislead the jury, necessitating exclusion. The mere allegation that he somehow "gave less weight" to this approach (*see* Ex. 3 (Van Uden Depo.) 145:25-146:16, 150:7-14), if anything, renders that opinion less probative and more likely to cause jury confusion.

### C.    Van Uden's "Market Approach" Should be Excluded Under Federal Rule of Evidence 703

As discussed above, the first "Baseline" opinion Van Uden provided comprises a ██ rate. Because he never actually applies that rate (or use it in any material way), that opinion does not run afoul of the rule against relying on the "entire market value" of the accused products. By contrast, for his second "Baseline" opinion, Van Uden opines that a rate of ██ should be used with the full retail price received by Lowe's (*i.e.*, entire market value) for the purportedly infringing bulbs. Although Van Uden acknowledges the contrary rule stated in *VirnetX* (Ex. 1 (Van Uden Rpt.) ¶114), he purports to avoid that prohibition by relying on "comparable licenses." (*Id.* at ¶¶115-17; 142-61.)

Although he discusses ten agreements, in the end Van Uden concludes that only three are "comparable," with the remainder being excluded. (Ex. 1 (Van Uden Rpt.) at ¶¶142-89.) Rather than apply an accepted (or even explained) objective methodology, Van Uden adopts an arbitrary and subjective approach to

17

including and excluding agreements, an approach that fails to pass muster with *Daubert's* gatekeeper role.

### 1.     Van Uden's Absent "Comparable" Methodology

The fundamental premise of Van Uden's "comparable agreements" opinion is that Epistar can avoid the prohibition against using the "entire market value" by adopting a methodology that has the legally required apportionment built in. (Ex. 1 (Van Uden Rpt.) ¶116.) In particular, Van Uden cites two Federal Circuit decisions for the proposition that "comparable agreements based on the total revenues of multi-component product, are not in violation of the 'entire market value' rule as it is assumed that the participants to the license have already accounted for any apportionment to reflect the incremental value of the patented invention[s]."(*Id.* (bracket in original) (citing *Ericsson*, 773 F.3d at 1226; *CSIRO*, 809 F.3d at 1303).) As explained below, to the extent that the "methodology" underlying Van Uden's "comparable license" opinions can be divined, it consists of (1) identifying similarities and ignoring dissimilarities to find agreements comparable; and (2) identifying dissimilarities and ignoring similarities to find agreements non-comparable. In other words, no objective methodology was described or applied to reach Van Uden's 5% opinion.

As explained in the Section II.B.2., the *CSIRO* line of cases is not a boundless invitation to ignore the general rule that damages must be sought using the smallest saleable unit. Instead, the Federal Circuit has carved out a <u>narrow</u> exception that applies, if and only if, the requested damages "reflect the value attributable to the infringing features of the product, <u>and no more</u>." *CSIRO*, 809 F.3d at 1301 (emphasis added) (citing *Ericsson*, 773 F.3d at 1226). Thus, "to be admissible, all <u>expert damages opinions must separate the value of the allegedly infringing features from the value of all other features</u>." *Id.* (citing *VirnetX*, 767 F.3d at 1329) (emphasis added). Although this motion affirmatively challenges admissibility, the burden to establish admissibility (*i.e.*, the applicability of the

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

18

exception) belongs to Epistar. *See Townsend*, 303 F. Supp. 3d at 1018.

That license-comparability is not a broad concept can be seen from the facts in *CSIRO*, where the district court received evidence of discussions by "the parties themselves . . . regarding Cisco taking a license to the [identical] patent." *CSIRO*, 809 F.3d at 1302-03.[8] In fact, the Court noted that the defendant in that case had "suggested" a per unit royalty, which formed the foundation for the conclusion that the "analysis already built in apportionment." *Id.* at 1303. And importantly, the Federal Circuit ultimately vacated the award because the district court did not isolate the value of the patented technology from other sources of value. *Id.* at 1304-06.

**Super Trend:** The first agreement that Van Uden deemed "comparable" is with Super Trend Lighting (Group) Ltd. ("Super Trend"). (Ex. 1 (Van Uden Rpt.) ¶143.) Nowhere does Van Uden describe a standard under which he analyzed comparability with respect to Super Trend. (*Id.* at ¶¶143-49.) Instead, each and every sentence of his "analysis" suggests no more than a passing similarity. The following table identified a few relevant characteristics:

| Characteristic | Super Trend | Lowe's |
|---|---|---|
| supply chain position | manufacturer (¶143)[9] | retailer (¶19) |
| license type | ██████████████ | lump sum[10] (¶97) |

---

[8] Two other factors present in *CSIRO*, but absent here, also suggest a relatively narrow holding. First, because the district court was receiving evidence during a bench trial (*CSIRO*, 809 F.3d at 1299), misleading or confusing a jury were not relevant. Second, the core dispute was not about the proper royalty base. *Id.* at 1303 n.1 ("The choice of royalty base-which is often the focus of the apportionment analysis—is <u>irrelevant to the district court's analysis</u>. The particular rates relied on by the district court were contemplated as cents per end unit sold by Cisco, but they could equally have represented cents per wireless chip without affecting the damages calculation.").

[9] References in this table and the following tables with the format (¶#) are to that paragraph of the Van Uden's report and with the format (#:#-#) are to the corresponding page and line numbers of his deposition.

[10] As Van Uden admitted, Lowe's was willing to and in fact did cease sales of the allegedly infringing products. (Ex. 1 (Van Uden Rpt.) ¶97.)

19

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

| Characteristic | Super Trend | Lowe's |
|---|---|---|
| Scope | ███████████ | U.S. only (¶6) |
| overlapping patent | ███████████ | |
| non-overlapping patents | ████████████ | '780 and '020 patents (¶6) |
| | ██████ (¶144) | |
| royalty | ████████ (¶146) | ████████ (¶266) |

Nowhere did Van Uden address the respective positions of Super Trend and Lowe's in the supply chain. More specifically, he identified Super Trend as a manufacturer, but failed to explain how a manufacturer's decision to pay a ███ █████████████████ would be comparable to a retailer paying a ███ ███████████. The failure to account for the differences between retail and manufacturer prices is illustrative of his absent methodology.

In addition, Van Uden fails to meaningfully address the differences in scope between the Super Trend agreement and his "hypothetical" license. In particular, his conclusion that a 40% premium is proper for a narrower geography and far fewer patents is indicative of his speculative methodology. Importantly, he provides no basis to separate out the value of license rights to the '467 patent, which were obtained by Super Trend, but are unnecessary for Lowe's due to the Court's invalidity determination. Van Uden also assigns no value at all to the additional "filament patents" at issue in Epistar's new Texas litigation. Importantly, underline four of the five patents underline asserted against Lowe's there were included in the patents licensed to Super Trend (either by patent number of patent application number). (*See* Ex. 5 (Super Trend License) at Epistar 0001844-55; Ex. 4 (Texas Complaint) ¶22.) Instead of engaging in a substantive analysis, he merely cites to Dr. Fitzgerald, who himself provided a one-sentence conclusion rather than a substantive analysis. (Ex. 8 (Fitz. Rpt.) ¶769.)

**Adamax:** The second agreement that Van Uden deemed "comparable" is with Adamax, Inc. ("Adamax"). (Ex. 1 (Van Uden Rpt.) ¶150.) Again, nowhere

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

20

does he describe his purported methodology. (Ex. 1 (Van Uden Rpt.) ¶¶150-54.)

| Characteristic | Adamax | Lowe's |
|---|---|---|
| supply chain position | unidentified (¶154) | retailer (¶19) |
| license type | ████ (¶153) | lump sum (¶97) |
| Scope | ███ (¶150) | U.S. only (¶6) |
| overlapping patent | ' ████████ | |
| non-overlapping patents | ████ ████ (¶150) | '780, '020 patents (¶6) |
| royalty | ████ (¶153) | ███ (¶266) |

Many of the same methodology defects in Van Uden's opinion with respect to Super Trend are repeated with respect to Adamax. Importantly, here again, Van Uden's "methodology" effectively zeros out the value associated with the additional patents licensed by Adamax but unneeded by Lowe's. Those patents include ████████████████ ████████ asserted against Lowe's in the Texas litigation. (Ex. 9 (Adamax License) at Epistar 0001865; Ex. 4 (Texas Complaint) ¶22.)

Even more suspect is Van Uden's failure to address the nuisance-value nature of the Adamax litigation, which resulted in the cited agreement. Although Van Uden purported to have reviewed the deposition of Epistar's 30(b)(6) witness Meng-chun Kuo (see Ex. 3 (Van Uden Depo.) 20:21-21:14), he omits the fact that Epistar had received only about ███ under that agreement (Ex. 6 (Kuo Depo.) 170:3-171:11). And to receive that small sum, Epistar expended around $███. (Id. at 172:4-11.) Here in contrast, Van Uden opines that $████ would have been reasonable based on a purportedly comparable agreement orders of magnitude smaller. Although comparability comprises his conclusion rather than his methodology, "conclusions and methodology are not entirely distinct from one another." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). The lack of explanation and enormous analytical leap between the "facts" and his

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

21

conclusion call for exclusion. *See Townsend*, 303 F. Supp. 3d at 1019.

**QLS:** The third agreement that Van Uden deemed "comparable" is with Q L Light Source, Co., Ltd. ("QLS"). (Ex. 1 (Van Uden Rpt.) ¶155.) Again, no methodology is identified. (Ex. 1 (Van Uden Rpt.) ¶¶155-61.)

| Characteristic | QLS | Lowe's |
|---|---|---|
| supply chain position | manufacturer (¶161) | retailer (¶19) |
| license type | ███████ ███████ (¶158) | lump sum (¶97) |
| Scope | █████ (¶155) | U.S. only (¶6) |
| overlapping patent | ███████ | |
| non-overlapping patents | ███████ ██████ (¶155) | '780, '020 patents (¶6) |
| royalty | ███████ ██████ (¶158) | ██████ (¶266) |

The issues here largely mirror those discussed with respect to Super Trend and Adamax. Here again, Van Uden's "methodology" accorded zero value to "███████████████████████████████████ licensed to QLS. In addition, the licensed patents under this agreement ████████████ asserted against Lowe's in the Texas litigation. (Ex. 7 (QLS License) at EPISTAR 0001840-41; Ex. 4 (Texas Complaint) ¶22.) That those patents are purportedly valuable enough to deserve their own costly litigation suggests according them no value here resulted from a baseless methodology.

More troublingly, Van Uden ignored Ms. Kuo's testimony that ██████ ████████████████████████████████████. (Ex. 6 (Kuo Depo.) at 131:14-132:10.) As of the time of her deposition, rather than ███████ ████████████████████████████████████████ ██████████████ (*Id.* at 134:9-24.) Like the Adamax agreement, therefore, no methodology could conclude that this agreement is comparable to the <u>millions</u>

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

that Epistar demands here. In addition, Van Uden again fails to provide a reasoned explanation for increasing a ███████████ to an ███████ ████ for fewer and narrower rights.

**Summary of the "Comparable" Methodology:** On its face, Van Uden's analysis fails to meet the standard for admissibility, which requires "opinions [that] separate the value of the allegedly infringing features from the value of all other features." *CSIRO*, 809 F.3d at 1301. Each of the "comparable" agreements included additional patents, for which Van Uden effectively opined should be accorded <u>zero value</u>. The fact that Epistar believes those patents to be important enough to bring independent patent litigation against the same party, however, cannot be reconciled with any reasonable methodology and conflicts with the basic premise of *CSIRO* that <u>only</u> the value of the asserted patent(s) be considered. *Id.* at 1303.

Moreover, cross-examination cannot remedy the harm posed by the admission of Van Uden's subjective eye-of-the-beholder opinions. Merely establishing that he lacked sufficient facts or an admissible methodology should be addressed by Rule 703's gatekeeper role rather than by leaving the jury to determine the weight to be given. *See Ruvalcaba-Garcia*, 923 F.3d at 1188. Indeed, Van Uden's lack of facts or an objective and replicable methodology is not something the jury can be expected to grasp in the time typically allotted at trial. That is, in part, why the law does not permit a "subjective, conclusory approach [that] cannot reasonably be assessed for reliability." *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1046 (9th Cir. 2014). The net result would be that the jury improperly defers to Van Uden's "the aura of authority." *See Toyota*, 978 F. Supp. 2d at 1064. Exclusion, therefore, is warranted.

## 2.    Van Uden's Absent "Non-Comparable" Methodology

Much like he did in assessing which agreements to include as "comparable," Van Uden provided conclusory allegations to exclude other

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1    agreements as "non-comparable." Importantly, much of the purported factual

2    support for those exclusions was solely based on a discussion that he purportedly

3    had with Ms. Kuo. (Ex. 1 (Van Uden Rpt. ¶¶168, 180, 184.) Not surprisingly, the

4    three agreements that expressly included at least one patent asserted in this case

5    that he excluded called for significantly lower payments than he opines are

6    reasonable here. (*Id.* at ¶¶167-70 ███████████); 179-82 ███████████

7    ███); 183-86 ████████████████████████████ Such a

8    results-oriented methodology based on an interested witness's undisclosed

9    opinions should not be permitted.

10         One further agreement mentioned, but excluded as non-comparable, was the

11   "Philips LED Licensing Program." (Ex. 1 (Van Uden Rpt.) ¶¶188-89.) Although

12   Epistar itself took a license under that program ████████████████

13   (*Id.* at ¶172), Van Uden concluded that the program reflected a broad industry

14   practice of using running royalties (*id.* at ¶189). In addition, Van Uden conceded

15   that the Philips Program included far more patents (Ex. 3 (Van Uden Depo.)

16   226:4-230:3), including patents "related to LED filament bulbs" (Ex. 1 (Van Uden

17   Rpt.) at ¶188). Despite the overlap in technology and greater breadth, Van Uden

18   made no effort to reconcile the ████████ range used in the Philips

19   Program with his ████████. (Ex. 1 (Van Uden Rpt.) ¶189.)

20         **D.    Van Uden's "G-P Factor" Analysis Should be Excluded**

21         **Under Federal Rules of Evidence 703, 402, and 403**

22         In Section 6 of his report, Van Uden claims to analyze the "G-P Factors."

23   Rather than an independent analysis, however, each subsection merely

24   "address[es] the impact of the G-P Factors relative to the baseline royalties that

25   [he] determined for the patents-in-suit. " (Ex. 1 (Van Uden Rpt.) ¶203.) In other

26   words, the entirety of his *Georgia-Pacific* analysis presumes that his "baseline"

27   analysis will be admissible. Indeed, for a number of "factors," Van Uden

28   expressly defers to his analysis for the "baseline." (*See id.* at ¶¶206; 211; 219;

24

226; 235; 253; 254; 262-64.) Because this analysis is predicated on the same disqualifying facts and absent methodology as his "baseline" conclusions, exclusion of the former must also result in exclusion of the latter.

## V.    CONCLUSION

Based on the foregoing, Lowe's respectfully requests that the Court exclude the "baseline" and "GP-Factor" opinions and testimony of Bryan Van Uden.

Dated: August 6, 2020                    Respectfully submitted,
                                          HOLLAND & KNIGHT LLP


                                          By: /s/ *Michael B. Eisenberg*
                                          Michael B. Eisenberg (*pro hac vice*)
                                          Stacey H. Wang
                                          Vito A. Costanzo
                                          Robert Hill

                                          Attorneys for Defendant Lowe's
                                          Home Centers

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF BRYAN M. VAN UDEN