JAMES C. YOON, State Bar 177155
jyoon@wsgr.com
RYAN R. SMITH, State Bar 229323
rsmith@wsgr.com
ALBERT SHIH, State Bar 251726
ashih@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Plaintiff Epistar Corporation*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPISTAR CORPORATION,<br><br>              Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br><br>              Defendants.<br>_____ | Case No.: 2:17-cv-03219 JAK (KSx)<br><br>**EPISTAR'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................... 1

    A.    Overview of the Lawsuit .......................................................... 1

    B.    The Parties ................................................................................ 4

        1.    Epistar Corporation ....................................................... 4

        2.    Lowe's Home Centers, LLC .......................................... 5

    C.    Procedural History .................................................................... 6

III.   THE PARTIES' CLAIMS AND DEFENSES (L.R. 16-4.1) ............... 7

    A.    Summary of Epistar's Claims (L.R. 16-4.1(a)) ........................ 7

    B.    Elements Required to Establish Epistar's Claims (L.R. 16-4.1(b)) ..................................................................................... 8

        1.    Direct Infringement by Literal Infringement ................. 8

        2.    Indirect Infringement by Inducement ............................ 9

        3.    Reasonable Royalty Damages ...................................... 10

        4.    Willful Infringement .................................................... 14

        5.    Injunctive Relief .......................................................... 15

    C.    Brief Description of the Key Evidence in Support of Epistar's Claims (L.R. 16-4.1(c)) ......................................... 15

        1.    Direct Infringement by Literal Infringement ............... 15

        2.    Indirect Infringement by Inducement .......................... 16

        3.    Reasonable Royalty Damages ...................................... 17

        4.    Willful Infringement .................................................... 18

        5.    Injunctive Relief .......................................................... 18

    D.    Summary of LHC's Defenses and Counterclaims (L.R. 16-4.1(d)) ..................................................................................... 18

    E.    Elements Required to Establish LHC's Affirmative Defenses (L.R. 16-4.1(e)) ...................................................... 19

        1.    First Affirmative Defense: Failure to State a Claim ...... 19

|   |   | 2. | Second Affirmative Defense: Non-infringement............................ 20 |
|---|---|---|---|
|   |   | 3. | Third Affirmative Defense: Invalidity ............................................. 20 |
|   |   | 4. | Fourth Affirmative Defense: Limitation on Damages (35 U.S.C. §§ 286-287)............................................................... 23 |
|   |   | 5. | Fifth Affirmative Defense: Limitation on Costs............................ 24 |
|   | F. | | Brief Description of the Key Evidence Relied on in Opposition to LHC's Affirmative Defenses (L.R. 16-4.1(f)) ................... 25 |
|   |   | 1. | First Affirmative Defense: Failure to State a Claim........................ 25 |
|   |   | 2. | Second Affirmative Defense: Non-infringement............................ 25 |
|   |   | 3. | Third Affirmative Defense: Invalidity ............................................. 25 |
|   |   | 4. | Fourth Affirmative Defense: Limitation on Damages.................... 26 |
|   |   | 5. | Fifth Affirmative Defense: Limitation on Costs............................ 26 |
|   | G. | | Anticipated Evidentiary Issues (L.R. 16-4.1(h)).......................................... 27 |
|   | H. | | Issues of Law (L.R. 16-4.1(i))...................................................................... 28 |
|   |   | 1. | Interpretation of 35 U.S.C. § 288.................................................. 28 |
|   |   | 2. | Whether Invalidity Under 35 U.S.C. § 103 Should be Presented to the Jury ...................................................................... 28 |
|   |   | 3. | Limitation on Damages Under 35 U.S.C. §§ 286 and 287.............................................................................................. 28 |
|   |   | 4. | Whether Willful Infringement Should Be Presented to the Jury ............................................................................................. 28 |
| IV. | | | BIFURCATION OF ISSUES (L.R. 16-4.3)................................................... 29 |
| V. | | | JURY TRIAL (L.R. 16-4.3) ............................................................................ 29 |
|   | A. | | Issues Triable to the Jury............................................................................ 29 |
|   | B. | | Issues Triable to the Court .......................................................................... 29 |
| VI. | | | ATTORNEYS' FEES (L.R. 16-4.5).................................................................. 30 |
| VII. | | | ABANDONMENT OF ISSUES (L.R. 16-4.6) ............................................... 31 |
|   | A. | | Issues Abandoned by Epistar ...................................................................... 31 |
|   | B. | | Issues Abandoned by LHC........................................................................... 31 |

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AK Steel Corp. v. Sollac*, 344 F.3d 1234 (Fed. Cir. 2003) ...............................23

*Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308 (Fed. Cir. 1999)...........................9

*Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007) ..............................................................................................8

*Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993)...................24

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324(Fed. Cir. 2006) ..........................................................................................................8

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017)........................................................................... 14, 23

*Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ..................................................................................................22

*Bradford Co. v. Jefferson Smurfit Corp.*, No. 20001511, 2001 WL 35738792 (Fed. Cir. Oct. 31, 2001).................................................................... 24, 25

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303 (Fed. Cir. 1998)......................................................................................9

*Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632 (2015) .....................................9

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005).......................................................................................8

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001) ............................................................... 10, 24

*Devices for Med., Inc. v. Boehl*, 822 F.2d 1062 (Fed. Cir. 1987). Notice .......................24

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)...........................9

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .......................... 15, 30

*Eko Brands, LLC v. Adrian Rivera Mayanez Enters., Inc.*, No. 2018-2215, slip op. (Fed. Cir. January 13, 2020) .......................................................14

*Eon-Net L.P. v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011).................30

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003) .....................................................10

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) ..............20

*Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568 (Fed. Cir. 1998) ..................... 10

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................................................. 11

*Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754 (2012) ................................ 9, 15

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004) ......................... 11

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ......................................................... 20

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016) ................. 14, 30

*Highmark, Inc. v. Allcare Health Mgmt Sys., Inc.*, 701 F.3d 1351 (Fed. Cir. 2012) ................................................................................................................. 30

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2017 WL 4038886 (E.D. Tex. Sept. 13, 2017) ................................................ 25

*Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004) ................................................................................................................. 10

*Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667 (D. Del. 2017) ................................................................................................... 25

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001) ................................................................................................................. 11

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ................................................... 20

*Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ......... 9, 10, 11

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012) ................................................................................................................. 23

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996) ................................... 10, 11

*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098 (Fed. Cir. 1996) ........................................ 11, 24

*MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005) .................................. 10

*Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538 (Fed. Cir. 1997) ................................................................................................................... 9

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) .............................................. 23

*Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996) ......................... 10

*Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) ............................. 9

*Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437 (Fed. Cir. 1998) ................................... 24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) ............... 30

*Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999) ............................. 9

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ................................. 8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016) ........................................................................... 9

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) ............................................................................................... 11

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) ................... 10, 11

*Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336 (Fed. Cir. 2011) ............................... 30

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015) .......................... 20

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984) ................................................................................................... 11

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ............................. 20

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ............................ 11

*Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039 (Fed. Cir. 1993) ........................ 9

*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003) .......................... 10

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) ............................................ 15

*WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) .................... 9, 15

**STATUTES**

35 U.S.C.A. § 154(a)(1) ................................................................................................. 30

35 U.S.C.A. § 261 .......................................................................................................... 30

35 U.S.C.A. § 283 .......................................................................................................... 30

35 U.S.C. § 101 ........................................................................................................ 19, 31

35 U.S.C. § 103 .............................................................................................................. 28

35 U.S.C. § 103(a) ......................................................................................................... 20

35 U.S.C. § 112 ................................................................................................. 8, 9, 19, 31

35 U.S.C. § 112(f) ............................................................................................................ 8

35 U.S.C. § 271(a) ........................................................................................................ 7, 8

35 U.S.C. § 271(b) ........................................................................................................ 7, 9

35 U.S.C. § 271(c) .......................................................................................................... 31

35 U.S.C. § 282 .............................................................................................................. 20

35 U.S.C. § 284 ................................................................. 10, 14, 29, 30

35 U.S.C. § 285 ................................................................................. 30

35 U.S.C. § 286 ................................................................. 19, 23, 26, 28, 29

35 U.S.C. § 287 ................................................................. 19, 23, 24, 26, 28, 29, 30

35 U.S.C. § 287(a) ............................................................................ 24

35 U.S.C. § 288 ................................................................. 19, 24, 25, 26, 28, 30

**RULES**

Title 37, Code of Federal Regulations ............................................... 19

United States Code Title 35 .............................................................. 19

Fed. R. Civ. Proc. 12 ...................................................................... 19

Fed. R. Civ. Proc. 12(b)(6) .............................................................. 29

Fed. R. Civ. Proc. 32 ...................................................................... 27

Fed. R. Civ. Proc. 54 ...................................................................... 30

Local Rule 16-4 ............................................................................... 1

## I.   INTRODUCTION

Pursuant to Local Rule 16-4 and the Court's February 5, 2021 Order, Plaintiff Epistar Corporation ("Epistar" or "Plaintiff") hereby submits its Memorandum of Contentions of Fact and Law.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Overview of the Lawsuit

For the purposes of trial, Epistar alleges that Defendant Lowe's Home Centers, LLC ("Defendant" or "LHC") infringes four patents: U.S. Patent Nos. 6,346,771 ("the '771 patent"); 7,560,738 ("the '738 patent"); 8,492,780 ("the '780 patent"); and 8,587,020 ("the '020 patent") (collectively the "Asserted Patents").[1]

This case involves LED technology.  As shown below, an LED filament bulb replicates the "look" of a traditional incandescent bulb by using one or more filaments that contain a number of LED chips on each filament that emit light.  These filaments include a substrate that is used (directly or indirectly) for mounting LED chips.  The LED chips on the substrate are electrically connected to one another and will be used to generate light.   After the chips are mounted, each filament is coated.  This coating is provided to achieve the white light that better replicates the light emitted from an incandescent bulb.  When power is applied to the bulb, the LED chips together emit light in a manner to replicate the look and feel of a traditional incandescent bulb.

---

[1] Epistar also originally brought suit on a fifth patent, U.S. Patent No. 8,791,467.  The Court granted summary judgment of invalidity of the asserted claims of that patent.  Thus, Epistar will not be alleging infringement of this patent at trial, but does reserve all rights to appeal the Court's summary judgment and related orders.



The Asserted Patents are directed to central aspects of LED filament bulbs.  For example, the '738 patent claims an LED array that has a substrate, an adhesive layer on the substrate, and a plurality of electrically connected light-emitting stack layers on the adhesive layer.  '738 pat., cl. 1.  The claimed invention is illustrated in Figure 1.



Fig. 1

'738 patent, at Fig. 1.

Epistar accuses sixty-four LED bulbs ("Accused Products") of infringing the Asserted Patents:

| Yankon Model No. | Lowes Item No. |
| --- | --- |
| YGA16A00-B10C-CL-D4-5W | 700626 |
| YGA16A01-ST19-AM-4W | 700627 |
| YGAA16A08-A15-FP-5W | 700628 |
| YGA16A00-B10C-CL-4W | 739552 |
| YGA16A06-G25CL5W | 755159 |
| YGA16A08-A15C-CL-5W | 777416 |
| YGA16A08-A15C-CL-4W | 777417 |
| YGA16A08-A15-CL-5W | 777418 |
| YGA16A08-A15-CL-4W | 777419 |

| Yankon Model No. | Lowes Item No. |
|---|---|
| YGA16A08-A15C-FR-5W | 777420 |
| YGA16A08-A15C-FR-4W | 777421 |
| YGA16A08-A15-FR-5W | 777422 |
| YGA16A08-A15-FR-4W | 777423 |
| YGA16A00-B10C-LC-4.5W | 777426 |
| YGA16A00-B10C-CL-4W | 777427 |
| YGA16A00-CA10C-CFL-2 | 777428 |
| YGA16A00-B10-CL-5W | 777429 |
| YGA16A00-B10-CL-4W | 777430 |
| YGA16A00-B10C-FR-4W | 777431 |
| YGA16A09-G16.5C-CL-4 | 777434 |
| YGA16A09-G16.5-CL-5W | 777435 |
| YGA16A09-G16.5C-CL-4 | 777436 |
| YGA16A09-G16.5-CL-4W | 777437 |
| YGA16A09-G16.5C-CL-2 | 777438 |
| YGA16A09-G16.5-CL-2 | 777439 |
| YGA16A09-G16.5C-FR-4 | 777440 |
| YGA16A09-G16.5-FR-4W | 777441 |
| YGA16A06-G25-5W | 777442 |
| YGA16A06-G25-CL-4W | 777443 |
| YGA16A06-G25-FR-5W | 777444 |
| YGA16A06-G25-FR-4W | 777445 |
| YGA16A00-CA10-AFL-2 | 777447 |
| YGA16A00-CA10C-AFL-2 | 777448 |
| YGA16A08-A15-AM-2.5W | 777449 |
| YGA16A08-A15C-AM-2.5 | 777450 |
| YGA16A02-A19-AM-4W | 777451 |
| YGA16A01-ST19-AM-4W | 777452 |
| YGA16A10-T9-AM-2.5W | 777454 |
| YGA16A11-T6C-AM-2.5W | 777455 |
| YGA16A02-A19-FR-8W | 777456 |
| YGA16A09-G16.5C-AM-2 | 777457 |
| YGA16A06-G25-AM-4W | 777458 |
| YGA16A04-G30-AM-4W | 777459 |
| YGA16A05-G40-AM-4W | 777460 |
| YGA16A00-CA10C-CFL-4 | 782278 |
| YGA16A00-CA10-CFL-4W | 782279 |
| YGA16A06-G25-SL-5W | 782280 |
| YGA16A01-ST19A4W | 784408 |

| Yankon Model No. | Lowes Item No. |
|------------------|----------------|
| YGA16A09-G16.5-CL-5W | 784765 |
| YGA16A06-G25-SL-5W | 784766 |
| YGA16A00-CA10C-AFL-2 | 784778 |
| YGA16A02-A19-AM-4W | 784781 |
| YGA16A01-ST19-4W | 784782 |
| YGA16A10-T9-AM-2.5W | 784784 |
| YGA16A11-T6C-AM-2.5W | 784785 |
| YGA16A06-G25-AM-4W | 784788 |
| YGA16A00-B10C-CL-5W | 819086 |
| YGA16A00-B10C-CL-4W | 819087 |
| YGA16A00-B10C-CL-5W | 819088 |
| YGA16A00-B10C-CL-4W | 819089 |
| YGA16A00-B10CCL5W | 911368 |
| YGA16A00-B10CCL4W | 911369 |
| YGA16A08-A15CL4W | 911370 |
| YGA16A06-G25FR5W | 911371 |

**B.    The Parties**

**1.    Epistar Corporation**

Epistar is a Taiwanese company founded by "a handful of visionaries [] to usher in the LED era."[2]  Epistar was incorporated on September 19, 1996[3] and is headquartered in Hsinchu Science Park, Taiwan, operating its primary manufacturing facilities out of Taiwan as well.[4]  Epistar's primary business "focuses on developing, manufacturing and marketing high brightness Light Emitting Diode (LED) products,"[5] including LED chips for use in LED bulbs.  Epistar is on the "cutting-edge [of] production and engineering innovation in epitaxy with accumulated expertise and expansive capacity[.] Epistar sits

---

[2] http://www.epistar.com.tw/_english/06_about/01_about.php?AID=1.

[3] Epistar Corporation 2016 Annual Report, p. 3.

[4] http://www.epistar.com.tw/_english/06_about/01_about.php?AID=7.

[5] http://www.epistar.com.tw/_english/06_about/01_about.php?AID=2.

firmly as the premier global supplier."[6]  Epistar's products can be generally categorized as chips, epi wafers, and other.[7]

Epistar invests a substantial amount of money in research and development, "focusing on the development of new products and strengthening the value of existing products."[8]  In 2016 alone, Epistar contributed approximately 1.533 billion NTD ($47,531,432 USD) toward the improvement and development of its products.[9]  In particular Epistar saw the value of LED filament bulbs and focused its research and development efforts on developing foundational technology related to LED filaments which led to it becoming a pioneer in this area.[10]  Epistar has since licensed this technology to its LED chip customers and numerous other companies.

Additionally, Epistar has received numerous awards for its innovations in LED technology.  "Most recently, Epistar received an Outstanding Photonics Product Award at the 13th International Nano Exposition hosted in Taiwan for the design of its Flexible LED Lighting System."[11]

## 2.    Lowe's Home Centers, LLC

Lowe's is a Fortune® 50 company and the world's second largest home improvement retailer, operating over two thousand home improvement and hardware stores across North America, including 1,820 stores in the United States, 299 stores in

---

[6] http://www.epistar.com.tw/_english/01_product/01_overview.php.

[7] Epistar Corporation 2016 Annual Report, p. 67.

[8] Epistar Corporation 2016 Annual Report, p. 2.

[9] Epistar Corporation 2016 Annual Report, p. 2; Conversion based upon the average TWD to USD exchange rate for 2016 (See https://www.x-rates.com/average/?from=TWD&to=USD&amount=1&year=2016).

[10] https://www.ledinside.com/interview/2016/7/epistar_improves_product_structure_and_profitability

_by_specializing_in_niche_led_lighting_applications.

[11] Epistar's Complaint for Patent Infringement, filed April 28, 2017, p. 7.

Canada, and 10 stores in Mexico.

Lowe's customers consist of homeowners, renters, and professional customers, looking to complete various types of projects, including do-it-yourself ("DIY"), construction, maintenance, and repair and operations.  In order to meet the needs of these customers, Lowe's states that it "offer[s] a complete line of products for maintenance, repair, remodeling, and decorating."[12]

Lowe's sells its products in a "broad competitive landscape" and recognizes competitors ranging from international retailers to smaller service providers.[13]

Lowes states that it differentiates itself from competitors "by providing better customer experiences while delivering superior value in products and service."[14]  In an effort to meet its customer's needs, Lowe's is "continuing [] progress towards becoming an omni-channel retail company."[15]  Lowe's offers customers the option of purchasing products in their brick-and-mortar stores or shopping online, and having products shipped, delivered, or prepared for in-store pickup.[16]

### C.   Procedural History

On April 28, 2017, Epistar filed its initial complaint against Lowe's Companies, Inc. ("LCI") and Lowe's Home Centers, LLC ("LHC," "Lowe's," or "Defendant").  D.I. 1 (Compl.).  LHC answered on June 21, 2017, but LCI moved to dismiss for improper venue.  D.I. 23 (LHC Answer), 25 (LCI Motion to Dismiss).  In July 2017, the parties

---

[12] Lowe's Companies, Inc. SEC Form 10-K for the fiscal year ended February 3, 2017, p. 5.

[13] Lowe's Companies, Inc. SEC Form 10-K for the fiscal year ended February 3, 2017, p. 5.

[14] Lowe's Companies, Inc. SEC Form 10-K for the fiscal year ended February 3, 2017, p. 5.

[15] Lowe's Companies, Inc. SEC Form 10-K for the fiscal year ended February 3, 2017, p. 6.

[16] Lowe's Companies, Inc. SEC Form 10-K for the fiscal year ended February 3, 2017, p. 7.

agreed to voluntarily dismiss the action against LCI.  D.I. 27 (Joint Stipulation).

The Court held a Claim Construction hearing on March 8, 2018.  D.I. 107 (March 8, 2018 Minute Order). On July 10, 2018, the Court issued its Order regarding claim construction.  D.I. 140 (Order re Claim Construction).

Following the Claim Construction hearing, the parties engaged in discovery, including fact and expert discovery, until the close of all discovery in July 2018.  D.I. 67 (Amended Scheduling Conference).  On August 22, 2018, both parties filed motions for summary judgment. D.I. 164 (Defendant's MSJ), 168 (Plaintiff's MSJ).  After conducting a hearing on October 15, 2018 and reviewing supplemental briefs on certain issues raised by the motions, the Court granted Plaintiff's Motion for Summary Judgment of Infringement as to claims 1-3, and 8 of the '738 patent, and granted Defendant's Motion for Summary Judgment of Invalidity as to claims 1, 2, and 7 of the '467 patent and claims 13-17, and 24 of the '738 patent.  D.I. 259 (Order re Motions).

On October 20, 2020, the Court issued an Order on LHC's *Daubert* motion to exclude testimony from Epistar's experts Fitzgerald and Van Uden.  The Court denied LHC's motion with respect to Fitzgerald's opinion regarding representative products and morphology.  D.I. 303 at 3-9.  The Court granted LHC's motion to exclude Van Uden's income approach analysis and denied LHC's motion in all other respects.

## III.  THE PARTIES' CLAIMS AND DEFENSES (L.R. 16-4.1)

### A.  Summary of Epistar's Claims (L.R. 16-4.1(a))

Epistar alleges that LHC willfully infringes, under 35 U.S.C. § 271(a)-(b), U.S. Patent Nos. 6,346,771 ("the '771 Patent") (Count 1); 7,560,738 ("the '738 Patent") (Count 2); 8,492,780 ("the '780 Patent") (Count 4); and 8,587,020 ("the '020 Patent") (Count 5).  Epistar alleges that LHC literally infringes the Asserted Patents.

For the purposes of this trial, Epistar alleges that LHC willfully infringes the following claims of each patent:

- '771 Patent: Claims 36 and 38;

- '738 Patent: Claims 1-3 and 8;
- '780 Patent: 1, 3, and 7; and
- '020 Patent: 9, 10 and 15

(collectively, the "Asserted Claims").[17]   The Court has granted summary judgment that the accused products infringe Claims 1-3 and 8 of the '738 Patent.  With respect to the '738 Patent, Epistar's remaining claims are (1) whether LHC's infringement was willful, and (2) the remedy for LHC's infringement.  Epistar seeks reasonably royalty damages and, where appropriate, injunctive relief.

## B.   Elements Required to Establish Epistar's Claims (L.R. 16-4.1(b))[18]

### 1.   Direct Infringement by Literal Infringement

To prove direct and literal infringement of a patent claim under 35 U.S.C. § 271(a), Epistar must prove that it is more likely than not that LHC made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of that patent claim, and did so without permission of Epistar during the time the claim's respective patent was in force.  *See* Federal Circuit Bar Model Jury Instruction 3.1a (and cited references); 35 U.S.C. § 112(f); Pre-AIA 35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240- 41 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1315-17 (Fed. Cir. 2005); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-3(Fed. Cir. 2006); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003) (holding that the structure in an accused device meets a § 112, ¶ 6, limitation if the structure performs the identical function recited in the claim and is identical or equivalent to the structure in

---

[17] Epistar has reduced the number of Asserted Claims for the purpose of streamlining the issues for trial.  Such reduction of the Asserted Claim is not, and should not be construed to be, a waiver or admission regarding any of the parties' claims or defenses regarding those claims.

[18] Epistar reserves the right to refer at trial the Court's various constructions for terms in the Asserted Claims.

the specification corresponding to that limitation); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (holding that an equivalent structure or act under § 112 cannot embrace technology developed after the patent issued because the literal meaning of a claim is fixed upon issuance); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-11 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

### 2. Indirect Infringement by Inducement

LHC is liable for active inducement of a patent claim if Epistar proves by a preponderance of the evidence:

- That the acts actually carried out by LHC's customers directly infringe that claim;

- That LHC took action during the time the patent claims were in force that was intended to cause and led to the infringing acts by LHC's customers; and

- That LHC was aware of the patent claimss and knew that the acts, if taken, would constitute infringement of that patent or that LHC believed there was a high probability that the acts by its customers would infringe a patent Epistar and LHC took deliberate steps to avoid learning of that infringement.

*See* Federal Circuit Bar Model Jury Instruction 3.2; 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632 (2015); *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 765-70 (2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)

("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

### 3.    Reasonable Royalty Damages

In this action, Epistar seeks to recover reasonable royalty damages for LHC's infringement.  If Epistar proves that an Asserted Claim is infringed and not invalid, Epistar is entitled to at least a reasonable royalty to compensate it for that infringement.[19] *See* Federal Circuit Bar Association Model Patent Jury Instruction 5.5; 35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc*., 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co*., 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical

---

[19] The Court has already determined that Claims 1-3 and 8 of the '738 Patent are infringed.

negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, the jury should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.   In determining this, the jury must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.   The reasonable royalty the jury determines must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.   *See* Federal Circuit Bar Association Model Patent Jury Instruction 5.6; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight*, *Inc. v. Wal-Mart Stores*, *Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker*, *Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard*, *Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

In determining the reasonable royalty, the jury you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that the jury may consider in making its determination are (but are not limited

to):

(1) The value that the claimed invention contributes to the accused product.

(2) The value that factors other than the claimed invention contribute to the accused product.

(3) Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and the jury can and should consider the evidence that has been presented to it in this case on each of these factors. The jury may also consider any other factors which in its mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

The so-called "*Georgia-Pacific*" factors, which can be considered in appropriate cases to inform the hypothetical negotiations, include the following:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products

of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license. *See* Federal Circuit Bar Association Model Patent Jury Instruction 5.8 and

authorities cited therein.

### 4.   Willful Infringement

To prove willful infringement of a patent claim, Epistar must prove that it is more likely than not that LHC knew of Epistar's patent and that the infringement by LHC was intentional.  In other words, Epistar must prove that LHC deliberately infringed the patent claim, such as by intentionally ignoring or recklessly disregarded that patent claim.

Willful infringement may be proven by all facts to assess LHC's knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited, to:

(1) Whether or not LHC acted consistently with the standards of behavior for its industry;

(2) Whether or not LHC intentionally copied a product of Epistar that is covered by the respective patent;

(3) Whether or not LHC reasonably believed it did not infringe or that the patent was invalid;

(4) Whether or not LHC made a good-faith effort to avoid infringing the respective patent, for example, whether LHC attempted to design around the patent; and

(5) Whether or not LHC tried to cover up its infringement.

*See* N.D. Cal. Model Patent Jury Instruction 3.8; Federal Circuit Bar Model Jury Instruction 3.10; 35 U.S.C. § 284; *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016) (preponderance of the evidence standard for finding willfulness); *Eko Brands, LLC v. Adrian Rivera Mayanez Enters., Inc.*, No. 2018-2215, slip op. at 16 (Fed. Cir. January 13, 2020) ("Under *Halo*, the concept of willfulness requires a jury to find no more than deliberate or intentional infringement."); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) ("*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the

accused infringer,'—can support an award of enhanced damages." (quoting *Halo*, 136 S. Ct. at 1930)); *WBIP, LLC v. Kohler Co.,* 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness and explaining, in the context of willful infringement, that "the patent law encourages competitors to design or invent around existing patents"); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (willful blindness is "just as culpable as … actual knowledge").

### 5. Injunctive Relief

Epistar reserves the right to seek a permanent injunction with the Court through post-trial briefing as appropriate. In evaluating the need and scope of injunctive relief, the Court must balance whether (1) Epistar will suffer irreparable injury absent injunctive relief; (2) remedies available at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted, considering the balance of hardships; and (4) the public interest would not be disserviced by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### C. Brief Description of the Key Evidence in Support of Epistar's Claims (L.R. 16-4.1(c))

### 1. Direct Infringement by Literal Infringement

Epistar expects to introduce evidence at trial, including documents and testimony, showing (1) LHC's sale and use (testing) of the Accused Products; and (2) how the design and operation of those accused LED light bulbs include each and every element of the asserted claims of the accused products. This evidence will include the reverse engineering of the Accused Products conducted by Dr. Fitzgerald. Evidence will also come from the testimony of Dr. Fitzgerald himself, from cross-examination of LHC's experts Dr. Ferguson and Dr. Goldhaber-Gordon, and other witnesses.

Epistar also expects to introduce documents and testimony related to the damages

it is owed due to LHC's infringement.  Categories of such key evidence includes financial and commercial documents for the parties, and the expert opinion testimony of Bryan Van Uden.

Epistar expects to introduce at trial documents relating to the '738, '771, '780, and '020 patents; documents relating to the design, development, manufacture, operation, sale and marketing of the accused products; test results from the testing of the accused products; the reverse engineering of the accused products; communications between Epistar and LHC; communications between LHC and third parties; and the testimony of Chen Ou, Luke Lu, Meng-chun Kuo, Christopher Brown, Mark Beck, Dr. Eugene Fitzgerald, and Bryan Van Uden.  Additionally, LHC may rely on at least any of the parties' responses to discovery requests in this action, facts stipulated to by the parties, exhibits listed on the Joint Exhibit List, testimony contained in deposition designations, and the testimony of any expert or fact witnesses presented at trial.

## 2.    Indirect Infringement by Inducement

Epistar expects to introduce evidence at trial, including documents and testimony, showing (1) that Epistar's customers' use of the Accused Products constitutes acts of direct infringement (*see* § III.C.1, *supra*); (2) that LHC instructs customers regarding the intended use of the Accused Products in a way that induces infringement; and (3) that LHC was aware of Epistar's patents and believed that there was a high probability that its customers' use of the Accused Products would infringe one or more of the Asserted Patents (or that, at least, that LHC took deliberate steps to avoid learning of the infringement).

Epistar also expects to introduce documents and testimony related to the damages it is owed due to LHC's infringement.  Categories of such key evidence includes financial and commercial documents for the parties, and the expert opinion testimony of Bryan Van Uden.

Epistar expects to introduce documents relating to the '771, '780, and '020 patents;

documents relating to the design, development, manufacture, operation, sale and marketing of the accused products; test results from the testing of the accused products; the reverse engineering of the accused products; communications between Epistar and LHC; communications between LHC and third parties; and the testimony of Chen Ou, Luke Lu, Meng-chun Kuo, Christopher Brown, Mark Beck, Dr. Eugene Fitzgerald, and Bryan Van Uden.

Epistar will also play the deposition testimony of LHC's corporate witnesses, including that of Mark Beck and Christopher Brown.  The evidence will further show that: (1) LHC encourages or instructs the use of the Accused Products at least through their product packaging; (2) the acts which LHC encourages constitute direct infringement; (3) LHC knew of one or more Asserted Patents and either knew that its encouragement and instruction would result in the infringement of the '780 patent, should have known the same, and/or took deliberate steps to avoid learning of the infringement; (4) LHC intended to cause the encouraged acts; and (5) another person actually used the Accused Products as instructed by LHC, thereby infringing the '780 patent.

Additionally, LHC may rely on at least any of the parties' responses to discovery requests in this action, facts stipulated to by the parties, exhibits listed on the Joint Exhibit List, testimony contained in deposition designations, and the testimony of any expert or fact witnesses presented at trial.

### 3.    Reasonable Royalty Damages

To prove its entitlement to reasonable royalty damages, Epistar will present the damages evidence discussed in its sections on infringement, above.  In this case, Epistar will present evidence that it has suffered damages as a result of LHC's infringement of the '771, '738, '780, and '020 patents.  In particular, LHC's infringement has caused Epistar reasonable royalty damages, plus pre- and post-judgment interest, of an amount no smaller than $3,397,830 million.

### 4.   Willful Infringement

Epistar intends to offer evidence at trial showing that LHC had no reasonable belief that it did not infringe or that the Asserted Patents were invalid.  Epistar also intends to offer evidence showing that LHC did not make a good-faith effort to investigate or avoid infringing the Asserted Patents, but instead acted with reckless disregard and deliberate indifference with respect to Epistar's patent rights.  For example, Epistar intends to present evidence showing that, at a minimum, LHC willfully and recklessly blinded itself to its own ongoing infringement. Epistar will also present the evidence discussed in its sections on infringement, above.

Epistar expects to introduce documents showing LHC's knowledge of the '771, '738, '780, and '020 patents; documents showing LHC's continued practice of the '771, '738, '780, and '020 patents despite knowledge of its infringement; documents showing LHC's intentional ignorance or reckless disregard of the '771, '738, '780, and '020 patents; communications between Epistar and LHC; communications between LHC and third parties (including Zhejiang Yankon Group Co., Ltd); and the testimony of Meng-chun Kuo, Christopher Brown, Mark Beck, Dr. Eugene Fitzgerald, and Bryan Van Uden.

Additionally, LHC may rely on at least any of the parties' responses to discovery requests in this action, facts stipulated to by the parties, exhibits listed on the Joint Exhibit List, testimony contained in deposition designations, and the testimony of any expert or fact witnesses presented at trial.

### 5.   Injunctive Relief

Epistar reserves its right to raise injunctive relief in post-trial briefing as appropriate.

### D.   Summary of LHC's Defenses and Counterclaims (L.R. 16-4.1(d))

LHC has pled and indicated it intends to proceed with the following Affirmative

Defenses:[20]

- **First Affirmative Defense**: The Amended Complaint, on one or more claims for relief set forth therein, fails to state a claim upon which relief can be granted.

- **Second Affirmative Defense**: LHC has not infringed and currently does not infringe, directly or indirectly, contributorily, by inducement, literally or in any other manner, any valid and enforceable claim of the Patents-in-Suit.

- **Third Affirmative Defense**: One or more claims of the Patents-in-Suit are invalid for failure to meet the requirements of one or more section of Title 35, United States Code, including at least Sections 102, 103, and/or 112, and/or one or more sections of Title 37, Code of Federal Regulations.[21]

- **Fourth Affirmative Defense**: Any damages, at least in part, are limited by 35 U.S.C. §§ 286 and 287.

- **Fifth Affirmative Defense**: Epistar is barred under 35 U.S.C. § 288 from recovering costs in connection with this action.

LHC has not pled any counterclaims in this action.

### E.    Elements Required to Establish LHC's Affirmative Defenses (L.R. 16-4.1(e))

#### 1.    First Affirmative Defense: Failure to State a Claim

To prevail on this affirmative defense, LHC must establish that the Complaint fails to state a claim upon which relief can be granted against it, as provided by Fed. R. Civ.

---

[20] Epistar understands that LHC has abandoned its Seventh Affirmative Defense (waiver, estoppel, release, acquiescence, and/or unclean hands).  If LHC raises these defenses in its Memorandum of Contentions of Law and Fact, Epistar reserves the right to amend this Memorandum to response to such defenses.

[21] Epistar understands that LHC has abandoned its affirmative defense of invalidity under 35 U.S.C. §§ 101 and 112.  If LHC raises these defenses in its Memorandum of Contentions of Law and Fact, Epistar reserves the right to amend this Memorandum to response to such defenses.

Proc. 12.

### 2.    Second Affirmative Defense: Non-infringement

This defense is an inverse of Epistar's infringement claims.  Thus, LHC may prevail on this affirmative defense if LHC fails to prove infringement by a preponderance of the evidence.  The relevant elements of infringement are discussed above.

### 3.    Third Affirmative Defense: Invalidity

LHC bears the burden of proof on patent invalidity by clear and convincing evidence. 35 U.S.C. § 282; *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997).

### a.    Anticipation (35 U.S.C. § 102)

LHC must prove that each and every claim element is disclosed in a single prior art reference, arranged as claimed. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334-35 (Fed. Cir. 2008).

### b.    Obviousness (35 U.S.C. § 103)

LHC must prove that the differences between the claimed subject matter and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art ['POSA'] to which said subject matter pertains." 35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting 35 U.S.C. § 103(a)). If LHC relies on multiple references, LHC must also prove that a POSA at the time of invention would have been motivated to combine the elements in the way that the claimed invention does.  *KSR*, 550 U.S. at 418-19. Secondary considerations can weigh in favor of non-obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *KSR*, 550 U.S. at 406 (citing *Graham*, 383 U.S. at 17-18).

In determining whether a claimed invention is obvious, the jury must consider the level of ordinary skill in the field of the invention that someone would have had at the

time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

The jury must keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, the jury may but is not required to find obviousness if it finds that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, the jury must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, the jury considers each claim separately. It does not use hindsight, i.e., considers only what was known at the time of the invention.

In making these assessments, the jury should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

- Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);
- Whether the invention satisfied a long-felt need;
- Whether others had tried and failed to make the invention;
- Whether others invented the invention at roughly the same time;
- Whether others copied the invention;
- Whether there were changes or related technologies or market needs contemporaneous with the invention;
- Whether the invention achieved unexpected results;
- Whether others in the field praised the invention;
- Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;
- Whether others sought or obtained rights to the patent from the patent holder; and
- Whether the inventor proceeded contrary to accepted wisdom in the field.

*See* Federal Circuit Bar Association Model Patent Jury Instructions §§ B.4.3 4.3c (and sources cited therein).

### c.    Lack of Written Description (35 U.S.C. § 112)

LHC's proposed verdict form includes no section for lack of written description. Epistar therefore understands that LHC has abandoned this issue.  If, however, LHC attempts to raise this defense at trial, then LHC must prove that the specification does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*).

### d.    Lack of Enablement (35 U.S.C. § 112)

LHC's proposed verdict form includes no section for lack of enablement.  Epistar

therefore understands that LHC has abandoned this issue.  If, however, LHC attempts to raise this defense at trial, then LHC must prove that the specification fails to "enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use" the claimed invention without undue experimentation. *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).  The enablement determination is performed as of the effective filing date of the patent.  *Magsil*, 687 F.3d at 1380.

### 4. Fourth Affirmative Defense: Limitation on Damages (35 U.S.C. §§ 286-287)

#### a. 35 U.S.C. § 286

35 U.S.C. § 286 limits the recovery on damages: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."

#### b. 35 U.S.C. § 287

If a product has been sold or licensed, by Epistar or a third party, that includes the claimed invention, the jury must determine whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents. If LHC challenges Epistar's compliance with 35 U.S.C. § 287, LHC "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).  Thereafter, Epistar has the burden of establishing that it substantially complied with the marking requirement. This means Epistar must show that substantially all of the products made, offered for sale, or sold under the Asserted Patents have been marked.

If Epistar, its licensees, or any prior owner of the patent has not marked practicing products with the patent number, or if any licensees were not required to mark practicing products, the jury must determine the date that LHC received actual notice of the Asserted Patents and of the specific product alleged to infringe.  Actual notice means that Epistar communicated to LHC a specific charge of infringement of the Asserted Patents by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.

*See* Federal Circuit Bar Model Jury Instruction 5.10 (and cited references); 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987). Notice through marking is constructive notice. *See Maxwell*, 86 F.3d at 1111-12 (holding that when 95% of patented product offered for sale was marked by licensee retailer with "patent pending," even after the patent had been granted and remaining 5% of product remained unmarked, constructive notice had been made under 35 U.S.C. § 287(a) where patentee demonstrated efforts to correct licensee's mistakes).

### 5.     Fifth Affirmative Defense: Limitation on Costs

35 U.S.C. § 288 states: "Whenever a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent and Trademark Office before the commencement of the suit."  This statute only applies if a patentee files a lawsuit on patent claims that may be valid, but where other claims of the patent were found invalid before the lawsuit was filed and were not disclaimed prior to filing. *See Bradford Co. v. Jefferson Smurfit Corp.*, No. 20001511, 2001 WL 35738792, at *7 (Fed. Cir. Oct. 31, 2001) (stating the language of § 288

"requires that a disclaimer of the invalid claim be entered at the Patent Office 'before the commencement of the suit,'" thus, "there must have been a prior determination of invalidity before the patent-infringement suit for which costs are now sought"); *see also Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667 (D. Del. 2017) ("Section 288 only requires a disclaimer before the commencement of suit. This Court and the Federal Circuit have repeatedly found this to mean that a claim must first be found invalid before a patentee is required to disclaim under § 288.") (citing *Bradford*, 2001 WL 35738792, at *1, 7); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2017 WL 4038886, at *2 (E.D. Tex. Sept. 13, 2017) ("The Federal Circuit has stated that § 288 does not apply when claims in a patent are declared invalid during the pendency of the lawsuit.") (citing *Bradford*, 2001 WL 35738792, at 7).

## F.   Brief Description of the Key Evidence Relied on in Opposition to LHC's Affirmative Defenses (L.R. 16-4.1(f))

### 1.   First Affirmative Defense: Failure to State a Claim

In opposing LHC's First Affirmative Defense, Epistar intends to rely on all the evidence discussed above, as well as the pleadings in this action.

### 2.   Second Affirmative Defense: Non-infringement

In opposing this defense, Epistar intends to rely on all the evidence discussed above.

### 3.   Third Affirmative Defense: Invalidity

Epistar will rely on the following categories of key evidence to refute LHC's Second Affirmative Defense:

- The Asserted Patents and their respective file histories;
- Prior art references and other evidence raised by LHC in its case-in-chief;
- The expert testimony of Dr. Eugene Fitzgerald and Mr. Bryan Van Uden;
- Cross-examination of LHC's technical and financial experts and other witnesses;
- Technical analysis and testing of the Accused Products;

- Epistar's and LHC's technical and financial documents produced in this case and appearing on the Joint Exhibit List; and

- Testimony of LHC witnesses including LHC's expert witnesses.

Additionally, LHC may rely on at least any of the parties' responses to discovery requests in this action, facts stipulated to by the parties, exhibits listed on the Joint Exhibit List, testimony contained in deposition designations, and the testimony of any expert or fact witnesses presented at trial.

### 4.   Fourth Affirmative Defense: Limitation on Damages

Epistar contends that this affirmative defense is moot and/or waived, as both parties' experts acknowledge that the date for any alleged damages begins June 2016, which is less than a year before Epistar filed this case in April 2017.  The limitations of 35 U.S.C. § 286 is therefore inapplicable as a matter of law because Epistar does not seek damages more than six year before the filing of the Complaint in this action.

Further, given the parties' apparent agreement as to beginning date of any alleged damages in this case, Epistar contends that LHC's Fourth Affirmative Defense with respect to 35 U.S.C. § 287 is also moot.  In any event, at trial Epistar intends to present evidence through the testimony of its witnesses and/or documents produced in this case Epistar has marked all relevant products at all relevant times during the alleged damages period and/or that it provided actual notice to LHC of the Accused Products' infringement of the Asserted Patents at least by the beginning of the alleged damages period in this case.

### 5.   Fifth Affirmative Defense: Limitation on Costs

Epistar contends that this affirmative defense is moot, as no claims of any Asserted Patent were declared invalid prior to commencement of this suit.  35 U.S.C. § 288, therefore, does not apply as a matter of law.  Even if the Court were to determine that 35 U.S.C. § 288 could apply to patent claims proven invalid during the course of the suit, Epistar intends to show that none of the Asserted Claims are invalid by relying on the

evidence described and identified above.

## G. Anticipated Evidentiary Issues (L.R. 16-4.1(h))

The parties will file motions *in limine* on June 11, 2021, the day after filing this Memorandum. Epistar incorporates by reference those motions and the positions/arguments taken therein. Epistar's motions *in limine* include:

1. Motion to exclude evidence and argument pertaining to issues resolved by the Court's Summary Judgment Motion; and

2. Motion to exclude evidence and argument regarding invalidity theories that LHC has abandoned or failed to preserve.

The parties also maintain certain objections to exhibits located on the Joint Exhibit List and described in more detail in the parties' Notice of Disputed Exhibits ("Notice") which the parties will also be filing on June 11. As of the filing of this Memorandum, the parties continue to meet and confer to resolve any evidentiary objections on the Joint Exhibit List. Accordingly, Epistar incorporates the Notice and the parties' respective positions therein by reference. As of the present time, Epistar is aware of the following categories of disputes with respect to exhibits that LHC intends to introduce at trial:

- Epistar objects to irrelevant and hearsay litigation documents such as the parties' infringement/invalidity contentions, claim construction briefing and technology tutorial, and LHC's use of its own interrogatory responses.

- Epistar objects to the parties' expert's reports being introduced as evidence.

- Epistar objects to foreign language documents, unsworn translations thereof, and unauthenticated alleged prior art publications for lack of foundation and hearsay.

- Epistar objects to LHC's use of LHC's own witnesses' deposition transcripts as violating Fed. R. Civ. Proc. 32.

- Epistar objects to irrelevant pleadings from other litigations, such as complaints Epistar has filed in other cases.

- Epistar objects as prior art references included in LHC's invalidity contentions but not cited or relied on by LHC's experts as abandoned theories and irrelevant.

### H.    Issues of Law (L.R. 16-4.1(i))

#### 1.    Interpretation of 35 U.S.C. § 288

The parties dispute the proper interpretation of 35 U.S.C. § 288.  As discussed above, Epistar's position is that this statute is inapplicable to this case because no claims of any Asserted Patent were found to be invalid prior to the filing of the Complaint in this case.

#### 2.    Whether Invalidity Under 35 U.S.C. § 103 Should be Presented to the Jury

The parties also dispute whether the jury should be presented with the ultimate question of invalidity under 35 U.S.C. § 103 (obviousness).  Epistar's position is that even if portions of invalidity under 35 U.S.C. § 103 may ultimately be decided by the Court, that decision may be aided by an advisory opinion from the jury, who will be asked to decide any underlying predicate factual issues anyway.

#### 3.    Limitation on Damages Under 35 U.S.C. §§ 286 and 287

The parties also appear to dispute whether LHC's Fourth Affirmative Defense (limitation of damages under 35 U.S.C. §§ 286 and 287) is moot.  As discussed above, 35 U.S.C. § 286 only bars recovery of damages for infringement committed more than six years prior to the filing of the complaint.  Here, Epistar only seeks damages beginning ***less than one year*** prior to the filing of the complaint.  35 U.S.C. § 286 is therefore inapplicable.  Likewise, both parties' experts appear to agree that the beginning of any damages period is June 2016.  Thus, there is no dispute regarding any damages limitations under 35 U.S.C. § 287.

#### 4.    Whether Willful Infringement Should Be Presented to the Jury

Epistar also understand that LHC may argue that the issue of willful infringement should be presented to the Court, and not the jury.  Epistar disagrees with that position

and believes willfulness is properly a question presented to the jury.  *See* Federal Circuit Bar Association Model Patent Jury Instruction 3.10 ("Willfullness requires ***you to determine*** whether [patent holder] proved that it is more likely than not that [alleged infringer] knew of [patent holder]'s patent and that the infringement by [alleged infringer] was intentional."); Northern District of California Model Patent Jury Instructions ("to prove willful infringement of a claim, the [patent holder] ***must persuade you***…") (emphasis added).

## IV.    BIFURCATION OF ISSUES (L.R. 16-4.3)

Epistar is aware of no issues at the present time requiring bifurcation.  However, as noted below Epistar believes several issues should be tried and/or decided by the Court.

## V.    JURY TRIAL (L.R. 16-4.3)

Epistar made a timely demand for a jury trial.  *See* D.I. 1 ("**JURY TRIAL DEMANDED**").

### A.    Issues Triable to the Jury

The following issues are triable to the jury:

- Epistar's infringement claims.  *See* Federal Circuit Bar Association Model Patent Jury Instructions.
- Willfulness pursuant to 35 U.S.C. § 284.  *See id.*
- Amount of damages for patent infringement.  *See id.*
- LHC's affirmative defenses for non-infringement and invalidity.  *See id.*
- LHC's affirmative defense for limitation on damages under 35 U.S.C. §§ 286 and 287.

### B.    Issues Triable to the Court

The following issues are triable to the Court:

- LHC's First Affirmative Defense regarding whether Epistar failed to state a claim upon which relief can be granted.  *See* Fed. R. Civ. Proc. 12(b)(6).
- Enhanced damages as a result of willful infringement.  *See* 35 U.S.C. § 284

("the court may increase the damages up to three times the amount found or assessed"); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016) ("Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement.").

- Attorneys' Fees.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

- Limitation on damages pursuant to 35 U.S.C. § 288.  *See* Fed. R. Civ. Proc. 54 (providing for clerk to tax costs)

- Whether Epistar has met its burden under 35 U.S.C. § 287.

- Whether Epistar is entitled to a permanent injunction.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006); 35 U.S.C.A. §§ 154(a)(1), 261, 283

## VI.    ATTORNEYS' FEES (L.R. 16-4.5)

Attorney's Fees and costs are awardable under 35 U.S.C. § 285 based on willful infringement of the Epistar's patents as discussed above.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The determination of whether a case is "exceptional" under 35 U.S.C. § 285, is an issue of fact. *Highmark, Inc. v. Allcare Health Mgmt Sys., Inc.*, 701 F.3d 1351, 1364 (Fed. Cir. 2012). The determination of whether a party is eligible for an award of attorney's fees is a two-step process.  First, the court must determine whether the case is exceptional by clear and convincing evidence, and then determine whether an award of attorney's fees is appropriate, and the amount of the award. *Eon-Net L.P. v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011).

Epistar seeks reasonable attorneys' fees based on LHC's willful infringement. "Although an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011).

## VII.   ABANDONMENT OF ISSUES (L.R. 16-4.6)

### A.   Issues Abandoned by Epistar

For the purposes of streamlining the issues for trial, Epistar has abandoned its infringement claims for the following patent claims:

- '771 Patent: Claims 32 and 33;
- '780 Patent: Claims 2, 4-6; and
- '020 Patent: Claims 1, 2, 8, 11-13, and 16.

Epistar has not abandoned its claim for injunctive relief but reserves the right to raise this issue in post-trial briefing as appropriate.

Finally, for the purposes of streamlining the issues for trial, Epistar has elected not to assert at trial indirect infringement of any Asserted Claim under 35 U.S.C. § 271(c).

### B.   Issues Abandoned by LHC

Epistar understands that LHC has abandoned its parts of its Second Affirmative Defense of Invalidity under 35 U.S.C. § 101 (ineligible subject matter) and § 112 (indefiniteness/lack of enablement/lack of written description).   Epistar further understands that LHC has abandoned its Seventh Affirmative Defense (waiver, estoppel, release, acquiescence, and/or unclean hands).   Epistar reserves the right to raise these issues if LHC in fact has not abandoned these defenses.   Finally, the parties reached agreement whereby LHC would offer no more than two invalidity theories per patent claim.

Dated: June 10, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/   James C. Yoon

James C. Yoon
Ryan R. Smith
Albert Shih
**WILSON SONSINI GOODRICH & ROSATI**

Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:  (650) 493-9300
jyoon@wsgr.com
rsmith@wsgr.com
ashih@wsgr.com

*Attorneys for Plaintiff Epistar Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record, who have deemed to have consented to electronic service are being served this date with a copy of the foregoing document.  Any other counsel of record will be served by electronic mail, facsimile and/or first-class mail on this same date.

Dated: June 10, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ James C. Yoon*
      James C. Yoon

*Attorneys for Plaintiff Epistar Corporation*