FILED
CLERK, U.S. DISTRICT COURT
12/06/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____TJ_____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPISTAR CORPORATION, | Case No. 2:17-cv-03219-JAK-KS |
| Plaintiff, | **FINAL JURY INSTRUCTIONS** [CORRECTED – AS GIVEN] |
| v. | |
| LOWE'S HOME CENTERS, LLC, | |
| Defendant. | |

**24. SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Epistar seeks money damages from Lowe's for allegedly infringing the '738, '780, and '771 Patents by selling and offering for sale LED filament light bulbs that Epistar argues are covered by: (1) Claims 1-3 and 8 of the '738 Patent; (2) Claims 1, 3, and 7 of the '780 Patent; and (3) Claims 36 and 38 of the '771 Patent. These are the asserted claims of the patents. The products that are alleged to infringe are included in your juror notebooks.

Lowe's infringement of Claims 1-3 and 8 of the '738 Patent has already been resolved. Lowe's currently denies that it has infringed the asserted claims of the '780 and '771 Patents and argues that, in addition, the asserted claims of the '738, '780, and '771 Patents are invalid.

Your job is to decide whether the asserted claims of the '780 and '771 patent have been infringed and whether any of the asserted claims of the '738, '780, and '771 Patents are invalid. You will then need to decide any money damages to be awarded to Epistar to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.

**25.   INTERPRETATION OF CLAIMS**

Before you decide whether Lowe's has infringed the claims of the patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. These constructions are included in your juror notebooks. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

As you will see, I have not provided a claim construction for every word or phrase in the claims. For the claim terms that I have not provided a construction, you are to apply what are known as the ordinary meanings of those terms and phrases, including as they are used in the field of the patents. Many of the terms are simple English language words and phrases that you yourselves may use and understand without assistance. You have also heard testimony from the parties' expert witnesses on the ordinary meanings of some of those terms. You may accept or reject that testimony as you see fit.

**26. INFRINGEMENT**

I will now instruct you on the rules you must follow in deciding whether Epistar has proven that Lowe's has infringed one or more of the asserted claims of the asserted patent.

As I previously informed you, it has already been resolved that Lowe's infringes Claims 1-3 and 8 of the '738 Patent. However, you must still decide whether Epistar has proven that Lowe's has infringed one or more of the asserted claims of the '771 and '780 Patents.

To prove infringement of any claim, Epistar must persuade you that it is more likely than not that Lowe's has infringed that claim.

## 27.  DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Lowe's has sold a product covered by the asserted claims of the asserted patent. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether the product infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not Lowe's knew its products infringed or even knew of the patent does not matter in determining direct infringement. The following instruction will provide more detail on direct infringement.

**28. LITERAL INFRINGEMENT**

To decide whether an accused product sold by Lowe's infringes an asserted claim, you must compare that product with the claim and determine whether every requirement of the claim is included in that product. If so, Lowe's product literally infringes that claim. If, however, Lowe's product does not have every requirement in the patent claim, Lowe's product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Lowe's product. The fact that Lowe's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

## 29. WILLFUL INFRINGEMENT

In this case, Epistar argues that Lowe's willfully infringed Epistar's '738, '771, and '780 patents.

To prove willful infringement, Epistar first must persuade you that Lowe's infringed a valid claim of Epistar's patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Epistar must persuade you that it is more likely true than not true that Lowe's intentionally ignored or recklessly disregarded that claim. You must base your decision on Lowe's knowledge and actions at the time of infringement. Evidence that Lowe's had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Lowe's engaged in additional conduct evidencing deliberate or reckless disregard of Epistar's patent rights.

In deciding whether Lowe's willfully infringed, you should consider all of the facts surrounding the infringement including: whether Lowe's intentionally copied Epistar's patented technology in developing the accused product; whether Lowe's knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Lowe's had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid.

**30.   INVALIDITY—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Lowe's has proven that the asserted claims of the '738, '771, and '780 patents are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Lowe's must persuade you that it is highly probable that the claim is invalid.

During this case, Lowe's has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the asserted patent. Lowe's contends that such prior art invalidates certain claims of the asserted patents. In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the asserted patents. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Lowe's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

## 31. ANTICIPATION

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the asserted patents looking at that one reference would be able to make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

Lowe's can show that a claim of the '771 Patent was not new if the claimed invention was already patented or described in a printed publication anywhere in the world before November 19, 1998.

## 32. OBVIOUSNESS

Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was made. The court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

Epistar contends that a person of ordinary skill in the art at the relevant time had a minimum of an accredited bachelor's degree in material science and engineering, electrical engineering or related fields and at least two years of experience in design, research, or manufacturing in the LED, or equivalent knowledge.

For the purposes of the '780 patent, Lowe's contends that a person of ordinary skill in the art at the relevant time had at least a master's degree or equivalent in material science, electrical engineering or applied physics, or an equivalent field of study, and at least 2-3 years of experience with light emitting diode design, or a bachelor's degree in a comparable or related field and at least 5-7 several years of experience in light emitting diode design.

For the purposes of the '738 patent, Lowe's contents that the person of ordinary skill in the art at the relevant time had at least a Bachelor's Degree in materials science or electrical engineering and at least two years of experience related to the design of solid-state light emitting devices. A higher level of education, such as a master's degree could substitute for work experience and additional work experience could substitute for a degree.

Second, you must decide the scope and content of the prior art. Epistar and Lowe's disagree as to whether Lowe's prior art references should be included in the prior art you use to decide the validity of the asserted claims of the '738 and '780 patents. In order to be considered as prior art to these patents, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you must determine which, if any, of the following factors have been established by the evidence:

(1) commercial success of a product due to the merits of the claimed invention;

(2) a long felt need for the solution provided by the claimed invention; and

(3) acceptance by others of the claimed invention as shown from the licensing of the claimed invention.

### 33. DAMAGES – BURDEN OF PROOF

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. As I previously explained, the issue of infringement of the '738 patent has been resolved and you will be deciding whether the '771 and '780 patents have been infringed. You will also be deciding whether the '771 patent is valid, but I will resolve the validity of the '738 and '780 patents. You will be asked questions regarding potential damages as to each patent at issue.

The amount of those damages must be adequate to compensate Epistar for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Epistar has the burden to persuade you of the amount of its damages. You should award only those damages that Epistar more likely than not suffered. While Epistar is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Epistar is not entitled to damages that are remote or speculative.

## 34.   REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused product.

(2) The value that factors other than the claimed invention contribute to the accused product.

(3) Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if

you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

If the patent covers only part of the product that Lowe's sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue may be the value of the whole product.

In this case, Lowe's alleges that the asserted patents cover only one component of the product that Lowe's uses or sells.  It is Epistar's burden to demonstrate what value that component has added to the desirability of the product as a whole and to separate the value of the patented contribution from the value of other parts of the product that are not attributable to the patented invention. In this case, Epistar has introduced evidence of licenses between Epistar and Super Trend, Adamax, and QLS.  The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of the accused products.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from

1   payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based
2   on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the
3   alleged infringer pays a single price for a license covering both past and future infringing
4   sales.
5       It is up to you, based on the evidence, to decide what type of royalty is appropriate
6   in this case.

### 35. REASONABLE ROYALTY—MULTIPLE PATENTS

If you find that Lowe's infringed more than one patent, even by a single infringing act, then you may award separate royalties to Epistar for each patent that was infringed. You also may consider the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

**36. DATE OF COMMENCEMENT—PRODUCTS**

Damages that Epistar may be awarded by you commence on the date that Lowe's has both infringed and been notified of the patent.

For the patents you must determine the date that Lowe's received actual written notice, if any, of each of the asserted patents and at least one specific product or group of products alleged to infringe.

**37.   DELIBERATIONS**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**38. COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the bailiff that you are ready to return to the courtroom.